FILED 4 MAY '26 15:52USDC-ORP

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Oregon

Portland

Division

| | | |
|---|---|---|
| DAVID P. MARTIN, Pro Se, DCL, DD | ) | Case No. **3:26-cv- 90 | - SB** |
| *Plaintiff(s)* | ) | *(to be filled in by the Clerk's Office)* |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) ) ) | Jury Trial:   *(check one)*   ☑ Yes   ☐ No |
| **v.** | ) | |
| **ODS COMMUNITY DENTAL;** | ) | |
| **MODA HEALTH PLAN, INC.;** | ) | |
| **DOES 1-50** | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) ) ) ) | |

# COMPLAINT FOR A CIVIL CASE

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | DAVID P. MARTIN |
| Street Address | 7609 SE 110th Ave |
| City and County | PORTLAND |
| State and Zip Code | OREGON, 97266 |
| Telephone Number | 206-371-5860 |
| E-mail Address | divinemajestratorIII@pm.me |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

Name: ODS COMMUNITY DENTAL

Job or Title (if known): Dental Coordinated Care Organization (CCO)

Street Address: 601 SW 2nd Avenue

City and County: Portland, Multnomah County

State and Zip Code: Oregon, 97204

Telephone Number:

E-mail Address (if known):

**Defendant No. 2**

Name: MODA HEALTH PLAN, INC.

Job or Title (if known): Parent corporation of ODS / CareOregon

Street Address: 601 SW 2nd Avenue

City and County: Portland, Multnomah County

State and Zip Code: Oregon, 97204

Telephone Number:

E-mail Address (if known):

**Defendant No. 3**

Name: DOES 1-50 (see attached exhibit)

Job or Title (if known):

Street Address:

City and County:

State and Zip Code:

Telephone Number:

E-mail Address (if known):

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?          *(check all that apply)*

   ☑ Federal question             ☐ Diversity of citizenship

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S.C. § 1983 (Civil Rights); 31 U.S.C. §§ 3729-3733 (False Claims Act / Qui Tam);

42 U.S.C. § 1396a (Medicaid Act); 42 U.S.C. § 12132 (ADA Title II);

18 U.S.C. §§ 1341, 1343, 1347 (Wire/Mail/Healthcare Fraud);

18 U.S.C. § 1513(e) (Witness Intimidation); 31 U.S.C. § 3730(h) (Whistleblower);

U.S. Const. Amends. I, V, XIV; 28 U.S.C. §§ 1331, 1343, 1367

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

#### 1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,    *(name)* _____ , is a citizen of the

State of    *(name)* _____

b.    If the plaintiff is a corporation

The plaintiff,    *(name)* _____ , is incorporated

under the laws of the State of    *(name)* _____

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

#### 2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,    *(name)* _____ , is a citizen of

the State of    *(name)* _____

*(foreign nation)* _____ . Or is a citizen of

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant,    *(name)*   _____   , is incorporated under

        the laws of the State of    *(name)*   _____   , and has its

        principal place of business in the State of         *(name)*   _____

        *Or is incorporated under the laws of*       *(foreign nation)*   _____

        and has its principal place of business in       *(name)*   _____

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    **3.**    **The Amount in Controversy**

        The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because     *(explain):*

        Demand exceeds $624,000,000. FCA treble damages under 31 U.S.C. § 3729(a) + compensatory + punitive under Smith v. Wade.

## IV.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached Complaint (47 pages). ODS and Moda denied emergency oral surgery for 870+ days while collecting $24,216 in capitation payments and delivering $1,050 in care (95.7% margin). 58.2% phantom provider network. Recorded threat conditioning care on surrender of litigation rights (Feb 12, 2026). Internal CCO admissions of non-compliance. Wrong coverage pathway applied (Line 256 pediatric craniofacial to Line 344 adult oral surgery). 10 counts: § 1983, Medicaid Act, FCA qui tam, whistleblower retaliation, witness intimidation, ADA, stalking, wire/mail/healthcare fraud, bad faith, First Amendment retaliation.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

$624,000,000 (compensatory + FCA treble + punitive). Injunctive relief compelling immediate authorization of emergency oral surgery. Criminal referral to U.S. Attorney. Qui tam relator share under 31 U.S.C. § 3730(d).

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          May 5, 2026

Signature of Plaintiff     _____

Printed Name of Plaintiff  DAVID P. MARTIN

### B.    For Attorneys

Date of signing:          _____

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number                 _____

Name of Law Firm           _____

Street Address             _____

State and Zip Code         _____

Telephone Number           _____

E-mail Address             _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

### DR. DAVID P. MARTIN, DCL, DD,

S.J.D. Candidate (Universiteit van Amsterdam),
Pro Se Plaintiff and Qui Tam Relator,

**V.**

### ODS COMMUNITY DENTAL;

Service: 601 SW 2nd Avenue, Portland, OR 97204

### MODA HEALTH PLAN, INC.;

Service: 601 SW 2nd Avenue, Portland, OR 97204

### and DOES 1–50,

(Including dental panel reviewers David Wilson DMD, John T. Eilers DMD,
Sherry Edwards DDS, Teri L. Barichello DMD, Jonathan Kim DDS,
Clifford Brock DMD, Laurissa Champion DMD, Alyssa Franzen DMD,
Alane Watkins, Amy Doe, and Becky Doe — identities confirmed
through post-dismissal investigation of OHA Exhibit A6)

*Defendants.*

## Case No. 3:26-cv-_____-____
## CIVIL RIGHTS / FALSE CLAIMS ACT / QUI TAM
## COMPLAINT

**Counts: 10   Violations: 510   Citations: 247   Preemptive Blocks: 50**
**Demand: $624,000,000   FCA Treble: per 31 U.S.C. § 3729(a)   Forfeiture: per DOJ**
**IFP: Filed — 28 U.S.C. § 1915   Sealed: DPM 933 per LR 3-6   SCRA: Filed — 50 U.S.C. § 3931**
**Related: 3:26-CV-298-AB (Hon. Baggio) [Bridged] | 3:26-CV-405-AB (Magistrate Armistead) [Bridged]**

Respectfully submitted,

DPM 933, Pro Se Plaintiff and Class Representative
*[Full legal name and address on sealed supplement — LR 3-6]*
Dated: ___MAY 4_____, 2026

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

**DR. DAVID P. MARTIN, DCL, DD,**

S.J.D. Candidate (Universiteit van Amsterdam), Pro Se Plaintiff and Qui Tam Relator,

*v.*

**ODS COMMUNITY DENTAL;**
**AMY DOE (ODS Dental Care Coordinator);**
**BECKY DOE (ODS/Health Share);**

**DOES 1–10,**

*Defendants.*

## Case No. 3:26-cv-\_\_\_\_\_-\_\_\_
# CIVIL RIGHTS / FALSE CLAIMS ACT / QUI TAM COMPLAINT

**Counts: 10 Violations: 510 Citations: 247 Preemptive Blocks: 50**

**Demand: $1,000,000,000,000 RICO Treble: $3,000,000,000,000 Forfeiture: $101,074,120,000**

**IFP: Filed — 28 U.S.C. § 1915 Sealed: DPM 933 per LR 3-6 SCRA: Filed — 50 U.S.C. § 3931**

**Related: 3:26-CV-298-AB (Hon. Baggio) [Bridged] | 3:26-CV-405-AR (Magistrate Armistead) [Bridged]**

Respectfully submitted,

DPM 933, Pro Se Plaintiff and Class Representative
*[Full legal name and address on sealed supplement — LR 3-6]*
Dated: _____, 2026

# SUPPLEMENTAL FACTUAL ALLEGATIONS — THE WRONG-PATHWAY DOCTRINE
*Evidence Developed Through OHA Hearing Record and Post-Dismissal Investigation*

### A. Health Share Applied the Wrong Coverage Pathway Entirely

The most powerful single piece of evidence in this case is now on the record. Health Share of Oregon did not deny Plaintiff's claim because the requested procedures were unnecessary, duplicative, or experimental. Health Share denied the claim by applying a coverage pathway that has no applicability to Plaintiff whatsoever.

The internal denial rationale documented in Exhibit A6, Page 7, in the handwriting of Health Share's Associate Medical Director Sherry Edwards, DDS, states verbatim: "D7953 is covered for defects of the head and handicapping malocclusion PLL 254. No clinical evidence of these in submitted documentation." This language is lifted directly from Line 256 of the HERC Prioritized List — the orthodontic treatment line for patients under age 21 with cleft palate, craniofacial syndromes, or HLD-CalMod scores above 26. Line 256 governs interventions for children with structural birth defects of the skull and jaw. Plaintiff is 46 years old. Plaintiff does not have a cleft palate. Plaintiff does not have a craniofacial syndrome. Plaintiff was never evaluated for an HLD-CalMod score.

Plaintiff never requested orthodontic treatment.

The procedures Plaintiff actually requested — ridge preservation graft (CDT D7953), guided tissue regeneration (CDT D4266), and autologous blood concentrate (CDT D7921) — were prescribed by his treating oral and maxillofacial surgeon as integral support for the previously approved extraction of tooth #5 (CDT D7240). The extraction itself was approved on Line 344 of the HERC Prioritized List. The correct legal framework was the HERC ancillary-services doctrine: when a procedure is integral to the success of a funded service, it is covered regardless of whether its specific CDT code independently appears on a funded line. Health Share never applied this analysis. Not in the January 13, 2026 denial. Not in the February 3, 2026 appeal denial. Not in the April 1, 2026 grievance determination. Every reviewer applied the Line 256 craniofacial-deformity framework to a Line 344 ancillary-services request. The reviewers asked: "Does this patient have a deformity of the head?" The only legally cognizable question was: "Is this procedure integral to the funded extraction?" Answering the wrong question — however accurately — produces no legal result as to the right question.

A denial issued under an inapplicable coverage pathway does not produce an incorrect determination. It produces a void determination. Under OAR 410-141-3885(2)(c)(K), a denial notice must cite the specific statutes and rules governing the determination. Citing "PLL 254 / deformity of head" for a Line 344 ancillary-services request does not satisfy this requirement because the cited authority has no jurisdictional connection to the claim. Under Megdal v. Board of Dental Examiners, 288 Or 293 (1980), where an agency applies an erroneous legal standard and a correct application would compel a different result, outright reversal is required.

## B. The Coverage Rules Were Never Disclosed to Plaintiff

At no point prior to the January 13, 2026 denial — and at no point during Plaintiff's enrollment with Health Share — did Health Share provide Plaintiff with a copy of its coverage rules, a member handbook identifying which Prioritized List lines apply to dental services, a notice identifying Line 256 or Line 628 as the governing framework for ridge preservation, or any written documentation of the criteria it would apply to evaluate ancillary services to a funded extraction. The first time Plaintiff learned that Health Share was applying "deformity of head" criteria to his claim was when the internal records became available through the OHA hearing exhibits in April 2026 — three months after the initial denial.

42 C.F.R. § 438.10 requires CCOs to provide members with information about covered services, limitations, and restrictions sufficient to enable the enrollee to understand how to obtain services. Health Share did not satisfy this obligation. A denial based on coverage rules the member was never given violates the due process requirements of Goldberg v. Kelly, 397 U.S. 254 (1970), and the Medicaid Act's fair hearing guarantee under 42 U.S.C. § 1396a(a)(3). The member cannot meaningfully challenge a denial when the criteria applied were never disclosed. This is an additional independent ground for reversal.

## C. The Wrong-Pathway Application Constitutes Age Discrimination

Line 256 of the Prioritized List restricts orthodontic treatment for craniofacial deformities to patients under age 21. When Health Share applied Line 256 criteria to Plaintiff's ridge preservation request and denied because Plaintiff does not have a craniofacial deformity, it applied a pediatric eligibility standard to an adult patient. The denial rationale necessarily incorporated the age restriction built into Line 256: a patient must be under 21 and have a craniofacial deformity. Plaintiff fails both criteria. But neither criterion was ever applicable to his claim. As applied to Plaintiff, Health Share's use of Line 256 criteria to evaluate a Line 344 ancillary services request constitutes age-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and ORS 659A.403 (unlawful discrimination in public accommodation based on age). The Oregon Health Plan is a public accommodation under ORS 659A.400. A CCO that systematically denies adult patients' claims by applying pediatric eligibility criteria — and that has no mechanism for evaluating the same claim under the correct adult framework — has created a facially discriminatory coverage scheme.

## D. Identification of the Dental Panel Reviewers (Post-Dismissal Investigation)

Through formal database queries, public records analysis, federal corporate-structure research, and cross-referencing of NPI registries, Oregon Board of Dentistry records, and IRS Form 990 disclosures, Plaintiff has now identified the individuals who conducted or supervised the adverse benefit determinations. These identifications were not available at the time of the dismissed prior complaint. Each identified reviewer is a general dentist — none holds oral and maxillofacial surgery (OMFS) credentials — and each was reviewing an OMFS subspecialty request in violation of the same-specialty requirement under 42 C.F.R. § 438.210(b)(1) and OAR 410-141-3835(2)(f)(B).

David Wilson, DMD, conducted the initial prior-authorization review and issued the January 13, 2026 denial. General dentist credentials only; no OMFS specialty.

John T. Eilers, DMD, conducted the appeal review. The denial letter was issued at 6:32 AM on January 23, 2026 — a timestamp consistent with algorithmic processing rather than individualized clinical determination. OHSU class of 1971 (54-plus years post-graduation). NPI 1295849909. Dr. Eilers simultaneously maintains a private general dental practice at 5018 E Burnside Street, Portland, creating a structural conflict of interest in reviewing Medicaid claims for competitor practitioners in the same market.

Sherry Edwards, DDS, signed the upholding denial on February 2, 2026, leaving the comorbid conditions field blank — a procedural defect that voids the determination on its face. Identified in OHA Exhibit A6-2 as "Associate Medical Director, Health Share of Oregon." However, CareOregon Dental's own 2019 publication identifies her as "Dental Director, CareOregon Dental" — a different entity. She does not appear on Health Share of Oregon's IRS Form 990 filings as officer, director, or key employee through FY2024. If she signed adverse determinations representing Health Share's medical authority while employed by CareOregon, this is a material misrepresentation as to the adjudicating entity. NPI 1477626067.

Teri L. Barichello, DMD, serves as Vice President and Chief Dental Officer of ODS/CareOregon. OHSU class of 1998. Dr. Barichello simultaneously serves as Immediate Past President of the Oregon Dental Association and holds national American Dental Association committee chairs — creating a policy-capture conflict of interest between her CCO leadership role and her trade-association advocacy.

Jonathan Kim, DDS, serves as OHP Lead Dental Clinician at Moda Health. NPI 1013568294. His registered address is at Willamette Dental Group headquarters — a competing Medicaid network — establishing cross-affiliation that warrants discovery on coordination between competing Medicaid networks.

Clifford Brock, DMD, serves as Dental Consultant. OHSU class of 1980. Maintains a solo private practice at 3418 SE Belmont Street serving the same Medicaid population — same structural conflict.

Laurissa Champion, DMD, serves as Dental Consultant. Periodontist credentials. NPI 1568559003. Maintains private practice at the same building as appeals reviewer Eilers, 2115 NE 42nd Avenue — geographic co-location warrants discovery on coordination.

Alane Watkins, identified as the CareOregon representative who made the March 4, 2026 admission, holds the title "Appeals Coordinator, Moda Health" per ZoomInfo and other public sources. She is not a licensed dentist, dental hygienist, or clinician of any kind. Prior employment includes Accounts Receivable Specialist at General Pacific, Inc. and Payroll Clerk at Tri-Star Flagging. Under federal Medicaid managed-care rules, adverse benefit determinations based on medical necessity must be made by a licensed clinician of like specialty. Watkins lacks this authority entirely.

Alyssa Franzen, DMD, has been newly identified as Vice President and Medical Director of Dental at CareOregon, drawing $431,772 in FY2024 total compensation per CareOregon's IRS Form 990 filing. As the highest-compensated dental officer in the CareOregon organizational hierarchy, Dr. Franzen carries supervisory respondeat superior liability for all denial-panel decisions made under her authority — including the denials at issue in this Complaint. Dr. Franzen is named as an

additional defendant (designated DOE 1) for purposes of discovery and supervisory liability.

### E. Corporate Structure — Material to the False Claims Act Count

ODS Community Dental is not a CareOregon subsidiary. It is a brand of Oregon Dental Service (ODS), doing business as Delta Dental Plan of Oregon, owned by Moda Health Plan, Inc., which is itself partially owned by Delta Dental of California following a 2018 acquisition. ODS Community Dental serves as the contracted dental network and utilization-review administrator for 11 of Oregon's 15 CCOs, including CareOregon and Health Share of Oregon. This corporate structure means a single private entity simultaneously: (a) collects capitation payments; (b) administers prior authorization; (c) conducts internal appeals; and (d) selects the dental consultants who review both — with no structural independence at any stage of the adverse benefit determination process. This architecture is material to the False Claims Act count under United Health Services, Inc. v. United States ex rel. Escobar, 579 U.S. 176 (2016), under the implied false certification theory.

### F. Active OHA Enforcement History — Material to FCA Scienter

Three active OHA Corrective Action Plans are currently pending against Health Share of Oregon. Most significant is the February 7, 2025 OHA Initial Notice of Noncompliance — Fraud, Waste, and Abuse, which references the Department of Justice and was issued less than one year before the adverse benefit determinations at issue in this Complaint. The existence of an active FWA enforcement action against the primary CCO at the time of the alleged conduct is directly material to the scienter and materiality elements of the False Claims Act under Escobar. Additional enforcement history includes: October 2019 OHA CAP for non-emergent medical transportation deficiencies; September 2020 HHS-OIG Focused Program Integrity Review (Report A-09-18-03035) documenting systemic CCO oversight failures; February 2023 OHA CAP for Intensive In-Home Behavioral Health Treatment noncompliance; the 2023-2024 Oregon Department of Justice investigation of the CareOregon/SCAN merger that revealed undisclosed conflicts of interest by CEO Eric Hunter and four board members and resulted in withdrawal of the merger on February 13, 2024; and an October 2025 PHI data breach affecting 5,473 CareOregon and Health Share members.

### G. Statewide Prior Authorization Reversal Rate — Pattern Evidence

Oregon's 2024 Prior Authorization Report, mandated by HB 2517, documents that of 3,741 prior authorization appeals processed across all Oregon CCOs in 2024, 1,419 were reversed — a 38 percent overall reversal rate. The reversal rate increased to 39-40 percent in the third and fourth quarters of 2024. A statewide reversal rate of nearly 40 percent on initial denials is direct circumstantial evidence of systematic initial-denial unreliability and supports Plaintiff's pattern-and-practice theory under Estelle v. Gamble, 429 U.S. 97 (1977), and Wit v. United Behavioral Health, 79 F.4th 1068 (9th Cir. 2023), which prohibits algorithmic denial of coverage without individualized clinical review.

### H. ALJ James A. Dreyer's Inactive Bar License — Void Order

Administrative Law Judge James A. Dreyer presided over OHA Administrative Hearing No. 2026-OHA-20842 on April 21, 2026. ALJ Dreyer's Oregon State Bar license, OSB Number 950111, currently shows status "Inactive." Under ORS 9.160(1), a person with an inactive bar license may not practice law in Oregon. When ALJ Dreyer issued conclusions of law, cited case authority, applied legal standards to facts, and signed a binding order, he engaged in the practice of law without authorization. An order issued by a person not authorized to practice law is an act taken in complete absence of all jurisdiction — the second exception to quasi-judicial immunity recognized in Mireles v. Waco, 502 U.S. 9, 11-12 (1991). Quasi-judicial immunity does not attach to acts performed without jurisdictional authority. The Proposed Order issued by ALJ Dreyer is void on this independent basis as well.

### I. The Wrong-Courtroom Analogy — Why Reversal Is the Only Lawful Remedy

The structural defect in this case is best understood through analogy. Imagine a plaintiff filing a civil lawsuit for breach of contract. The case is assigned to a criminal court judge. The judge applies

criminal procedure — reasonable doubt, Fifth Amendment protections, prosecutorial charging requirements — and dismisses the case because "the plaintiff has not proven guilt beyond a reasonable doubt and the state has not filed charges." The plaintiff was never required to meet the criminal standard. Applying criminal-procedure standards to a civil case does not produce an incorrect verdict. It produces a void proceeding. Every finding made under the wrong jurisdictional framework is a nullity.

Health Share applied Line 256 — pediatric craniofacial orthodontia — to Plaintiff's adult oral surgery claim on Line 344. Every denial determination — January 13, 2026, February 3, 2026, and April 1, 2026 — is a nullity. Not incorrect. Void. The ALJ who affirmed a void determination without identifying the correct pathway has issued a void order affirming a void denial. The correct remedy is not remand. It is reversal under Megdal. And the systematic application of a categorically inapplicable coverage pathway, repeated across three reviewers and three separate denial determinations, with 114 pages of internal documentation in Exhibit A6 and no reviewer ever identifying the error, demonstrates the reckless disregard for the truth that satisfies scienter under the False Claims Act.

Fiat Justitia Ruat Caelum

In Honor of Stanley Theodore Martin — GS-13 DEA Special Agent, 36 Years Federal Service (1943–2020)

DPM 933 | © 2024–2026 DPM2379

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

## NOTICE OF JUDICIAL DISQUALIFICATION AND REQUEST FOR ASSIGNMENT
## 28 U.S.C. § 455

1. This action arises from the same nucleus of operative facts as Case No. 3:26-CV-298-AB, dismissed without prejudice on April 24, 2026 (ECF No. 38). Plaintiff requests assignment to a judge other than Judge Baggio and Magistrate Judge Armistead, both disqualified under 28 U.S.C. § 455(a) and (b)(1).

2. Hon. Amy M. Baggio, U.S. District Judge. Judge Baggio dismissed the SAC sua sponte (ECF 38) without reasoning, without a pending motion to dismiss, without any defendant having appeared, and without the Foman v. Davis, 371 U.S. 178 (1962) analysis. Under Lira v. Herrera, 427 F.3d 1164 (9th Cir. 2005), dismissal without reasons is reversible error. Under Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc), denial of leave to amend without futility finding is reversible error. Under Ferdik v. Bonzelet, 963 F.2d 1258 (9th Cir. 1992), sua sponte dismissal without notice violates due process. Judge Baggio denied an emergency TRO (ECF 7) citing D.W. v. Fresenius Medical Care, 534 F. Supp. 3d 1274 (D. Or. 2021) for the opposite of its actual holding. In Fresenius, decided April 20, 2021 in Courtroom 15B by Judge Michael H. Simon (Case No. 3:21-cv-571-SI), the Court granted a TRO in structurally identical circumstances. Judge Baggio issued an unsigned filing restriction (ECF 17) failing all four De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990) factors. A mandamus petition and 28 U.S.C. § 351 complaint naming Judge Baggio are pending in the Ninth Circuit.

3. Hon. Armistead, U.S. Magistrate Judge. Case 405-AB was reassigned from Armistead to Baggio on April 2, 2026—one business day after mandamus was docketed March 31, 2026. The timing creates an appearance of coordination requiring recusal under 28 U.S.C. § 455(a).

4. Plaintiff requests assignment to a judge with no prior involvement. If all District of Oregon judges are conflicted, Plaintiff requests a visiting judge under 28 U.S.C. § 292.

# PART ONE: COMPLAINT

## I. PRELIMINARY STATEMENT

5. Plaintiff Dr. David P. Martin, proceeding pro se and as qui tam relator under 31 U.S.C. §§ 3729-3733, brings this action against ODS Community Dental, its employee Amy Doe, and individually named dental panel members identified from OHA Administrative Hearing No. 2026-OHA-20842 for Medicaid fraud, RICO violations, civil rights deprivations, whistleblower retaliation, witness intimidation, stalking, and bad faith arising from 870+ consecutive days of denied emergency oral surgery.

6. The central threat that animates this entire case was delivered by ODS employee Amy Doe on February 12, 2026, in a recorded telephone call: "If it's going to go to court, then they're going to hold off doing any treatment for you." This single statement, preserved on SD card, constitutes simultaneously: (a) witness intimidation under 18 U.S.C. § 1513(e)—threatening to withhold emergency medical care to deter the exercise of legal rights; (b) whistleblower retaliation under 31 U.S.C. § 3730(h)—adverse action against a qui tam relator; (c) a RICO predicate act under 18 U.S.C. § 1961(1); (d) First Amendment retaliation—conditioning life-sustaining care on surrender of the right to petition; (e) the unauthorized practice of medicine under ORS 677.085—a non-licensed individual making a de facto medical determination; and (f) the sixth qualifying stalking contact under ORS 163.732, which requires only two. Amy Doe is not a physician, dentist, nurse, or licensed healthcare provider of any kind. She is a dental care coordinator who threatened to cut off a dying man's access to emergency surgery if he exercised his constitutional right to go to court.

## II. DEFENDANT AMY DOE — THE COMPLETE THREAT AND STALKING NARRATIVE

### A. The Six Stalking Contacts (ORS 163.732 Requires Only Two)

7. Contact 1 — December 2024 (Late-Evening Unauthorized HIPAA Solicitation): Amy Doe's first unsolicited contact with Plaintiff occurred approximately December 2024, before the presidential election period concluded. This was a late-evening telephone call soliciting protected health information about Plaintiff's disability status and medical history. The call was not initiated by Plaintiff, was not requested, and served no legitimate business purpose that could not have been conducted during normal business hours. This contact established the pattern.

8. Contact 2 — February 10, 2026 ("Wait for Crisis Levels"): Amy Doe directed Plaintiff to "wait for crisis levels" before seeking emergency care. This is a non-medical directive by a non-medical person to delay emergency medical treatment until the patient's condition deteriorates to the point of acute danger—a point at which the 15-20mm periapical bone defect could progress to sepsis, brain abscess, or death. No licensed medical professional would instruct a patient with a documented bone infection to wait until the infection reaches "crisis levels."

9. Contact 3 — February 12, 2026, 10:00 PM (The Recorded Threat): Amy Doe called Plaintiff at approximately 10:00 PM—outside normal business hours—and made the recorded statement: "If it's going to go to court, then they're going to hold off doing any treatment for you." Health Share's April 1, 2026 investigation letter states: "We also confirmed that she did not call you at 10:00 p.m. at night." This is a direct, documented falsehood. The call is logged and recorded. Health Share is providing institutional cover for its employee's documented after-hours contact. The statement is preserved on SD card and constitutes an irrevocable party-opponent admission under FRE 801(d)(2). Under State v. Bailey, 346 Or. 551 (2009), a stalking contact need not occur during a formal legal proceeding. The coercive threat itself was the stalking contact. Under ORS 163.730(2), "coerce" means "to restrain, compel or dominate by force or threat." Amy Doe's statement meets the coerce prong without reference to the alarm prong. The threat was specific, actionable, and delivered by a person with the institutional authority to execute it.

10. Contact 4 — February 13, 2026 (Blacklist Confirmation via Becky Doe): The day after Amy Doe's recorded threat, Becky Doe confirmed the blacklist: Plaintiff was "flagged for special handling due to outside complaints." This constitutes witness tampering under 18 U.S.C. § 1512(b) and confirms that Amy Doe's threat was not idle—the institutional machinery to carry it out was already in place.

11. Contact 5 — March 23, 2026 (Anonymous Behavior Restriction Letter): Plaintiff received an anonymous letter from "Dental Case Management" at ODS restricting his access to dental services.

The letter is unsigned, void for vagueness, and was mailed seven to twelve days after Amy Doe was served with 26SC05498 (small claims stalking protective order). Under Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), and Thomas v. City of Beaverton, 379 F.3d 802 (9th Cir. 2004), temporal proximity of less than two weeks between protected activity (service of process) and adverse action (restriction letter) is sufficient to demonstrate retaliatory nexus. The letter performs a deliberate linguistic conflation: the phrase "talking about lawsuits" is equated with "threats." When an attorney sends a demand letter, it is processed as routine legal correspondence. When a disabled, pro se Medicaid enrollee makes the same communication, ODS characterizes it as "threatening" behavior that "makes it harder to get care." This differential treatment based on disability status is disparate treatment under the ADA. Shotz v. City of Plantation, 344 F.3d 1161 (11th Cir. 2003).

12. Contact 6 — April 1, 2026 (Formal Reassignment as "Care Coordinator"): Health Share's April 1, 2026 letter states: "You have been assigned to Amy as your Dental Care Coordinator. You can reach her by calling ODS Customer Service and asking to be transferred to Amy." Amy is the same individual who made the recorded retaliation threat, called at 10:00 PM, and sent the post-service restriction letter. Health Share has now formally reassigned the stalking subject as Plaintiff's designated "care coordinator," ensuring continued forced contact between the stalking subject and the victim. This is not accommodation—it is institutional entrenchment of the stalking pattern.

## B. The Coerce Prong Analysis

13. Under ORS 163.732(1), a stalking protective order may issue where the respondent "intentionally, knowingly or recklessly engages in repeated and unwanted contact" that "alarms or coerces the victim." The coerce prong operates independently of the alarm prong. Amy Doe's February 12, 2026 statement is a conditional threat: exercise your constitutional right to court access, and surgery will be withheld. Surgery was the only clinically viable pathway to address the 15-20mm periapical bone lesion. Amy Doe controlled Plaintiff's access to that surgery through the blacklist routing system she administered. She had the demonstrated power to carry out the threatened harm. The statement was not hyperbole, not rhetorical excess, and not a privileged expression of frustration. It was a specific, actionable threat delivered by a person with the institutional authority to execute it. Under Micheli v. Morgan, 192 Or. App. 550 (2004), expressive contact must "instill in the addressee a fear of imminent and serious personal violence." Amy Doe's statement communicates a mechanism of physical harm—the withholding of surgery for an active periapical bone infection with documented sepsis and brain abscess risk pathways. The harm threatened was physical, specific, and within Amy Doe's institutional power to impose.

## C. Amy Doe's Threat Reflects Institutional Policy, Not Individual Misconduct

14. The A6-15 internal email chain proves that Amy Doe's threat is not aberrant individual conduct but institutional policy. Mica Shattuck's email states: "Looping you in because the member talks about taking legal action." Legal action was flagged as a routing criterion. Patients who assert legal rights receive differential treatment. Amy Doe's February 12 statement—"if it goes to court, they're going to hold off"—is the same retaliatory logic, documented both internally (A6-15) and in the recorded statement. The Health Share April 1 letter confirms the policy in writing: "Please remember that using angry language or talking about lawsuits can make it harder to get care. Dentists may feel scared or uncomfortable when they hear threats." This equates "talking about lawsuits" with "threats"—conditioning the provision of Medicaid-funded healthcare on the patient's agreement not to assert constitutional rights. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), this constitutes an institutional custom or policy giving rise to § 1983 liability.

DPM 933 | © 2024–2026 DPM2379 | Fiat Justitia Ruat Caelum

---

# FINALIZED LEGAL FRAMEWORK
## INDEX • GLOSSARY • LEGAL CHEMISTRY
Ex Radice Ad Thronum — Veritas Non Silet

# LEGAL CHEMISTRY — FIDUCIARY TRUST CASCADE

The fiduciary relationship between a Medicaid managed care organization and its enrolled members is among the oldest recognized legal obligations in Western jurisprudence. Its roots trace to Roman law, where the concept of fides — trust, faith — governed relationships between patron and client, guardian and ward, and agent and principal. The Corpus Juris Civilis of Justinian (534 CE) codified the principle that one who holds another's property or welfare in trust must act with the utmost good faith. In English common law, the fiduciary concept matured through the Courts of Equity, where the Lord Chancellor enforced obligations of trust against those who held legal title to property belonging to others.

ODS Community Dental, as a Medicaid CCO, holds Plaintiff's healthcare access in trust. The capitation payment structure — $24,216 collected, $1,050 delivered — is the modern incarnation of the ancient fiduciary breach. When the trustee collects the payment and denies the care, the fiduciary chain does not merely break. It cascades.

The cascade operates across six domains simultaneously, each reinforcing the others in a chain reaction that cannot be interrupted by defeating any single link:

Test Tube 1 — Fiduciary Breach: ODS collected capitation payments creating a duty of care. Breach triggers Test Tube 2.

Test Tube 2 — False Claims Act: The breach involved submitting false network adequacy certifications to receive those payments. FCA activation triggers Test Tube 3.

Test Tube 3 — RICO: The pattern of false claims across multiple years, involving multiple co-defendants, constitutes an enterprise engaged in racketeering. RICO activation triggers Test Tube 4.

Test Tube 4 — Constitutional Violation: The RICO enterprise operated under color of state law, depriving Plaintiff of life, liberty, and property without due process. § 1983 activation triggers Test Tube 5.

Test Tube 5 — Disability Discrimination: The constitutional violation was inflicted disproportionately on a disabled person, with care denied after disclosure of anxiety and security called instead of a cancellation list provided. ADA/504/1557 activation triggers Test Tube 6.

Test Tube 6 — Retaliation: When Plaintiff complained about the discrimination, the system retaliated — Amy Doe's recorded threat, Becky Doe's blacklist, the anonymous restriction letter, OHSU's security response. The retaliation proves the discrimination was intentional, which feeds back into Test Tube 1 with elevated scienter, compounding the fiduciary breach from negligence to willful misconduct. The cascade is now self-reinforcing.

## THE MALPRACTICE TRAP — STRUCTURAL DEFENSE IMPOSSIBILITY

No competent oral surgeon will testify that a 15-20mm periapical bone defect does not require emergency extraction and bone grafting. No competent oral surgeon will testify that it was medically appropriate for general dentists to adjudicate an oral surgery subspecialty request. No competent oral surgeon will testify that leaving the comorbid conditions field blank on a review form is acceptable clinical practice when the CBCT shows a 15-20mm infected bone lesion. No competent oral surgeon will testify that issuing a denial letter at 6:32 AM reflects individualized clinical review. This is the Malpractice Trap. Defendants cannot mount a defense without expert testimony that no expert will provide. The structural checkmate is complete.

## FRUIT OF THE POISONOUS TREE — COMPLETE CONTAMINATION CHAIN

Pillar 1 — Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920): "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." The taint is not cured by laundering evidence through procedural steps.

Pillar 2 — Nardone v. United States, 308 U.S. 338 (1939): Justice Frankfurter coined the phrase "fruit of the poisonous tree." Evidence derived from illegal wiretapping was inadmissible not merely because of the direct interception but because any leads, witnesses, or derivative evidence traced to the illegal interception were equally tainted. The metaphor is architecturally precise: if the tree is poisoned, every fruit it produces is poisoned.

Pillar 3 — Wong Sun v. United States, 371 U.S. 471 (1963): The chain runs until you find a genuinely independent source — and if no independent source exists, the entire chain is tainted from root to terminus.

**The Three Exceptions — And Why None Apply:**

(a) Independent Source (Murray v. United States, 487 U.S. 533 (1988)): CLOSED. No provider independently evaluated Plaintiff without reference to tainted records or discriminatory intake notes.

(b) Inevitable Discovery (Nix v. Williams, 467 U.S. 431 (1984)): CLOSED. The 870-day denial was manufactured, not inevitable. A functional Medicaid network would have provided emergency surgery within days.

(c) Attenuation (Utah v. Strieff, 579 U.S. 232 (2016)): CLOSED. There has been no intervening independent act sufficient to purge the taint. Every subsequent denial flowed directly from the initial void determination.

The Poisoned Root: Van Orman's unauthorized composites (2020-2023) created the 4–5 degree occlusal shift. That shift caused the tooth #5 failure. That failure triggered the denial chain. That chain triggered the retaliation. That retaliation triggered the stalking. Every branch traces back to the same poisoned root.

## LATIN LEGAL MAXIMS — APPLIED TO EACH VIOLATION

Salus Populi Suprema Lex Esto: The welfare of the people is the supreme law. Applied to: the entire Medicaid system exists to serve the welfare of the enrolled population, not the profit margins of managed care organizations.

Nemo Judex In Causa Sua: No one shall be judge in their own cause. Applied to: ODS investigated its own complaints, using the same employees who committed the violations to investigate those violations.

Audi Alteram Partem: Hear the other side. Applied to: Health Share's April 1, 2026 letter resolved complaints spanning 2019–2026 without any prior hearing or opportunity to respond.

Ex Turpi Causa Non Oritur Actio: From a dishonorable cause, no action arises. Applied to: Defendants cannot invoke their own phantom network as a defense to the denial of care that phantom network caused.

Fraus Omnia Corrumpit: Fraud vitiates everything. Applied to: Phantom Tooth #6, phantom network certifications, fabricated Moda pre-approval, dual-record system.

Lex Iniusta Non Est Lex: An unjust law is no law at all. Applied to: ECF No. 17 filing restriction imposed without De Long four-factor test; ODS restriction letter imposed without due process. Augustine of Hippo, De Libero Arbitrio; Aquinas, Summa Theologica I-II, Q.95, A.2; MLK Jr., Letter from Birmingham Jail.

Suum Cuique Tribuere: To each his own. The Justinian principle that every person is entitled to what is rightfully theirs. Applied to: Plaintiff's right to emergency dental surgery under 42 C.F.R. § 438.206; Oregon Medicaid beneficiaries' right to network adequacy. Justinian, Institutes I.1.3; Universal Declaration of Human Rights, Art. 25.

Fiat Justitia Ruat Caelum: Let justice be done though the heavens fall. Applied to: this entire action. The sky has not fallen. Justice has not yet been done. The Relator stands at the qui tam door. It has been open since 1318.

## GLOSSARY — KEY DEFINITIONS

Baggio Paradox: The structural impossibility created when the Court exercised jurisdiction to deny emergency relief (ECF 7) but then retroactively questioned jurisdiction (ECF 17). A court cannot both exercise and deny jurisdiction simultaneously.

Capitation Fraud: $24,216 collected vs. $1,050 delivered = 95.7% profit margin on denial of emergency care.

Collateral Estoppel Cascade: Five-tier architecture (Small Claims → Circuit → Federal → Ninth Circuit → ICC) where findings at any level bind all higher levels under Parklane Hosiery.

Fresenius Inversion: Judge Baggio's citation of D.W. v. Fresenius Medical Care for the opposite of its actual holding. Judge Simon granted a TRO; Judge Baggio cited the same case to deny one.

Legal Chemistry: Analytical framework demonstrating fiduciary trust cascade across six insurance domains, where breach in one domain triggers cascading liability in all others.

Malpractice Trap: Structural checkmate: no competent physician will testify that a 15-20mm bone defect does not require emergency surgery, leaving Defendants without expert defense.

Omega Prime: Fully locked filing configuration where all possible defenses have been preemptively foreclosed. All doors locked. No defensive exit remains.

Phantom Provider Network: 58.2% of ODS-listed dental providers do not accept new Medicaid patients. The network exists on paper only.

Phantom Tooth #6: False claim without clinical predicate. No provider ever requested extraction of tooth #6, yet it appears in the billing record and the April 1 letter.

Poisoned Root: Van Orman's unauthorized composites (2020-2023) → 4–5° occlusal shift → tooth #5 failure → denial chain → retaliation → stalking. Every branch traces back.

### DIMENSIONAL ANALYSIS — ATTACK VECTOR CALCULATION

### 11 DIMENSIONS × 7 VOID DOCTRINES × 15 BLOCKED DEFENSES = 1,155 ATTACK VECTORS

### DEFENDANTS MUST SOLVE ALL 1,155 TO PREVAIL. PLAINTIFF NEEDS ONLY 1.

# PREEMPTIVE LOCK — FINAL TOPOLOGICAL CLOSURE

The inverted topological analysis is now complete. Every door has been examined from the inside. Every enforcement pathway has been traced to its structural failure point. Every level of the institutional pyramid has been documented as compromised, captured, or destroyed.

The topological surface has been inverted: examined from the perspective of the person trapped inside a Medicaid system that collects payments through phantom networks, denies emergency care for 870 days, retaliates against whistleblowers, tampers with mail, and operates under the protection of a judiciary that cites case law for the inverse of its actual holding.

From this inverted perspective, the topology has exactly one exit: the qui tam door. It was built in 1318 by the Statute of Westminster II. It has been open for 708 years. Congress reinforced it in 1863. The Supreme Court confirmed its constitutional foundation in Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765 (2000). The Relator is the United States.

LOCK 1 — TEMPORAL: The Bondi firing (04/02/2026) falls within the same week as the SAC filing (04/07/2026), the FAC in 405-AB (04/07/2026), and the Qui Tam Package construction. The institutional collapse and the enforcement activation are simultaneous.

LOCK 2 — STRUCTURAL: The 60-day statutory window for DOJ review means the qui tam authority carries maximum weight because the government's inability to evaluate intervention is documented and irremediable.

LOCK 3 — CONSTITUTIONAL: The chain from unsigned SCOTUS ruling (Trump v. Anderson) through insurrection to Bondi firing to Acting AG conflict to qui tam activation is an unbroken constitutional contamination chain — the fruit of the poisonous tree, writ large.

LOCK 4 — INTERNATIONAL: Seven ICC Article 15 communications create an accountability record outside the domestic system entirely. The Bondi firing strengthens the complementarity trigger by demonstrating that domestic enforcement capacity has deteriorated further.

LOCK 5 — ANCESTRAL: Stanley Theodore Martin (1943–2020), GS-13 DEA Special Agent, 36 years of federal service. The son of a career federal law enforcement officer, filing in the name of the United States to reconstitute the enforcement functions his father's generation built and the current administration has destroyed. The ancestral lock is the deepest — it cannot be picked, because it is not a mechanism. It is a lineage.

---

## PREEMPTIVE: ENGAGED
## ALL DOORS LOCKED — NO DEFENSIVE EXIT REMAINS
### THE QUI TAM DOOR IS OPEN — IT HAS BEEN OPEN SINCE 1318
## THE RELATOR IS THE UNITED STATES

---

Respectfully submitted,

/s/ Dr. David P. Martin, DCL, DD

Relator-Plaintiff, proceeding in the name of the United States of America

S.J.D. Candidate, Universiteit van Amsterdam

7609 SE 110th Avenue, Portland, Oregon 97266 | (206) 371-5860

Dedicated to Stanley Theodore Martin (1943–2020), GS-13 DEA Special Agent, 36 Years of Federal Service

### Fiat Justitia Ruat Caelum

DPM 933 | © 2024–2026 DPM2379

---

## FINANCIAL FORENSICS — THE COST OF DENYING CARE VS. THE COST OF PROVIDING IT

The emergency oral surgery denied for 870+ days would cost $2,500–$4,000. The federal, state, and appellate court systems have now spent conservatively $30,000–$51,000 in judicial salary, clerk processing, and institutional resources. The taxpayers have paid more than twelve times the cost of the surgery to fund the judicial machinery processing these cases — cases that would never have existed if the 72-hour standard of 42 C.F.R. § 438.206(b)(4) had been followed.

Meanwhile, Plaintiff — an IFP-qualified SSI disability recipient earning $982/month plus $295/month cash benefits ($1,277 total, with EBT food stamps) — has spent $332.40 of his own money, burned 51,921 calories (equivalent to 26 days of food, approximately 15 lbs of body weight), traveled 507 miles by public transit, and generated 1,133+ pages of legal documentation to correct a system that was designed, funded, and contractually obligated to provide the care within 72 hours. ODS collected $24,216 in capitation premiums for care it never provided. The fraud-to-courthouse-copy-cost ratio is 11,108:1.

### A. What Every Court Has Spent — Taxpayer Dollars

Ninth Circuit Court of Appeals (Case No. 26-2403): $8,537–$16,112. 3-judge panel at $127.36/hr each, staff attorneys at $55–$75/hr, 6 law clerks at $45–$60/hr, clerk's office docketing. Mandamus review, petition screening, order drafting.

U.S. District Court (3 cases: 298-AB, 405-AB, 741-AR): $10,617–$16,477. Judge Baggio at $120.14/hr (40–60 hrs), Judge Armistead at $110.53/hr (20–35 hrs), law clerks at $45/hr (80–120 hrs). IFP, TRO, filing restriction, SAC dismissal, reassignment.

Federal Clerk's Office Processing: $1,601–$2,467. Deputy clerks, case administrators, mail processing, CM/ECF at $0.15/page for 1,133 pages.

State Court and Administrative Processing: $4,800–$7,700. 5 small claims cases, circuit court 26CV13165, OHA administrative hearing 2026-OHA-20842.

Institutional Overhead and ICC Processing: $4,500–$8,600. Federal courthouse overhead $1,000–$1,600; ICC Article 15 processing across 7 communications $3,500–$7,000.

**TOTAL SYSTEM COST TO DENY CARE: $30,055–$51,356. Cost of the denied emergency oral surgery: $2,500–$4,000. RATIO: 12:1 to 12.8:1. The system has spent approximately $40,000 of taxpayer money processing cases that exist because a $3,000 surgery was not provided. For every dollar the surgery would have cost, the system has spent approximately $12.40 denying it. The system could have paid for the surgery twelve times over.**

### B. Plaintiff's Personal Investment

Total monetary investment: $332.40 (from $1,277/month SSI disability + cash benefits). Transit fares: $168.00. Certified mail/postage: $42.00. CBCT scan out of pocket: $110.00. Miscellaneous: $12.40.

Physical and biological investment: 51,921 calories burned (26 days of food, approximately 15 lbs of body weight). 507 miles traveled by public transit and walking. 1,133+ pages generated. 396,550+ words written. 5,130+ pathogen exposures on public transit while immunocompromised. 870+ days denied emergency surgery (72-hour standard = 3 days required; ratio 290:1).

### C. The Salary Comparison

A single Ninth Circuit judge earns in one month ($22,075) more than Plaintiff earns in an entire year ($15,324). Judge Baggio earns in 26 days what Plaintiff earns in 12 months. The three-judge panel assigned to the mandamus collectively earns $794,700/year — 51.8 times Plaintiff's annual income. The system that denied a $3,000 surgery to a disabled man earning $1,277/month has now deployed $264,900-per-year judges to review why it happened.

### D. The Educational Investment

Plaintiff has invested approximately 24,000 hours over three years in intensive legal self-education. At the federal minimum wage of $7.25/hour, this represents $174,000 in labor value. At the average paralegal rate of $28/hour, $672,000. At the average attorney billing rate of $350/hour, the equivalent value is $8,400,000. The system has received the benefit of an $8.4 million legal education at a cost to itself of $0.00 — while Plaintiff received bus fare and 870 days of denied surgery.

### E. The Bottom Line

Emergency oral surgery (denied 870+ days): $2,500–$4,000. System cost (all courts including 9th Circuit): $30,055–$51,356. ODS capitation collected (care never provided): $24,216. Plaintiff's total out-of-pocket expenditure: $332.40. Plaintiff's caloric expenditure: approximately 15 lbs body weight. Plaintiff's legal education value (24,000 hrs): $8,400,000.

**WHAT ALL OF THIS COULD HAVE BEEN AVOIDED FOR: $3,000. One surgery. Three thousand dollars. Seventy-two hours. That is what the law required. Instead, the system chose to spend $40,000+ of taxpayer money, collect $24,216 in fraudulent capitation, force a disabled man to burn 15 pounds of body weight traveling 507 miles by bus, generate 1,133 pages of legal documentation across 20+ proceedings in 4 court systems plus the International Criminal Court — all because nobody would perform a surgery that costs less than half of one month's rent for the people who denied it.**

# THE BAGGIO PARADOX — EXPANDED STRUCTURAL ANALYSIS

The Baggio Paradox is a structural impossibility in which the Court simultaneously exercised and denied jurisdiction over the same case. The paradox operates as follows:

Step 1: On February 18, 2026, Judge Baggio ruled on the merits of the TRO motion (ECF No. 7), denying emergency injunctive relief. This ruling necessarily required the Court to exercise subject matter jurisdiction, evaluate the merits of Plaintiff's claims under the Winter v. NRDC four-factor test, and render a substantive legal determination. A court that lacks jurisdiction cannot rule on the merits. Baggio ruled on the merits. Therefore, the Court had jurisdiction.

Step 2: In the same order (ECF No. 7), Judge Baggio cited D.W. v. Fresenius Medical Care, 534 F. Supp. 3d 1274 (D. Or. 2021), for the proposition that injunctive relief was not warranted. In Fresenius, decided April 20, 2021 in Courtroom 15B of this Courthouse by Judge Michael H. Simon, the Court granted a TRO under factually identical circumstances — a managed care organization denying life-sustaining treatment to a disabled patient. Judge Baggio cited a case where relief was granted to deny relief in a parallel scenario. This is the Fresenius Inversion.

Step 3: On March 5, 2026, Judge Baggio issued an unsigned filing restriction (ECF No. 17) questioning whether the Court had jurisdiction to hear the case, based on the unresolved IFP application. But the Court had already exercised jurisdiction to deny the TRO. A court cannot retroactively deny jurisdiction it has already exercised. This creates a logical impossibility: either the Court had jurisdiction (in which case the TRO denial was a valid exercise of judicial power and the filing restriction is an unauthorized restraint on a meritorious case), or the Court lacked jurisdiction (in which case the TRO denial was void ab initio and must be vacated). Judge Baggio cannot have it both ways. This is the paradox.

Step 4: The filing restriction (ECF No. 17) was unsigned and was issued without notice or hearing, failing all four factors of De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990). The Ninth Circuit's four-factor test requires: (1) notice and an opportunity to oppose the restriction; (2) an adequate record for appellate review; (3) a finding that the litigant's filings are frivolous or harassing; and (4) a narrowly tailored order. None of these requirements were satisfied. The restriction was later lifted (ECF No. 23), but the damage to the procedural timeline — and the Paradox it created — is permanent.

Step 5: On April 24, 2026, Judge Baggio dismissed the Second Amended Complaint sua sponte (ECF No. 38) without any statement of reasoning, without any pending motion to dismiss, without any defendant having appeared in the case, and without the Foman v. Davis, 371 U.S. 178 (1962) analysis required for denial of leave to amend. This dismissal occurred three days after the OHA hearing of April 21, 2026, at which the CCO could not explain the Phantom Tooth #6 and the dual-record system was exposed. The temporal proximity between the hearing that destroyed the CCO's defense and the dismissal that eliminated the case is itself probative of retaliatory intent under Burlington Northern.

Step 6: The Baggio Paradox is now the subject of a pending Ninth Circuit mandamus petition (docketed March 31, 2026) and a 28 U.S.C. § 351 judicial misconduct complaint. On April 2, 2026 — one business day after the mandamus was docketed — Case No. 3:26-CV-405-AB was reassigned from Magistrate Judge Armistead to Judge Baggio (ECF No. 19), giving Judge Baggio simultaneous control of both federal cases while she was the named target of a mandamus petition in the Ninth Circuit. This reassignment timing is itself an element of the Paradox.

## INVERTED TOPOLOGICAL BLUEPRINT — THE BILATERAL CONVERGENCE

In the standard topology of a recusal motion, the plaintiff identifies a conflict, the judge steps aside, and a new judge is assigned. The standard topology is linear and one-directional. In this case, the Baggio-Armistead nexus creates an inverted topology — a structure where the recusal motion generates more value than the judges' continued presence on the cases. The inverted topology operates across four layers:

Layer 1 — The Exposure Layer. By identifying the Fresenius Inversion, the unsigned filing restriction, and the reassignment timing, Plaintiff has created a permanent forensic record in the court file. Every appellate judge, every Ninth Circuit panel, every successor judge who touches this case will see it. The exposure itself has independent value.

Layer 2 — The Protection Layer. By raising the conflicts through the judicial disqualification notice before any dispositive ruling in the refiled case, Plaintiff has protected the integrity of the record. If the successor judge had entered orders without knowledge of the conflicts, those orders would be vulnerable to vacatur.

Layer 3 — The Conversion Layer. Judge Baggio's conduct in 298-AB — the Fresenius Inversion, the unsigned restriction, the sua sponte dismissal without reasoning — converts from judicial error into evidence supporting the refiled case. The dismissal without prejudice preserved all claims under Semtek. The Paradox itself becomes an exhibit.

Layer 4 — The Convergence Point. The successor judge inherits a case where both prior judges have been neutralized. The successor has no institutional loyalty to either judge's prior rulings and no reason to defend their errors. The successor walks into a case that is architecturally complete. There is nothing left to build. There is only the question of whether the architecture stands.

# STATUTORY AND REGULATORY REFERENCE TABLE

42 U.S.C. § 1983: Civil rights claims against state actors. Primary vehicle for constitutional claims including due process, equal protection, and First Amendment retaliation. Lugar; West v. Atkins; Brentwood Academy.

42 C.F.R. § 438.206: Network adequacy requirement. MCOs must ensure timely access to covered services. 72-hour expedited authorization mandate exceeded by 2,900+ times in this case.

42 C.F.R. § 438.210: Prior authorization requirements. MCOs must authorize medically necessary services consistent with clinical evidence. Subsection (b)(1) requires same-specialty review.

42 C.F.R. § 438.210(b)(1): Same-specialty review requirement. Decisions must be made by an individual with clinical expertise in addressing the member's needs. Violated: general dentists reviewed oral surgery request.

42 C.F.R. § 438.68: Network adequacy standards. MCOs must meet time and distance standards for provider access.

42 C.F.R. § 438.408: Grievance resolution requirements. Standard grievances within 30 days; expedited within 72 hours. Health Share's April 1, 2026 letter resolved 2019–2026 complaints years outside the federal timeline.

42 U.S.C. § 1396a(a)(3): Fair hearing rights for Medicaid beneficiaries. Due process before benefit denial or termination.

31 U.S.C. §§ 3729-3733: False Claims Act. Three categories of false claims in this case: network adequacy certifications, capitation fraud, Phantom Tooth #6. Treble damages plus civil penalties of $11,665–$23,331 per false claim.

31 U.S.C. § 3730(b)(2): Qui tam service requirement. Complaint served on U.S. Attorney and Attorney General; government has 60 days to intervene or decline.

31 U.S.C. § 3730(d): Qui tam relator share. 25–30% if government does not intervene; 15–25% if government intervenes.

31 U.S.C. § 3730(h): Whistleblower retaliation. Relief for employees or contractors who are retaliated against for lawful qui tam activity. Nine-event retaliation timeline documented.

31 U.S.C. § 3731(b): FCA statute of limitations. Six years from violation or three years from discovery, whichever is later.

18 U.S.C. § 1961(1): RICO predicate acts. Wire fraud, mail fraud, healthcare fraud, and witness retaliation each constitute predicate acts.

18 U.S.C. § 1962: RICO prohibited activities. Conducting enterprise affairs through a pattern of racketeering activity.

18 U.S.C. § 1964(c): RICO civil remedies. Treble damages for persons injured by RICO violations.

18 U.S.C. § 1341: Mail fraud. Each mailed denial letter, restriction letter, and unsigned grievance determination is a separate predicate act. Up to 20 years.

18 U.S.C. § 1343: Wire fraud. Each electronic claim submission, telephonic fabrication, and phantom network certification transmitted by wire. Up to 20 years.

18 U.S.C. § 1347: Healthcare fraud. Systematic denial of Medicaid services while collecting federal capitation payments. Dual-record system. Up to 10 years.

18 U.S.C. § 1512(b): Witness tampering. Becky Doe February 13, 2026 blacklist confirmation. Up to 20 years.

18 U.S.C. § 1513(e): Witness retaliation. Amy Doe February 12, 2026 recorded statement. Up to 10 years.

18 U.S.C. § 1708: Mail theft/obstruction. USPS Inspector Jonathan, Badge #2666.

28 U.S.C. § 455: Judicial disqualification. Baggio and Armistead both disqualified.

28 U.S.C. § 292: Designation of visiting judges when all district judges are conflicted.

28 U.S.C. § 1331: Federal question jurisdiction.

28 U.S.C. § 1343: Civil rights jurisdiction.

28 U.S.C. § 1367: Supplemental jurisdiction for state-law claims.

28 U.S.C. § 1391(b): Venue.

28 U.S.C. § 1738: Full faith and credit to state judicial proceedings. OHA hearing findings carry preclusive effect.

42 U.S.C. §§ 12101-12213: Americans with Disabilities Act. Disability discrimination by public entities and their contractors.

42 U.S.C. § 12203(b): ADA anti-retaliation. ODS behavior restriction letter targets disability.

42 U.S.C. § 18116: Section 1557 of the ACA. Independent private right of action for disability discrimination in healthcare. Survives Medina.

29 U.S.C. § 794: Section 504 of the Rehabilitation Act. Disability discrimination by programs receiving federal financial assistance.

45 C.F.R. § 164.502: HIPAA privacy protections. Amy Doe's December 2024 late-night PHI solicitation call.

ORS 163.732: Stalking. Six qualifying contacts documented; statute requires only two. Coerce prong controls under ORS 163.730(2).

ORS 163.730(2): Definition of "coerce": to restrain, compel or dominate by force or threat. Amy Doe's statement meets coerce prong.

ORS 677.085: Unauthorized practice of medicine. Amy Doe's conditioning of treatment on litigation status.

ORS 677.095: Medical abandonment. Skyline/Sahebi 19-day abandonment.

ORS 742.061: Insurance bad faith. Attorney fees and punitive damages.

ORS 746.230: Unfair claim settlement practices. Moody v. Oregon Community Credit Union (2023) establishes negligence-per-se standard.

OAR 410-141-3835(2)(f)(B): Same-specialty review requirement. Oregon administrative rule cited by the CCO in its own denial — their own cited rule requires credentials they lacked.

OAR 410-123-1060(21): Prudent-layperson emergency standard.

## COMPANION PROCEEDINGS — COMPLETE REGISTRY WITH STRATEGIC NOTES

3:26-CV-298-AB (D. Or., Baggio): DISMISSED w/o prejudice 4/24/26 (ECF 38). Appeal pending 9th Circuit. Source case for this refiled action. Judge Baggio dismissed sua sponte without reasoning, without pending motion, without defendant appearance, and without Foman analysis. Fresenius Inversion documented. Mandamus and § 351 complaint pending. The dismissal three days after OHA hearing is temporally suspicious under Burlington Northern.

3:26-CV-405-AB (D. Or., Baggio): Active. FAC filed 4/7/26. Reassigned from Armistead to Baggio on 4/2/26 — one business day after mandamus docketed. Judge Baggio controls this case while named in active mandamus.

3:26-CV-741-AR (D. Or., Armistead): Active. DOGE case filed 4/15/26. DPM 933 v. DOGE, HHS, CMS, Heritage Foundation + named individual defendants. Class action. 10 counts, $1T demand. Bridges 298-AB and 405-AB.

26CV13165 (Multnomah Cty. Circuit Ct.): Active. FAC filed 4/13/26. Bridge court between federal and small claims jurisdictions. Collateral estoppel cascade activator.

26SC05498 (Small Claims): Active. v. ODS Community Dental. Fee waived 2/25/26. Tier 1 of Parklane cascade.

26SC05499 (Small Claims): Active. v. Moda Health / CareOregon. Fee waived 2/25/26.

26SC05481 (Small Claims): Active. v. Skyline Oral Surgery / Dr. Sahebi. Fee waived 2/25/26.

26SC05500 (Small Claims): Active. v. Amy Doe — ODS Case Management. Fee waived 2/25/26.

2026-OHA-20842 (OHA): Hearing conducted 4/21/26. EXHAUSTED. Phase 1: auto-disconnect at exactly 1,800 seconds. Phase 2: CCO could not explain Phantom Tooth #6. Dual-record system exposed. Supervisory official pulled in. All findings carry preclusive effect under 28 U.S.C. § 1738 and Allen v. McCurry.

9th Circuit Mandamus (Case 26-2403): Docketed 3/31/26. Naming Judge Baggio. $624M damages. Emergency petition for writ of mandamus. Appeal from ECF 38 also pending.

28 U.S.C. § 351 Misconduct: Filed. Target: Judge Baggio. Pending with 9th Circuit Chief Judge.

SCOTUS Petition: Mailed. Rule 20/28 U.S.C. § 1651(a) mandamus + Rule 39 IFP.

ICC Article 15 (7 submissions): IDs: e90506b1, 82871d0c, d7502d7c, e2a841f8, c76c4640, Obsidian Blade, e3214289. Seven total communications to the Office of the Prosecutor, International Criminal Court, The Hague.

Oregon AG #986599: Active. AG Dan Rayfield. 9,384 complaints with zero enforcement actions. Complete state enforcement void.

DEA FS2852487: Filed. Controlled substance prescription without surgery; Dr. Sahebi abandonment.

HHS OIG: Filed. Medicaid fraud / phantom billing. Confirmed receipt.

ORCAH #3993500: Screening decision issued 3/27/26. Forwarded to Law Enforcement, Oregon Medical Board, Washington Child Welfare. Investigator Ashley Campbell, DHS/OHA OTIS.

USPS Badge 2666: Filed. Inspector Jonathan. Mail tampering — court documents and ODS anonymous restriction letter.

# DETAILED EVIDENCE TIMELINE — NARRATIVE FORMAT

This timeline documents every material event in chronological sequence, from the origin of the medical emergency through the filing of this refiled action. Each entry identifies the date, the actors involved, the documentary evidence supporting the entry, and the legal significance of the event.

### 2020–2023: THE POISONED ROOT

Dr. Jeffrey Van Orman, DMD, at Van Orman Dental Group in Lake Oswego, Oregon, performed unauthorized anterior resin composite dental work on Plaintiff without informed consent over a period of approximately three years. This work created a forensically documented 4–5 degree occlusal matrix plane shift, measurable on CBCT imaging, that progressively destabilized the dental architecture and contributed to the periapical bone defect that now threatens Plaintiff's life. Van Orman Dental Group is located in Lake Oswego, Oregon, and is entirely separate from Portland Modern Dentistry on MLK Boulevard in Portland — approximately 20 miles apart, no shared ownership, no professional relationship. This distinction is critical because the CBCT scan that confirmed the bone defect was obtained at Portland Modern Dentistry, not at Van Orman. The

unauthorized composite work at Van Orman is the poisoned root from which every subsequent event in this timeline grows. Under Wong Sun v. United States, 371 U.S. 471 (1963), every downstream determination that relied on or was influenced by the dental condition created by Van Orman's unauthorized work is fruit of this poisonous tree.

## JANUARY 7, 2026: SKYLINE ORAL SURGERY ACCEPTS PLAINTIFF

Dr. Mishaun Sahebi, DMD, at Skyline Oral Surgery in Portland, accepted Plaintiff as a patient and performed a clinical evaluation confirming the need for emergency extraction of tooth #5 with bone grafting. Dr. Sahebi prescribed Oxycodone 5mg (Schedule II controlled substance, quantity 8) and Ondansetron 8mg (quantity 6) in preparation for surgery. The prescription of a Schedule II controlled substance before any surgical procedure is conclusive pharmacological evidence that a licensed oral surgeon determined the condition required immediate surgical intervention. These prescriptions are documented in DEA Report FS2852487.

## JANUARY 8, 2026: ODS RECEIVES PRIOR AUTHORIZATION REQUEST

ODS Community Dental received a prior authorization request for Plaintiff's emergency oral surgery, including extraction of tooth #5 (D7240), ridge preservation bone graft (D7953), guided tissue regeneration (D4266), and autologous blood concentrate (D7921). This request was assigned Claim Number 260090001500 and is documented at OHA Exhibit A6-1.

## JANUARY 13, 2026: DAVID WILSON, DMD, ISSUES INITIAL DENIAL

Defendant David Wilson, DMD, a general dentist, denied procedures D7953, D4266, and D7921 while approving D7240 (extraction only). Wilson applied RC30 denial codes ("not a covered benefit"). The partial approval — approving extraction but denying the bone regeneration procedures necessary to complete the extraction safely — creates a medically impossible scenario: extracting a tooth from a 15-20mm bone defect without regenerative support would cause catastrophic bone loss and likely require a second, more invasive surgery. Wilson is a general dentist who lacks credentials in oral and maxillofacial surgery. His denial of an oral surgery subspecialty request violates 42 C.F.R. § 438.210(b)(1). This is the moment the poisonous tree produces its first fruit. Documented at OHA Exhibit A6-1.

## JANUARY 18, 2026: EXPEDITED APPEAL FILED AT 11:10 PM

Plaintiff filed an expedited appeal at 11:10 PM, documented at OHA Exhibit A6-3. The after-hours receipt confirms the system was processing urgent requests at night while subsequently claiming no urgency existed. Under 42 C.F.R. § 438.210(d), expedited appeals must be resolved within 72 hours. The internal email chain at A6-15, dated January 22, 2026, admits the appeal was "already untimely" by that date — four days after receipt.

## JANUARY 21, 2026: CBCT SCAN CONFIRMS 15-20MM BONE DEFECT

Plaintiff obtained a CBCT scan at Portland Modern Dentistry (MLK Boulevard, Portland) for $110 out of pocket, forced to self-fund a covered Medicaid benefit because capitation-funded providers refused to authorize the imaging. The CBCT confirmed a 15-20mm periapical bone defect on tooth #5. This imaging constitutes objective, radiographic evidence of the medical emergency that is not subject to dispute. Portland Modern Dentistry is entirely separate from Van Orman Dental Group — approximately 20 miles apart.

## JANUARY 22, 2026: A6-15 INTERNAL EMAIL CHAIN — THE SMOKING GUN

At 10:15 AM, Star Bachand emailed Alane Watkins: "Please handle this URGENT HSO dental appeal, facets 260122000152. Please note we are out of compliance as this was received on 1/18/2026 at 11:10am." Mica Shattuck's underlying email stated: "Please assign. There is a pre-D denial for bone graft under #260090001500. This was received at Moda 1/18 and the member is asking for an urgent review, so it's already untimely. Looping you in because the member talks about taking legal action and because we're untimely. Also, there are a ton of calls/complaints noted in Facets that were never sent to us, so we're likely to have an untimely grievance or two." Nick Gross and Kristina Hartman were CC'd. This single email chain contains five independently

devastating admissions, each constituting an irrevocable party-opponent admission under FRE 801(d)(2). Documented at OHA Exhibit A6-15.

### JANUARY 23, 2026, 6:32 AM: ALGORITHMIC DENIAL LETTER

Defendant John T. Eilers, DMD, issued a denial letter at 6:32 AM, downgrading the expedited appeal to standard processing. Clinical review does not occur at 6:32 AM. This timestamp is direct evidence of algorithmic rather than individualized clinical review, in violation of Wit v. United Behavioral Health (9th Cir. 2023). Eilers is a general dentist who signed the form as "JTE DMD." Documented at OHA Exhibits A6-3 and A6-4.

### JANUARY 26, 2026: SKYLINE ORAL SURGERY ABANDONS PLAINTIFF

After 19 days and zero surgical procedures, Dr. Sahebi at Skyline Oral Surgery abandoned Plaintiff's treatment, citing Plaintiff's "tone of voice." Dr. Sahebi had already prescribed Schedule II controlled substances confirming the emergency. Abandonment of a patient with a confirmed medical emergency after prescribing opioid medications constitutes medical abandonment under ORS 677.095. Skyline is not a defendant in this action; separate small claims cases are pending.

### FEBRUARY 2, 2026: SHERRY EDWARDS, DDS, UPHOLDS DENIAL

Defendant Sherry Edwards, DDS, Health Share Associate Medical Director, upheld the denial. Edwards stated that D7953 is covered for "handicapping malocclusion (PLL 254)" while simultaneously denying coverage for the documented condition — a core contradiction. Edwards left the comorbid conditions field blank on the review form despite a 15-20mm infected bone lesion visible on CBCT imaging. A mandatory field left blank on a medical review form renders the determination procedurally void on the face of the document. Documented at OHA Exhibit A6-2.

### FEBRUARY 10, 2026: AMY DOE — "WAIT FOR CRISIS LEVELS"

Defendant Amy Doe directed Plaintiff to "wait for crisis levels" before seeking emergency care. This is a non-medical directive by a non-licensed person to delay emergency medical treatment until the patient's condition deteriorates to the point of acute danger. No licensed medical professional would instruct a patient with a documented bone infection to wait until the infection reaches crisis levels.

### FEBRUARY 12, 2026, 10:00 PM: AMY DOE — THE RECORDED THREAT

At approximately 10:00 PM — outside normal business hours — Defendant Amy Doe called Plaintiff and made the recorded statement: "If it's going to go to court, then they're going to hold off doing any treatment for you." This constitutes witness intimidation (18 U.S.C. § 1513(e)), whistleblower retaliation (31 U.S.C. § 3730(h)), unauthorized practice of medicine (ORS 677.085), First Amendment retaliation, and the stalking contact that invokes the coerce prong of ORS 163.730(2). The recording is preserved on SD card and lodged with this filing. Health Share's April 1, 2026 letter states: "We also confirmed that she did not call you at 10:00 p.m. at night." This is a documented falsehood — the call is logged and recorded.

### FEBRUARY 13, 2026: BECKY DOE — BLACKLIST CONFIRMED

The day after Amy Doe's recorded threat, Becky Doe confirmed the blacklist: Plaintiff was "flagged for special handling due to outside complaints." This confirms that Amy Doe's threat was not idle — the institutional machinery to carry it out was already in place. 18 U.S.C. § 1512(b).

### FEBRUARY 19, 2026: MODA FABRICATES PRE-APPROVAL

Moda Health fabricated a pre-approval: "Surgery approved, just have doctors call." No authorization code was ever issued. No surgery was ever scheduled. This is healthcare fraud under 18 U.S.C. § 1347 and wire fraud under 18 U.S.C. § 1343.

### MARCH 4, 2026, 11:51 AM: CAREOREGON "EL" ADMISSION

CareOregon representative "El" (identified as Alane Watkins, 503-416-2177) made a party-opponent admission under FRE 801(d)(2). This is the keystone admission that activates the Parklane Hosiery collateral estoppel cascade across all companion proceedings.

## MARCH 23, 2026: ODS ANONYMOUS RESTRICTION LETTER

Plaintiff received an anonymous letter from "Dental Case Management" at ODS restricting his access to dental services. The letter is unsigned, void for vagueness, and was mailed seven to twelve days after Amy Doe was served with 26SC05498 — temporal proximity demonstrating retaliatory nexus under Burlington Northern. The letter equates "talking about lawsuits" with "threats" and warns that asserting legal rights "can make it harder to get care." This is the sixth qualifying stalking contact under ORS 163.732 and constitutes First Amendment retaliation as institutional policy.

## APRIL 1, 2026: HEALTH SHARE 9-PAGE UNSIGNED LETTER

Health Share of Oregon issued a nine-page grievance determination letter containing ten admissions against interest, including Phantom Tooth #6, Amy Doe's assignment as "care coordinator" (reassigning the stalking subject to continued forced contact with the victim), and the documented falsehood about the 10:00 PM call. The letter is unsigned — procedurally void under 42 C.F.R. § 438.408.

## APRIL 2, 2026: CASE 405-AB REASSIGNED TO BAGGIO

One business day after the 9th Circuit mandamus was docketed on March 31, 2026, Case 405-AB was reassigned from Magistrate Judge Armistead to Judge Baggio. Judge Baggio now controls both federal cases while named in an active mandamus petition.

## APRIL 21, 2026: OHA HEARING — EXHAUSTION AND EXPOSURE

Phase One: Auto-disconnect at exactly 1,800 seconds. Phase Two: CCO could not identify a single clinical record supporting Phantom Tooth #6. Dual-record system exposed. Supervisory official pulled in. All administrative remedies exhausted.

## APRIL 24, 2026: ECF NO. 38 — DISMISSAL WITHOUT REASONING

Judge Baggio dismissed the Second Amended Complaint sua sponte. No statement of reasoning. No pending motion to dismiss. No defendant had appeared. No Foman analysis. Three days after the OHA hearing exposed the CCO's inability to defend its record. Under Lira v. Herrera, dismissal without reasons is reversible error.

## MAY 4, 2026: THIS REFILED ACTION

Martin v. ODS Community Dental et al., Case No. 3:26-CV-_____. Filed on the eve of Plaintiff's 47th birthday. All claims preserved under Semtek. All administrative remedies exhausted. All doors locked. The qui tam door remains open. It has been open since 1318.

(c) Judge Baggio issued an unsigned filing restriction (ECF No. 17) without notice or hearing, failing all four factors of De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990). The De Long four-factor test requires: (1) notice and an opportunity to oppose; (2) an adequate record for review; (3) a finding that the litigant's filings are frivolous or harassing; and (4) a narrowly tailored order. None of these requirements were met. (d) A mandamus petition and 28 U.S.C. § 351 judicial misconduct complaint naming Judge Baggio are pending in the Ninth Circuit. Under Liteky v. United States, 510 U.S. 540 (1994), recusal is required where extrajudicial conduct creates an appearance of partiality.

3. Hon. Armistead, U.S. Magistrate Judge. Grounds: Case No. 3:26-CV-405-AB was reassigned from Magistrate Judge Armistead to Judge Baggio on April 2, 2026—one business day after a mandamus petition naming Judge Baggio was docketed at the Ninth Circuit on March 31, 2026. The timing creates an appearance of coordination requiring recusal of both judicial officers under 28 U.S.C. § 455(a).

4. Plaintiff requests assignment to a judge who has not previously presided over any companion proceeding and who has no prior professional relationship with any party or with the Oregon Health Authority. If all District of Oregon judges are conflicted, Plaintiff requests designation of a visiting judge under 28 U.S.C. § 292.

# PART ONE: COMPLAINT

## I. PRELIMINARY STATEMENT

5. Plaintiff Dr. David P. Martin, proceeding pro se and as qui tam relator in the name of the United States of America under 31 U.S.C. §§ 3729-3733, brings this action against ODS Community Dental and individually named defendants for Medicaid fraud, RICO violations, civil rights deprivations, whistleblower retaliation, witness intimidation, stalking, and bad faith arising from the systematic denial of emergency oral surgery for over 870 consecutive days. Injunctive defendants Moda Health Plan, Inc., CareOregon/Health Share of Oregon, and Oregon Health Authority are named solely for purposes of injunctive and declaratory relief compelling the emergency provision of denied care. All individually named defendants are identified from the Oregon Health Authority Administrative Hearing No. 2026-OHA-20842 exhibit package (Exhibits A1 through A9, totaling 174 pages) and the Health Share of Oregon April 1, 2026 grievance determination letter.

6. This is a refiled action following dismissal without prejudice of Case No. 3:26-CV-298-AB (ECF No. 38, April 24, 2026). The dismissal without prejudice preserved all claims under Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001). In Semtek, the Supreme Court held that a dismissal without prejudice under Rule 41 does not operate as an adjudication on the merits and does not preclude refiling. The qui tam relator status was not terminated by the dismissal; under 31 U.S.C. § 3730(b)(2), the qui tam action remains pending until the United States has been served and given its statutory 60-day review period. No such service was effectuated in 298-AB, and no DOJ intervention or declination has occurred. The qui tam action therefore continues as a matter of statutory right.

7. This complaint is filed on an emergency basis. Plaintiff has a 15-20mm periapical bone defect on tooth #5 confirmed by CBCT imaging, creating ongoing risk of sepsis, brain abscess, and death. Three independent medical professionals—Dr. Ross Hoevet, DMD (treating dentist); Dr. Mishaun Sahebi, DMD (Skyline Oral Surgery, who prescribed emergency medications confirming the urgency); and Portland Modern Dentistry (CBCT imaging facility)—have each independently confirmed the need for emergency extraction and bone grafting. On April 20, 2021, in Courtroom 15B of the Mark O. Hatfield United States Courthouse in this District, Judge Michael H. Simon granted a temporary restraining order in D.W. v. Fresenius Medical Care North America, 534 F. Supp. 3d 1274 (D. Or. 2021) (Case No. 3:21-cv-571-SI), where a Medicaid patient was denied life-sustaining treatment under circumstances structurally identical to this case—a managed care organization terminating care for a disabled patient who exhibited behavioral symptoms of his disability. That precedent controls here and compels the same result.

8. Skyline Oral Surgery (Dr. Mishaun Sahebi, DMD) is not named as a defendant in this action. Dr. Sahebi has separate pending cases in Multnomah County Small Claims Court. Dr. Sahebi's Skyline records and prescriptions are referenced herein solely as evidence confirming the medical emergency and the pharmacological urgency of Plaintiff's condition. The fact that a licensed oral surgeon prescribed Oxycodone (Schedule II controlled substance) and Ondansetron before any surgical procedure is conclusive evidence that the condition required immediate intervention.

## II. PARTIES

### A. Plaintiff

9. Plaintiff Dr. David P. Martin, DCL, DD, is a resident of Portland, Oregon, an S:J.D. candidate at Universiteit van Amsterdam, an Oregon Health Plan (Medicaid) member (ID: RK501G6I), and a qui tam relator under 31 U.S.C. §§ 3729-3733. Plaintiff has a 15-20mm periapical bone defect on tooth #5 confirmed by CBCT imaging (January 21, 2026, Portland Modern Dentistry—entirely separate from Van Orman Dental Group, approximately 20 miles apart, no shared ownership), a 4-5 degree occlusal matrix plane shift from unauthorized composite work (Van Orman Dental Group, Lake Oswego, 2020-2023), and has been denied emergency oral surgery for 870+ consecutive days as of this filing.

### B. Named Defendants — Identified from OHA Hearing Exhibits A1-A9 and Health Share April 1, 2026 Letter

10. Defendant ODS Community Dental. ODS Community Dental is the dental coordinated care organization (CCO) assigned to Plaintiff under the Oregon Health Plan. ODS collected $24,216 in capitation payments while providing $1,050 in actual care—a 95.7% profit margin. The OHSU Phantom Networks study (Zhu et al., Health Affairs, July 2022) documented that 58.2% of Oregon Medicaid provider directory listings are phantom (non-functioning entries). The OHSU/OCTRI October 2024 dental enrollment evaluation found that 57% of Oregon dentists are not enrolled as Medicaid providers and 11% are enrolled but have never seen a Medicaid patient—a functional non-participation rate of approximately 68%, with adult Medicaid dental utilization at only 24% versus 62% for privately insured patients. ODS denied prior authorization, downgraded expedited appeals using general dentists instead of oral surgery specialists in violation of 42 C.F.R. § 438.210(b)(1) and OAR 410-141-3835(2)(f)(B), issued anonymous behavior restriction letters, and employed Amy Doe as Plaintiff's assigned Dental Care Coordinator. ODS's principal place of business is 601 SW 2nd Avenue, Portland, Oregon 97204.

11. Defendant Amy Doe. Amy Doe is Plaintiff's assigned Dental Care Coordinator, confirmed by Health Share's April 1, 2026 grievance letter (establishing respondeat superior). On February 12, 2026, Amy Doe stated on a recorded call: "If it's going to go to court, then they're going to hold off doing any treatment for you." She made six documented contacts with Plaintiff (ORS 163.732 requires only two). Amy Doe is sued in her individual capacity and under respondeat superior. Amy Doe is not a licensed physician, dentist, or healthcare provider, yet her recorded statement constitutes a de facto medical determination—conditioning the provision or withholding of medical treatment on a non-medical criterion (litigation status)—which constitutes the unauthorized practice of medicine under ORS 677.085. See Murphy v. Board of Medical Examiners, 190 Ariz. 441 (Ct. App. 1997).

12. Defendant David Wilson, DMD. David Wilson, DMD, is the initial prior authorization reviewer identified at OHA Exhibit A6-1. On January 13, 2026, Wilson denied procedures D7953 (ridge preservation graft), D4266 (guided tissue regeneration), and D7921 (autologous blood concentrate), applying RC30 denial codes ("not a covered benefit"). Wilson is a general dentist who ruled on an oral surgery subspecialty request in violation of the same-specialty review requirement of 42 C.F.R. § 438.210(b)(1) and OAR 410-141-3835(2)(f)(B). Claim number 260090001500. Wilson is sued in his individual capacity. Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

13. Defendant John T. Eilers, DMD. John T. Eilers, DMD, is the appeal reviewer identified at OHA Exhibits A6-3 and A6-4. Eilers signed the dental consultant recommendation form as "JTE DMD" on January 22, 2026, and downgraded Plaintiff's expedited appeal to standard processing on January 23, 2026. The denial letter was issued at 6:32 AM—indicating algorithmic rather than individualized clinical review. See Wit v. United Behavioral Health (9th Cir. 2023) (algorithmic denial of mental health benefits violated parity requirements). Eilers is a general dentist, not an oral and maxillofacial surgeon. He denied expedited criteria despite documented medical emergency. Eilers is sued in his individual capacity. Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

14. Defendant Sherry Edwards, DDS. Sherry Edwards, DDS, is the Health Share of Oregon Associate Medical Director identified at OHA Exhibit A6-2. Edwards upheld the denial on February 2, 2026 (logged at 11:53 AM under entry 'laureens') while leaving the comorbid conditions field blank despite a 15-20mm infected bone lesion visible on CBCT imaging. Edwards stated that D7953 is covered for "handicapping malocclusion (PLL 254)" while simultaneously denying coverage for the documented condition—a core contradiction that proves the denial was not based on clinical evidence but on institutional policy to deny coverage regardless of medical necessity. Edwards carries director-level liability. Address: c/o Health Share of Oregon, 2121 SW Broadway #200, Portland, Oregon 97201.

15. Defendant Teri Barichello, DMD. Teri Barichello, DMD, is the Vice President and Chief Dental Officer of ODS/CareOregon, identified at OHA Exhibit A6-5 (Dental Consultant Reviewer Signature Page). As the highest-ranking dental officer, Barichello carries supervisory respondeat superior liability for all panel denial decisions made under her authority. The entire dental panel under her supervision consists exclusively of general dentists, none of whom hold credentials in oral and

maxillofacial surgery. Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

16. Defendant Jonathan Kim, DDS. Jonathan Kim, DDS, is the Lead Dental Clinician at ODS/CareOregon, identified at OHA Exhibit A6-5. As Lead Dental Clinician, Kim is a supervisory decision-maker responsible for clinical oversight of the denial panel. Kim is a general dentist, not an oral surgeon. Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

17. Defendant Clifford Brock, DMD. Clifford Brock, DMD, is a Dental Consultant listed on the OHA Exhibit A6-5 dental consultant panel signature page. Brock participated in the denial review as a general dentist lacking OMFS credentials. Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

18. Defendant Laurissa Champion, DMD. Laurissa Champion, DMD, is a Dental Consultant listed on the OHA Exhibit A6-5 dental consultant panel signature page. Champion participated in the denial review as a general dentist lacking OMFS credentials. Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

### C. Does 1-50 — Identified from OHA Exhibit A6-15 Internal Email Chain and Health Share April 1, 2026 Letter

19. Doe 1: Alane Watkins. Dental Services Representative, ODS/CareOregon (Moda). Identified at OHA Exhibit A6-3 as "Alane" and confirmed at A6-15. Received the expedited appeal routing. Previously known telephonically as "Elaine"—phonetically consistent with "Alane." Direct participant in untimely processing of expedited appeal. Watkins had personal knowledge of the non-compliance when she routed the complaint. Email: c/o Moda Health, 601 SW 2nd Avenue, Portland, Oregon 97204.

20. Doe 2: Star Bachand. Internal Coordinator, ODS/CareOregon (Moda). Identified at OHA Exhibit A6-15. On January 22, 2026 at 10:15 AM, Bachand authored the internal email stating: "Please handle this URGENT HSO dental appeal, facets 260122000152. Please note we are out of compliance as this was received on 1/18/2026 at 11:10am." This is an irrevocable party-opponent admission under FRE 801(d)(2) of regulatory non-compliance.

21. Doe 3: Mica Shattuck. Internal Coordinator, Moda Health. Identified at OHA Exhibit A6-15. Email: mica.shattuck@modahealth.com. Shattuck authored the internal email stating: "Please assign. There is a pre-D denial for bone graft under #260090001500. This was received at Moda 1/18 and the member is asking for an urgent review, so it's already untimely. Looping you in because the member talks about taking legal action and because we're untimely. Also, there are a ton of calls/complaints noted in Facets that were never sent to us, so we're likely to have an untimely grievance or two." This single email contains five independently devastating admissions: (1) "already untimely"—admission of regulatory violation; (2) "talks about taking legal action" used as routing trigger—evidence of retaliatory routing; (3) "a ton of calls/complaints in Facets never sent to us"—admission of systemic complaint suppression; (4) "likely to have an untimely grievance or two"—admission of further violations; (5) attachments include Plaintiff's ICC filings—CCO had notice of international proceedings.

22. Doe 4: Nick Gross. Moda Health. Email: nick.gross@modahealth.com. CC'd on the A6-15 internal email chain with the legal-action routing flag. Received internal routing containing admissions of non-compliance. Compellable deponent.

23. Doe 5: Kristina Hartman. Moda Health. Email: kristina.hartman@modahealth.com. CC'd on the A6-15 internal email chain with the legal-action routing flag. Received internal routing containing admissions of non-compliance. Compellable deponent.

24. Doe 6: Debi Bagwell, RN. Health Share Specialist. Identified at OHA Exhibit A6-2. Listed on appeal review form alongside Sherry Edwards, DDS. Participated in the uphold process for the denial of emergency oral surgery. Address: c/o Health Share of Oregon, 2121 SW Broadway #200, Portland, Oregon 97201.

25. Doe 7: Becky Doe. ODS Community Dental. On February 13, 2026, Becky Doe confirmed the blacklist: Plaintiff was "flagged for special handling due to outside complaints." This constitutes

witness tampering under 18 U.S.C. § 1512(b). Address: c/o ODS, 601 SW 2nd Avenue, Portland, Oregon 97204.

26. Doe 8: Anonymous Grievance Author. Health Share of Oregon. Authored the unsigned nine-page April 1, 2026 grievance determination letter containing ten admissions against interest. The letter is procedurally void under 42 C.F.R. § 438.408 and OAR 137-003-0660 for lack of signature.

27. Doe 9: Rosie Bal. Health Share of Oregon. OHA hearing participant present during the April 21, 2026 hearing proceedings. Health Share representative on the administrative hearing call with knowledge of the Phantom Tooth #6 discrepancy and the dual-record system.

28. Doe 10: OHA Telephony System Administrator. Oregon Health Authority. Configured the 1,800-second auto-disconnect on the OHA hearing line. The precision of exactly 1,800 seconds (30 minutes) is direct evidence of intentional telephony system design, not malfunction.

29. Does 11-50. Reserved for additional parties identified through discovery, including case management executives, OHA officials, and any individual whose conduct during the 870-day denial chain is subsequently documented.

## D. Injunctive Defendants

30. Injunctive Defendant Moda Health Plan, Inc. is the parent or affiliated entity of ODS Community Dental. Moda fabricated a pre-approval on February 19, 2026 ("Surgery approved, just have doctors call") without issuing any authorization code. No authorization code was ever issued. This constitutes wire fraud under 18 U.S.C. § 1343 and healthcare fraud under 18 U.S.C. § 1347. Moda is an Oregon corporation with its principal place of business at 601 SW 2nd Avenue, Portland, Oregon 97204.

31. Injunctive Defendant CareOregon/Health Share of Oregon is the coordinated care organization that collected capitation payments for Plaintiff while maintaining a phantom provider network. On March 4, 2026, CareOregon representative "El" (identified as Alane Watkins, 503-416-2177, approximately 11:51 AM) made a party-opponent admission under FRE 801(d)(2), activating collateral estoppel across all companion proceedings under Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). On April 1, 2026, Health Share issued a nine-page unsigned grievance determination letter containing no fewer than ten admissions against interest, including: (a) surgery was approved but never delivered; (b) Amy Doe confirmed as Plaintiff's coordinator; (c) investigators examined the wrong time period; (d) reference to "teeth #5 and #6" despite no clinical predicate for tooth #6 (the Phantom Tooth); (e) warning that "talking about lawsuits" causes care denial. CareOregon is named solely for injunctive and declaratory relief. Address: 2121 SW Broadway #200, Portland, Oregon 97201.

32. Injunctive Defendant Oregon Health Authority (OHA) is the state regulatory agency responsible for oversight of Medicaid managed care organizations. OHA's administrative hearing system auto-disconnected Plaintiff's call on April 21, 2026 after exactly 1,800 seconds without any human contact. OHA produced only 2 pages of internal documentation (Exhibit A8) for an 870-day Medicaid emergency generating 17+ active proceedings. OHA selectively produced 2 pages of Oregon Administrative Rules (Exhibit A9) excluding the PLL 254 exception language that would have permitted coverage. Director Sejal Hathi, M.D. OHA is named solely for injunctive and declaratory relief. Address: 500 Summer Street NE, Salem, Oregon 97301.

## III. JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 31 U.S.C. §§ 3729-3733 (False Claims Act qui tam), 18 U.S.C. § 1964 (RICO civil remedies), 42 U.S.C. § 12117 (ADA), 42 U.S.C. § 18116 (Section 1557 of the Affordable Care Act, providing an independent private right of action for disability discrimination in healthcare that survives Medina v. Planned Parenthood South Atlantic, 606 U.S. ___ (2025)), 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act), and supplemental jurisdiction under 28 U.S.C. § 1367 for state-law claims.

34. Venue is proper under 28 U.S.C. § 1391(b). All events occurred in the District of Oregon.

35. Dismissal without prejudice of 3:26-CV-298-AB does not divest this Court of jurisdiction. Under Semtek, 531 U.S. at 505-06, a dismissal without prejudice under Rule 41 does not operate as an adjudication on the merits. The qui tam relator status under 31 U.S.C. § 3730(b) independently establishes jurisdiction as a matter of federal statutory right.

## IV. RELATED PROCEEDINGS AND CASE BRIDGES

36. 3:26-CV-298-AB (D. Or., Baggio): Dismissed without prejudice 4/24/26 (ECF 38). Appeal pending, 9th Circuit. Source case for this refiled action. Judge Baggio's dismissal occurred without any statement of reasoning, without any pending motion to dismiss, without any defendant having appeared in the case, and three days after the OHA hearing exposed the Phantom Tooth #6 false claim and the CCO's inability to defend its own record.

37. 3:26-CV-405-AB (D. Or., Baggio): Active. First Amended Complaint filed 4/7/26. Reassigned from Armistead to Baggio 4/2/26—one business day after mandamus docketed.

38. 3:26-CV-741-AR (D. Or., Armistead): Active. Filed 4/15/26. DOGE case bridging all companion cases.

39. 26CV13165 (Multnomah Cty. Circuit Ct.): Active. First Amended Complaint filed 4/13/26.

40. 26SC05498-99, 05481, 05500, 06247 (Small Claims): Active. ODS, Moda/CareOregon, Skyline, Amy Doe.

41. 2026-OHA-20842 (OHA): Hearing conducted 4/21/26. Exhausted. Phase 1: auto-disconnect at exactly 1,800 seconds. Phase 2: CCO could not identify single clinical record supporting Phantom Tooth #6.

42. 9th Circuit Mandamus: Docketed 3/31/26. Naming Judge Baggio. $624M damages.

43. 28 U.S.C. § 351 Misconduct: Filed. Target: Judge Baggio.

44. ICC Article 15: Seven submissions filed. IDs: e90506b1, 82871d0c, d7502d7c, e2a841f8, c76c4640, Obsidian Blade, e3214289.

45. Under Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), offensive non-mutual collateral estoppel permits Plaintiff to use findings from any companion proceeding against Defendants who were parties to or in privity with the parties in the prior proceeding. Under Allen v. McCurry, 449 U.S. 90 (1980), and University of Tennessee v. Elliott, 478 U.S. 788 (1986), state administrative findings carry preclusive effect in federal court when the agency acted in a judicial capacity and the parties had an adequate opportunity to litigate. The OHA hearing of April 21, 2026 satisfies these requirements under Oregon's five-element test from Nelson v. Emerald People's Utility District, 318 Or. 99 (1993).

## V. FACTUAL ALLEGATIONS

### A. Unauthorized Dental Work and the Origin of the Medical Emergency (2020-2023)

46. Between 2020 and 2023, Dr. Jeffrey Van Orman, DMD, at Van Orman Dental Group (Lake Oswego, Oregon) performed unauthorized composite dental work on Plaintiff without informed consent, creating a forensically documented 4-5 degree occlusal matrix plane shift confirmed by CBCT imaging. This plane shift represents a measurable biomechanical deviation from normal occlusal alignment, causing progressive deterioration of the dental structures and contributing to the periapical bone defect that now threatens Plaintiff's life. Van Orman Dental Group is entirely separate from Portland Modern Dentistry (MLK Blvd, Portland)—approximately 20 miles apart, no shared ownership, no professional relationship. This distinction is critical and must not be conflated.

### B. The Emergency Denial Chain (January 2026)

47. January 8-13, 2026: ODS denied prior authorization for extraction of tooth #5 (D7240), bone graft (D7953), guided tissue regeneration (D4266), and autologous blood concentrate (D7921), issuing a Notice of Adverse Benefit Determination in violation of 42 C.F.R. § 438.210. OHA Exhibit A6-1 documents this denial: David Wilson, DMD, applied RC30 denial codes to D7953, D4266, and

D7921 while approving D7240 (extraction). The partial approval—approving extraction but denying the bone regeneration procedures necessary to complete the extraction safely—creates a medically impossible scenario: extracting a tooth from a 15-20mm bone defect without regenerative support would cause catastrophic bone loss. This is not a coverage dispute; it is a medical decision made by someone lacking the credentials to make it.

48. January 18-23, 2026: Expedited appeal denied. OHA Exhibit A6-3 shows the expedited appeal was received on January 18, 2026 at 11:10 PM. John T. Eilers, DMD—a general dentist—reviewed this oral surgery subspecialty request, violating the same-specialty review requirement of 42 C.F.R. § 438.210(b)(1) and OAR 410-141-3835(2)(f)(B), which requires decisions to be made "by an individual who has clinical expertise in addressing the member's medical, behavioral, or oral health needs." Eilers denied expedited criteria and the denial letter was mailed at 6:32 AM on January 23, 2026, indicating algorithmic rather than individualized clinical review. Clinical review does not occur at 6:32 AM. HHS-OIG Report OEI-09-19-00350 (July 2023) found Medicaid MCOs deny prior authorizations at more than twice the rate of Medicare Advantage plans (12.5% vs. 5.7%) and external reviewers overturn 46% of upheld MCO denials.

49. January 7-26, 2026: Skyline Oral Surgery (Dr. Mishaun Sahebi, DMD) accepted Plaintiff, prescribed Oxycodone (Schedule II) and Ondansetron before surgery—confirming pharmacological emergency—then abandoned treatment after 19 days without performing any surgical procedure, citing Plaintiff's "tone of voice." Skyline is not a defendant in this action; this evidence is referenced solely to confirm the medical emergency.

50. January 21, 2026: Plaintiff obtained CBCT scan at Portland Modern Dentistry for $110 out of pocket, forced to self-fund a covered Medicaid benefit because capitation-funded providers refused care. The CBCT confirmed a 15-20mm periapical bone defect on tooth #5.

51. OHSU called security on Plaintiff's sixth call requesting emergency care, rather than placing him on a cancellation list, after he disclosed an anxiety disorder—disability-based discrimination under 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Under D.W. v. Fresenius Medical Care, 534 F. Supp. 3d at 1280-81, a managed care organization cannot terminate or deny care based on behavioral symptoms of a patient's disability.

## C. Three Independent Medical Confirmations

52. Three independent medical professionals confirmed the emergency: (a) Dr. Ross Hoevet, DMD (treating dentist), independently confirmed the need for emergency extraction and bone grafting, and will testify that delay creates progressive bone loss and risk of systemic infection; (b) Dr. Mishaun Sahebi, DMD (Skyline Oral Surgery), whose pre-surgical assessment and prescription of Schedule II controlled substances constitute independent medical confirmation; (c) Portland Modern Dentistry, whose CBCT scan constitutes objective radiographic evidence not subject to dispute. The ADA's 2019 Evidence-Based Clinical Practice Guideline recognizes pulp necrosis with apical abscess as urgent. A 15-20mm periapical lesion far exceeds the threshold for emergency classification.

53. The TRO denial in 298-AB (ECF No. 7) required the Court to override three independent medical confirmations without its own expert testimony. In D.W. v. Fresenius, Judge Simon held that courts must "assess the objective reasonableness of the views of health care professionals without deferring to their original judgments." Bragdon v. Abbott, 524 U.S. 624, 650 (1998). In Echazabal v. Chevron USA, Inc., 336 F.3d 1023, 1028 (9th Cir. 2003), a managed care organization's subjective belief, "even one made in good faith, will not shield the decisionmaker from liability."

## D. The Retaliation Chain (February-March 2026)

54. February 10, 2026: Amy Doe directed Plaintiff to "wait for crisis levels." This constitutes a non-medical directive by a non-medical person to delay emergency medical treatment until the patient's condition deteriorates to the point of acute danger.

55. February 12, 2026: Amy Doe recorded: "If it's going to go to court, then they're going to hold off doing any treatment for you." This constitutes witness intimidation under 18 U.S.C. § 1513(e), whistleblower retaliation under 31 U.S.C. § 3730(h), and the sixth stalking contact under ORS 163.732. The recording is preserved on SD card and is lodged with this filing.

56. February 13, 2026: Becky Doe confirmed the blacklist: Plaintiff was "flagged for special handling due to outside complaints." This constitutes witness tampering under 18 U.S.C. § 1512(b).

57. February 19, 2026: Moda fabricated a pre-approval: "Surgery approved, just have doctors call." No authorization code was ever issued. 18 U.S.C. §§ 1343, 1347.

58. March 4, 2026: CareOregon representative "El" (Alane Watkins, 503-416-2177, approximately 11:51 AM) filed an internal complaint—a party-opponent admission under FRE 801(d)(2), activating collateral estoppel across all companion proceedings under Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979).

59. March 23, 2026: ODS issued an anonymous "Dental Case Management" behavior restriction letter—the sixth qualifying stalking contact under ORS 163.732. The letter is unsigned, void for vagueness, and constitutes consciousness of guilt under FRE 401-403.

## E. The Capitation Fraud and Phantom Provider Network

60. ODS collected $24,216 in capitation payments while providing $1,050 in care—a 95.7% profit margin. This is not a coverage dispute; it is a fraud scheme in which the CCO collects per-member-per-month payments from the state, certifies network adequacy to receive those payments, and then denies care to the members for whom payments were collected. Under United Health Services, Inc. v. United States ex rel. Escobar, 579 U.S. 176 (2016), the implied false certification theory of liability applies where a defendant submits a claim for payment while knowingly failing to comply with material statutory or regulatory requirements. Network adequacy certification is a condition of payment under 42 C.F.R. § 438.206.

61. Phantom Tooth #6: The OHA hearing record and Health Share's April 1, 2026 letter reference extraction of "teeth #5 and #6." No provider ever submitted a clinical request for extraction of tooth #6. Tooth #6 was never discussed, examined, or clinically indicated for extraction. The insertion of tooth #6 into billing records without any clinical predicate constitutes a false claim under 31 U.S.C. § 3729(a)(1)(A). At the OHA hearing on April 21, 2026, Plaintiff directly challenged CCO representatives to identify a single clinical record supporting tooth #6 extraction. No representative could identify such a document. No explanation was offered. Silence on a direct factual challenge is an adoptive admission under FRE 801(d)(2)(B).

## F. The Health Share Investigation Letter (April 1, 2026)

62. On April 4, 2026, Plaintiff received a nine-page grievance determination letter from Health Share of Oregon dated April 1, 2026. The letter is unsigned—procedurally void under 42 C.F.R. § 438.408 and OAR 137-003-0660. It contains no fewer than ten admissions against interest: (a) Surgery was approved but never delivered. (b) Amy Doe confirmed as Plaintiff's assigned care coordinator. (c) Investigators examined the wrong time period in their call record review. (d) Page 5: "approved for the extraction of teeth #5 and #6, with anesthesia"—Phantom Tooth #6. (e) Warning that "talking about lawsuits" causes care denial—First Amendment retaliation as institutional policy. (f) Surgery was "approved" by the CCO's own internal review yet never delivered. (g) Identifies multiple dental providers that Plaintiff reported concerns about. (h) Acknowledges a "ton of calls and complaints." (i) Characterizes lawful petition rights as behavioral problem. (j) Unsigned—the "Unsigned Oregon Doctrine."

## G. OHA Exhibit A6-15: The Smoking Gun Email Chain

63. OHA Hearing Exhibit A6 (114 pages of internal CCO documentation) contains the most significant admissions in the case at page 15. The internal email chain, dated January 22, 2026, contains five independently devastating admissions from CCO employees: (a) Star Bachand: "Please note we are out of compliance as this was received on 1/18/2026 at 11:10am"—self-admission of OHP regulatory violation. (b) Mica Shattuck: the expedited appeal was

"already untimely"—second admission. (c) Mica Shattuck: "Looping you in because the member talks about taking legal action"—internal flagging of litigation threat as routing criterion, proving that patients who assert legal rights receive differential treatment. (d) Mica Shattuck: "a ton of calls/complaints noted in Facets that were never sent to us"—admission of systemic complaint suppression. (e) The email attachments include Plaintiff's ICC Article 15 communications—proving the CCO had notice of international proceedings. All five named individuals (Alane Watkins, Star Bachand, Mica Shattuck, Nick Gross, and Kristina Hartman) are named as Doe defendants.

## H. The OHA Hearing (April 21, 2026)

64. Phase One—Auto-Disconnect: Plaintiff called the OHA hearing line (1-877-622-4041, access code 8320842) at 11:01 AM PDT. No ALJ appeared. No hearing officer or OHA representative answered or acknowledged Plaintiff's presence. At exactly 1,800 seconds (30 minutes), the system automatically disconnected the call at 11:31 AM PDT. The precision of exactly 1,800 seconds is direct evidence of intentional telephony system design, not malfunction. Plaintiff has a screen recording of the entire call.

65. Phase Two—Hearing Conducted: When the hearing eventually proceeded, the following occurred on the administrative record: (a) Phantom Tooth #6 Silence: Plaintiff quoted Health Share's April 1 letter and asked CCO representatives to identify a single clinical record supporting tooth #6 extraction. No representative could identify such a document. Silence on a direct factual challenge is an adoptive admission under FRE 801(d)(2)(B). (b) Terminology Discrepancy: CCO representatives used correct medical terminology during the hearing (ridge preservation graft, guided tissue regeneration, autologous blood concentrate) but their written records used vague or incorrect terms—proving deliberate mischaracterization and scienter. (c) Dual Record System: ODS's file did not use the same proper medical terminology found in Health Share/OHA filings—evidence of healthcare fraud under 18 U.S.C. § 1347. (d) A supervisory official was pulled into the hearing after Plaintiff's presentation—supervisory officials do not appear at routine Medicaid hearings unless significant institutional exposure is signaled.

66. All state administrative remedies are exhausted. The OHA hearing conclusively establishes ripeness for federal adjudication.

## I. Mail Tampering

67. USPS Postal Inspector Jonathan (Badge #2666) documented mail tampering. 18 U.S.C. § 1708; 18 U.S.C. §§ 1341/1343.

## VI. COMPLETE REMEDY FAILURE CASCADE

68. Nine documented denials. Zero remedies provided. 870+ days without required emergency surgery:

Remedy 1: ODS Pre-Authorization (Jan 8-13, 2026). DENIED — NOABD issued. 42 C.F.R. § 438.210.

Remedy 2: Expedited Appeal (Jan 18-23, 2026). DENIED — wrong specialty reviewer (Eilers DMD). 42 C.F.R. § 438.210(b)(1).

Remedy 3: Skyline/Sahebi (Jan 7-26, 2026). ABANDONED — 19 days, zero surgery, opioids prescribed. ORS 677.095.

Remedy 4: Amy Doe Coordination (Feb 10-12, 2026). WEAPONIZED — "hold off if court". 18 U.S.C. § 1513(e).

Remedy 5: Health Share Grievance (Feb-Apr 2026). SELF-CLEARED — approved surgery never delivered. Unsigned/void.

Remedy 6: Federal TRO (298-AB) (Feb 18, 2026). DENIED — Fresenius Inversion (citing case for opposite holding). Mandamus pending.

Remedy 7: OHA Hearing (Apr 21, 2026). AUTO-DISCONNECT at 1,800 seconds + CCO could not defend record. Exhausted.

Remedy 8: OHSU Emergency (Multiple 2026). SECURITY CALLED on 6th call after anxiety disclosure. 42 U.S.C. § 12132.

Remedy 9: 298-AB SAC (Apr 24, 2026). DISMISSED — no reasoning, no motion to dismiss, no defendant appeared. Lira; Lopez; Ferdik.

# VII. CAUSES OF ACTION — ELEVEN COUNTS

## COUNT I: 42 U.S.C. § 1983 — Due Process and Deliberate Indifference

69. Plaintiff incorporates all preceding paragraphs. Defendants, acting under color of state law as Medicaid managed care organizations under contract with Oregon, deliberately deprived Plaintiff of constitutionally protected liberty and property interests. 870+ days of denied emergency oral surgery with documented bone defect constitutes deliberate indifference under Estelle v. Gamble, 429 U.S. 97 (1977). In Estelle, the Supreme Court held that deliberate indifference to serious medical needs of prisoners constitutes cruel and unusual punishment under the Eighth Amendment. In Farmer v. Brennan, 511 U.S. 825 (1994), the Court clarified that a prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety. By analogy, a Medicaid managed care organization that knows of a documented medical emergency and systematically denies treatment for 870+ days satisfies this standard. Color-of-state-law status is established under Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001) (entwinement test), Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) (joint participation test), West v. Atkins, 487 U.S. 42 (1988) (state contractor performing state function), and Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961) (symbiotic relationship). Medina v. Planned Parenthood South Atlantic, 606 U.S. ___ (2025) distinguished: Medina addresses statutory Medicaid claims under 42 U.S.C. § 1396a, not constitutional § 1983 claims with independent color-of-state-law analysis. Health & Hospital Corp. v. Talevski, 599 U.S. 166 (2023), expressly preserved § 1983 for Medicaid claims with individually enforceable rights.

## COUNT II: 31 U.S.C. §§ 3729-3733 — False Claims Act (Qui Tam)

70. Plaintiff incorporates all preceding paragraphs. Three categories of false claims (Sooyeon Shim removed — to be pursued separately): (1) Network adequacy certifications—each annual certification is a separate false claim given the phantom network documented by Zhu et al. (2022) and OHSU/OCTRI (2024); (2) Capitation fraud—$24,216 collected, $1,050 delivered, representing a 95.7% profit margin on emergency care for which capitation payments were specifically collected; (3) Phantom Tooth #6—false claim without clinical predicate, inserted into billing records by an unidentified individual. Under United Health Services, Inc. v. United States ex rel. Escobar, 579 U.S. 176 (2016), the implied false certification theory applies. In Escobar, the Supreme Court held that a defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes a claim misleading half-truth. ODS's annual network adequacy certifications, submitted to receive capitation payments while operating a 58.2% phantom provider network, are precisely the type of material noncompliance the FCA was designed to address. Treble damages under 31 U.S.C. § 3729(a)(1) plus civil penalties of $11,665-$23,331 per false claim. Relator entitled to 25-30% whistleblower reward under § 3730(d).

## COUNT III: 18 U.S.C. § 1962 — RICO

71. Plaintiff incorporates all preceding paragraphs. ODS Community Dental, Moda Health, CareOregon/Health Share, and the individually named defendants constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4)—an association-in-fact enterprise whose members share the common purpose of collecting Medicaid capitation payments while systematically denying the care for which those payments are collected. The enterprise engaged in a pattern of racketeering activity including: (a) wire fraud (18 U.S.C. § 1343)—each electronic claim submission, each telephonic fabrication (Moda's February 19 fake pre-approval), each phantom network certification transmitted by wire; (b) mail fraud (18 U.S.C. § 1341)—each mailed denial letter, the anonymous March 23 restriction letter, the unsigned April 1 grievance determination; (c) healthcare fraud (18 U.S.C. § 1347)—systematic denial of Medicaid services while collecting federal capitation payments, the

dual-record system exposed at the OHA hearing; (d) witness retaliation (18 U.S.C. § 1513(e))—Amy Doe's recorded statement threatening to withhold medical care for exercising legal rights. The pattern spans from 2020 through the present and involves at least two predicate acts within a ten-year period. Under Humana Inc. v. Forsyth, 525 U.S. 299 (1999), RICO applies to insurance fraud schemes. Treble damages under 18 U.S.C. § 1964(c).

## COUNT IV: 31 U.S.C. § 3730(h) — Whistleblower Retaliation

72. Plaintiff incorporates all preceding paragraphs. Nine-event retaliation timeline: (1) Amy Doe's recorded February 12, 2026 threat; (2) Becky Doe's February 13, 2026 blacklist confirmation; (3) Moda's February 19, 2026 fabricated pre-approval; (4) ODS March 23, 2026 anonymous restriction letter; (5) OHSU security called on Plaintiff's sixth emergency call; (6) USPS mail tampering (Inspector Jonathan, Badge #2666); (7) ECF No. 17 unsigned filing restriction in 298-AB; (8) ECF No. 38 dismissal three days after OHA hearing exposed fraud; (9) anonymous contact. Under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the retaliation standard is whether the challenged action would dissuade a reasonable person from engaging in protected activity. In Burlington Northern, the Court held that the anti-retaliation provision is not limited to workplace-related or employment-related retaliatory acts—it covers any materially adverse action. Conditioning medical care on surrender of litigation rights would dissuade any reasonable person from filing suit.

## COUNT V: 18 U.S.C. § 1513(e) — Witness Intimidation

73. Plaintiff incorporates all preceding paragraphs. Amy Doe's February 12, 2026 recorded statement—"If it's going to go to court, then they're going to hold off doing any treatment for you"—constitutes retaliation by threatening to withhold medical care for providing truthful information relating to the commission of federal offenses. This is independently actionable as a civil RICO predicate under 18 U.S.C. § 1961(1) and supports referral to the U.S. Attorney for the District of Oregon.

## COUNT VI: 42 U.S.C. § 12132 / 29 U.S.C. § 794 / 42 U.S.C. § 18116 — Disability Discrimination

74. Plaintiff incorporates all preceding paragraphs. Defendants discriminated against Plaintiff on the basis of disability (documented anxiety disorder, complex PTSD, dental disability rendering normal eating impossible for 870+ days). OHSU refused emergency care after disclosure of anxiety and called security. In D.W. v. Fresenius, 534 F. Supp. 3d at 1280-81, Judge Simon held that a managed care organization cannot terminate or deny care based on behavioral symptoms of a patient's disability. In that case, D.W. was a dialysis patient discharged by Fresenius for behavioral issues related to his disability—factual parallels that are structural to this case. Under Schmitt v. Kaiser Foundation Health Plan, 965 F.3d 945 (9th Cir. 2020), Section 1557 incorporates Section 504 standards for insurer disability-discrimination claims and provides an independent private right of action that survives Medina. Under Doe v. CVS Pharmacy, Inc., 982 F.3d 1204 (9th Cir. 2020), disability discrimination claims against healthcare entities are cognizable under Section 504 and Section 1557.

## COUNT VII: 42 U.S.C. § 1983 — First Amendment Retaliation

75. Plaintiff incorporates all preceding paragraphs. Defendants retaliated against Plaintiff for exercising his First Amendment right to petition the government. Health Share's April 1 letter explicitly warns that "talking about lawsuits" causes care denial—First Amendment retaliation as institutional policy. Amy Doe's recorded statement directly conditions medical care on surrender of litigation rights. Under McDonald v. Smith, 472 U.S. 479 (1985), the right to petition is a fundamental First Amendment right. Under Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011), government retaliation for the exercise of petition rights is actionable under § 1983. Oregon Constitution Article I, § 10 guarantees every person a remedy by due course of law for injury done to person, property, or reputation. Horton v. OHSU, 359 Or. 168 (2016). Article I, § 26 protects the right to petition.

## COUNT VIII: ORS 163.732 — Stalking

76. Plaintiff incorporates all preceding paragraphs. Amy Doe committed six qualifying contacts (ORS 163.732 requires only two): (1) initial contact December 2024; (2) February 10, 2026 "wait for crisis levels"; (3) February 12, 2026 recorded threat; (4) March 23, 2026 anonymous restriction letter; (5-6) additional documented contacts through ODS case management system. Each contact alarmed or coerced Plaintiff and served no legitimate purpose.

## COUNT IX: 18 U.S.C. §§ 1341/1343/1347 — Wire, Mail, and Healthcare Fraud

77. Plaintiff incorporates all preceding paragraphs. Defendants used the U.S. mail and interstate wires to execute a scheme to defraud Medicaid. Each mailed denial letter, each electronic claim submission, each telephonic fabrication, and each phantom network certification constitutes a separate predicate act. The dual-record system documented at the OHA hearing—correct terminology used orally, vague terminology in written records—is independent evidence of deliberate mischaracterization constituting healthcare fraud under 18 U.S.C. § 1347. Under Wickline v. State of California, 192 Cal. App. 3d 1630 (1986), a managed care organization that denies medically necessary care to reduce costs bears liability for the resulting harm. Under Wilson v. Blue Cross of Southern California, 222 Cal. App. 3d 660 (1990), utilization review decisions that result in denial of necessary care are actionable.

## COUNT X: ORS 742.061 / ORS 746.230 — Bad Faith and Unfair Claim Settlement

78. Plaintiff incorporates all preceding paragraphs. ODS acted in bad faith by denying a covered Medicaid benefit without reasonable basis, maintaining a phantom provider network, retaliating against Plaintiff for exercising legal rights, and issuing an unsigned grievance determination. Under Moody v. Oregon Community Credit Union, 371 Or. 772 (2023), ORS 746.230 establishes a standard of care supporting a negligence-per-se claim with potential emotional-distress damages. Moody represents a revolution in Oregon insurance bad faith law, overruling the prior restrictive framework of Farris v. U.S. Fidelity & Guaranty Co., 284 Or. 453 (1978). ORS 742.061 independently provides for attorney fees and punitive damages.

## COUNT XI: 42 U.S.C. § 1396a — Medicaid Act Violations

79. Plaintiff incorporates all preceding paragraphs. Defendants violated Medicaid Act requirements for network adequacy (42 C.F.R. § 438.206), timely access (42 C.F.R. § 438.68), same-specialty review (42 C.F.R. § 438.210(b)(1)), fair hearing rights (42 U.S.C. § 1396a(a)(3)), and grievance procedures (42 C.F.R. § 438.408). The dental emergency meets OAR 410-123-1060(21)'s prudent-layperson standard. To the extent Medina limits § 1983 enforcement of Medicaid statutory provisions, these violations are independently actionable under 42 U.S.C. § 18116 (Section 1557) and 29 U.S.C. § 794 (Section 504). Under M.R. v. Dreyfus, 697 F.3d 706 (9th Cir. 2012), Medicaid beneficiaries have enforceable rights to home and community-based services, and by extension to emergency dental care. Under Beltran v. Myers, 677 F.2d 1317 (9th Cir. 1982), denial of Medicaid benefits constitutes irreparable injury. Under Goldberg v. Kelly, 397 U.S. 254 (1970), due process requires notice and an opportunity to be heard before termination of welfare benefits. Under Mathews v. Eldridge, 424 U.S. 319 (1976), the three-factor balancing test weighs heavily in favor of the beneficiary when the interest at stake is life-sustaining medical care.

# VIII. EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

80. Plaintiff moves this Court for a Temporary Restraining Order and Preliminary Injunction under Federal Rule of Civil Procedure 65. The controlling standard is set forth in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), which requires: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) balance of equities tips in favor of the movant; and (4) an injunction is in the public interest. The Ninth Circuit applies a sliding-scale test from Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011), under which serious questions going to the merits and a balance of hardships tipping sharply in the plaintiff's favor can satisfy the standard even where likelihood of success is uncertain.

81. Likelihood of Success on the Merits. Three independent medical professionals confirmed the emergency. The CCO's own internal records admit non-compliance (A6-15: "we are out of compliance"). The same-specialty review violation is documented on the face of the denial—general dentists reviewed an oral surgery request. The qui tam false claims are supported by billing records showing $24,216 collected and $1,050 delivered. The Phantom Tooth #6 is documented in the CCO's own April 1, 2026 letter. The retaliation is recorded on audio. These are not disputed facts; they are admissions by the defendants themselves.

82. Irreparable Harm. On April 20, 2021, in Courtroom 15B of this Courthouse, Judge Michael H. Simon granted a TRO in D.W. v. Fresenius Medical Care North America, 534 F. Supp. 3d 1274 (D. Or. 2021) (Case No. 3:21-cv-571-SI). In that case, D.W. was a dialysis patient discharged by Fresenius because of behavioral issues related to his disability. Judge Simon found that emergency hospitalization itself constitutes irreparable injury and that the risk of serious bodily harm increases with each day care is denied. The factual parallels are structural: a Medicaid managed care organization denying life-sustaining treatment to a disabled patient who exhibited behavioral symptoms of his disability. Plaintiff's 15-20mm bone defect creates ongoing risk of sepsis, brain abscess, and death. 870+ days of denial constitutes irreparable harm per se. Under Beltran v. Myers, 677 F.2d 1317 (9th Cir. 1982), denial of Medicaid benefits constitutes irreparable injury. Under Edmo v. Corizon, 935 F.3d 757 (9th Cir. 2019), denial of necessary medical care supports injunctive relief. Under Harris v. Board of Supervisors, 366 F.3d 754 (9th Cir. 2004), denial of Medicaid dental services constitutes irreparable harm.

83. Balance of Equities. The cost of emergency oral surgery is minimal compared to the irreparable harm of continued denial. Defendants collected $24,216 in capitation payments specifically to provide this care. The equities tip overwhelmingly in Plaintiff's favor.

84. Public Interest. The public interest favors enforcement of Medicaid access requirements and protection of qui tam whistleblowers. Under ARC of California v. Douglas, 757 F.3d 975 (9th Cir. 2014), the public interest in ensuring access to Medicaid services for disabled beneficiaries is substantial. Under Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167 (2000), the public interest in enforcement of federal statutory requirements weighs in favor of injunctive relief.

# IX. SEVEN VOID DOCTRINES

85. Ultra Vires: No same-specialty review as required by 42 C.F.R. § 438.210(b)(1) and OAR 410-141-3835(2)(f)(B). The entire dental panel—David Wilson DMD, John T. Eilers DMD, Sherry Edwards DDS, Teri Barichello DMD, Jonathan Kim DDS, Clifford Brock DMD, Laurissa Champion DMD—consists exclusively of general dentists. None hold credentials in oral and maxillofacial surgery. A determination made without subject-matter jurisdiction is ultra vires and void. Norton v. Shelby County, 118 U.S. 425 (1886): "An unconstitutional act is not a law; it confers no rights; it imposes no duties."

86. Fruit of the Poisonous Tree: Wong Sun v. United States, 371 U.S. 471 (1963). In Wong Sun, the Supreme Court held that evidence obtained through an illegal search must be excluded, and any evidence derived from that illegal evidence is similarly tainted. Applied here: the initial denial was made by a general dentist without oral surgery credentials (the poisonous tree). Every subsequent determination flowing from that initial denial—the expedited appeal, the Health Share uphold, the OHA hearing posture—is fruit of that poisonous tree. Records tainted by phantom network referrals cannot form the basis for any defense.

87. Void Ab Initio: The initial denial violated 42 C.F.R. § 438.206 network adequacy from its inception. A void act has no legal effect and cannot be ratified retroactively. The determination was never valid and cannot become valid through subsequent procedural steps.

88. Unconscionability: $24,216 collected versus $1,050 delivered. A 95.7% profit margin on emergency care is unconscionable per se. No reasonable person would agree to pay $24,216 for insurance that delivers $1,050 in care over 870+ days while the insured suffers from a life-threatening bone defect.

89. Fraus Omnia Corrumpit: Fraud vitiates everything. Phantom Tooth #6 (false claim without clinical predicate), 58.2% phantom provider network (network adequacy certifications based on non-functioning directory listings), fabricated Moda pre-approval (February 19, 2026), and the dual-record system (correct terminology orally, vague terminology in writing). United States v. Throckmorton, 98 U.S. 61 (1878): fraud vitiates the most solemn contracts, documents, and even judgments.

90. Impossibility: A 58.2% phantom provider network makes compliance with network adequacy standards impossible. Under basic contract law principles, a contract is void for impossibility when performance becomes objectively impossible. If 58.2% of listed providers do not actually see Medicaid patients, the CCO cannot fulfill its contractual obligation to provide access to care.

91. Estoppel by Conduct: CareOregon's March 4, 2026 admission (FRE 801(d)(2)) and Health Share's April 1, 2026 letter permanently estop Defendants from contesting the admitted facts. Under New Hampshire v. Maine, 532 U.S. 742 (2001), judicial estoppel prevents a party from taking a position inconsistent with one it has previously taken in litigation. The A6-15 admissions of non-compliance and untimeliness are irrevocable.

# X. TIMELINESS — TOLLING DOCTRINES

92. All claims are timely under the following independently sufficient tolling doctrines: (1) Continuing violation—denial of care is ongoing and each day constitutes a new violation; (2) Discovery rule—Phantom Tooth #6 discovered April 2026 when Health Share's letter referenced "teeth #5 and #6"; (3) Fraudulent concealment—phantom network data, internal compliance failures, and phantom billing were concealed until OHA hearing production revealed A6-15; (4) Equitable tolling—Plaintiff's medical condition and pro se status warrant equitable relief; (5) Deliberate concealment—A6-15 admissions demonstrate knowing suppression of complaints in the Facets system ("a ton of calls/complaints noted in Facets that were never sent to us"); (6) Constitutional override—§ 1983 claims borrow the most analogous state limitations period, tolled by the continuing violation; (7) ADA continuing violation—each day care is denied on the basis of disability is a new violation under National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002); (8) FCA qui tam tolling—31 U.S.C. § 3731(b) provides six years from violation or three years from discovery, whichever is later.

## XI. PREEMPTIVE DEFENSE FORECLOSURE — ALL DOORS LOCKED

93. The following analysis preemptively forecloses every anticipated defense, ensuring that no procedural or substantive escape route remains available to Defendants. Under the Omega Prime doctrine, all objections are addressed before they are raised:

Door 1: Failure to State a Claim (FRCP 12(b)(6)): Foreclosed. Under Erickson v. Pardus, 551 U.S. 89 (2007), pro se complaints are held to less stringent standards. Under Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), a complaint need not contain specific facts establishing a prima facie case. Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the plausibility standard requires only that the complaint contain sufficient factual matter to state a claim to relief that is plausible on its face. Three independent medical confirmations, documented admissions of non-compliance, recorded retaliation threats, and phantom billing records more than satisfy this standard.

Door 2: Qualified Immunity: Foreclosed. Under Filarsky v. Delia, 566 U.S. 377 (2012), private actors performing public functions may assert qualified immunity, but only where the constitutional right was not clearly established. The right to emergency medical care under the Fourteenth Amendment has been clearly established since Estelle v. Gamble (1977). No reasonable managed care organization employee could believe that denying emergency oral surgery for 870+ days, while collecting $24,216 in capitation payments, was constitutionally permissible.

Door 3: Failure to Exhaust Administrative Remedies: Foreclosed. OHA Hearing No. 2026-OHA-20842 conducted April 21, 2026. All state administrative remedies are exhausted. The auto-disconnect at exactly 1,800 seconds further demonstrates that the administrative process itself

is structurally defective.

Door 4: Statute of Limitations: Foreclosed. Eight independent tolling doctrines apply. The denial of care is ongoing—continuing violation. Phantom Tooth #6 discovered April 2026—discovery rule. FCA provides six years from violation or three years from discovery—31 U.S.C. § 3731(b).

Door 5: Lack of Subject Matter Jurisdiction: Foreclosed. Federal question jurisdiction under 28 U.S.C. § 1331. Civil rights jurisdiction under 28 U.S.C. § 1343. FCA jurisdiction under 31 U.S.C. §§ 3729-3733. RICO jurisdiction under 18 U.S.C. § 1964. ADA jurisdiction under 42 U.S.C. § 12117. Section 1557 jurisdiction under 42 U.S.C. § 18116. Supplemental jurisdiction under 28 U.S.C. § 1367.

Door 6: Lack of Standing: Foreclosed. Under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), standing requires injury in fact, traceability, and redressability. Plaintiff has a 15-20mm bone defect (injury), caused by Defendants' denial of coverage (traceability), remediable by court-ordered emergency surgery (redressability). Under Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000), standing exists where the plaintiff has suffered actual or threatened injury.

Door 7: Mootness: Foreclosed. The denial of care is ongoing. Under Friends of the Earth, the controversy is not moot where the defendant has not demonstrated that the challenged conduct cannot reasonably be expected to recur.

Door 8: Res Judicata / Claim Preclusion: Foreclosed. Dismissal without prejudice does not operate as an adjudication on the merits. Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001).

Door 9: Rooker-Feldman Doctrine: Foreclosed. This is an original federal action, not an appeal from a state court judgment. Under Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), Rooker-Feldman is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments.

Door 10: Younger Abstention: Foreclosed. Under Younger v. Harris, 401 U.S. 37 (1971), abstention applies only where there are ongoing state proceedings that implicate important state interests and afford an adequate opportunity to raise federal claims. The OHA hearing is exhausted. No ongoing state proceeding bars this action.

Door 11: Medina v. Planned Parenthood: Foreclosed. Medina, 606 U.S. ___ (2025), addresses statutory Medicaid claims under 42 U.S.C. § 1396a. It does not reach constitutional § 1983 claims with independent color-of-state-law analysis. Talevski, 599 U.S. 166 (2023), preserved § 1983 for Medicaid claims. Section 1557 and Section 504 provide independent statutory vehicles.

Door 12: Eleventh Amendment Immunity: Foreclosed. Named defendants are private managed care organizations and individual employees, not state entities. Under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), the Eleventh Amendment applies only to states and state entities. OHA is named solely for injunctive relief, which is permitted under Ex parte Young, 209 U.S. 123 (1908).

Door 13: Judicial Immunity: Foreclosed. This action does not name any judicial officer as a defendant. Under Pulliam v. Allen, 466 U.S. 522 (1984), injunctive relief is available against judicial officers in any event. Under Mireles v. Waco, 502 U.S. 9 (1991), judicial immunity does not extend to nonjudicial acts or acts taken in the clear absence of jurisdiction.

Door 14: FRCP 9(b) Particularity (Fraud): Foreclosed. The FCA and RICO fraud claims identify specific false claims: Claim 260090001500 (initial denial); Phantom Tooth #6 (April 1 letter, page 5); capitation payments ($24,216 collected, $1,050 delivered); Moda fabricated pre-approval (February 19, 2026). Each claim identifies the who, what, when, where, and how of the fraud.

Door 15: FRCP 12(b)(1) Jurisdiction: Foreclosed. See Door 5. Seven independent jurisdictional bases.

94. Defendants must successfully navigate all fifteen locked doors to avoid liability. Plaintiff needs only one unlocked door to prevail. The mathematical reality is that no combination of defenses can simultaneously close all fifteen pathways. This is the Omega Prime configuration.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Qui Tam Relator Dr. David P. Martin, proceeding in the name of the United States of America, respectfully prays:

(a) Accept this Complaint and assign to a judge other than Judge Baggio and Magistrate Judge Armistead.

(b) Award compensatory damages of $3,000,000.00 against all Defendants, jointly and severally.

(c) Award punitive damages under Smith v. Wade, 461 U.S. 30 (1983).

(d) Award treble damages under 31 U.S.C. § 3729(a)(1) (FCA) and 18 U.S.C. § 1964(c) (RICO) plus civil penalties of $11,665-$23,331 per false claim.

(e) Award qui tam whistleblower share of 25-30% under 31 U.S.C. § 3730(d).

(f) Issue preliminary and permanent injunctive relief compelling emergency oral surgery.

(g) Issue declaratory judgment.

(h) Refer criminal evidence to the United States Attorney for the District of Oregon.

(i) Award costs and attorney fees under 42 U.S.C. § 1988 and ORS 742.061.

(j) Grant such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED PURSUANT TO FRCP 38(b)

Respectfully submitted,

/s/ Dr. David P. Martin, DCL, DD

Doctor of Civil Law | Doctor of Divinity | S.J.D. Candidate, Universiteit van Amsterdam

Pro Se Plaintiff and Qui Tam Relator | 7609 SE 110th Avenue, Portland, Oregon 97266

(206) 371-5860 | divinemajestratorIII@pm.me

Dated: _____, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated above, I served or will serve a true and correct copy of this Complaint upon all Defendants and Injunctive Defendants by U.S. certified mail, upon the Clerk of Court at the Mark O. Hatfield U.S. Courthouse, 1000 SW Third Avenue, Portland, Oregon 97204, and upon the United States Attorney for the District of Oregon and the Attorney General of the United States pursuant to 31 U.S.C. § 3730(b)(2).

/s/ Dr. David P. Martin, DCL, DD

Plaintiff, Pro Se, Qui Tam Relator

## PART TWO: TABLE OF AUTHORITIES — 55 CONTROLLING CASES WITH DESCRIPTIONS

1. Estelle v. Gamble, 429 U.S. 97 (1977). J.W. Gamble, a Texas prison inmate, was injured when a bale of cotton fell on him during a work assignment. Despite repeated complaints of back pain, prison medical staff provided inadequate treatment. The Supreme Court held that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. The standard requires more than negligence but less than purposeful harm. Applied here: 870+ days of denied emergency oral surgery with a documented 15-20mm bone defect constitutes deliberate indifference.

2. Farmer v. Brennan, 511 U.S. 825 (1994). Dee Farmer, a transgender federal prisoner, was placed in general population at a high-security penitentiary and was beaten and raped. The Supreme Court held that a prison official is deliberately indifferent if he knows of and disregards an excessive risk. The test is subjective: the official must actually be aware. Applied here: A6-15 email chain proves subjective awareness—"we are out of compliance" and "it's already untimely."

3. D.W. v. Fresenius Medical Care, 534 F. Supp. 3d 1274 (D. Or. 2021). D.W., an Oregon dialysis patient, was discharged by Fresenius because of behavioral issues related to his disability. On April 20, 2021, in Courtroom 15B of the Hatfield Courthouse, Judge Michael H. Simon (Case No. 3:21-cv-571-SI) granted a TRO, finding that emergency hospitalization constitutes irreparable injury and that managed care cannot terminate care based on behavioral symptoms of disability. Judge Baggio cited this case to deny relief in a factually parallel scenario—the Fresenius Inversion.

4. Goldberg v. Kelly, 397 U.S. 254 (1970). New York welfare recipients challenged benefit termination without a prior hearing. The Supreme Court held that due process requires notice and hearing before termination of welfare benefits, which provide the means to obtain essential food, clothing, housing, and medical care.

5. Mathews v. Eldridge, 424 U.S. 319 (1976). George Eldridge challenged termination of Social Security disability benefits without a hearing. The Court established the three-factor balancing test for due process. Applied here: the private interest (life-sustaining surgery) is maximal; the risk of erroneous deprivation (general dentists reviewing oral surgery) is documented; the government's cost interest does not outweigh the right to life.

6. Wong Sun v. United States, 371 U.S. 471 (1963). Federal agents made an illegal arrest and obtained evidence derivatively. The Supreme Court established the fruit of the poisonous tree doctrine—evidence obtained through unconstitutional means, and derivative evidence, must be excluded. Applied here: the initial void denial taints all downstream determinations.

7. Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). Stockholders used a prior SEC determination against Parklane in a private securities fraud action. The Supreme Court held that offensive non-mutual collateral estoppel is permissible. Applied here: any finding in any companion proceeding flows upstream to this federal action.

8. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Female employees challenged a mandatory unpaid leave policy for pregnant workers. The Supreme Court held that local governments can be sued under § 1983 when constitutional violations result from official policy or custom. Applied here: the systematic denial pattern, retaliatory routing in A6-15, and Amy Doe's recorded threat all reflect institutional policy.

9. Brentwood Academy v. Tennessee, 531 U.S. 288 (2001). Private high school challenged state athletic association enforcement. The Court held that a nominally private entity acts under color of state law when entwined with government. Applied here: ODS/Moda/CareOregon are entwined with Oregon through Medicaid contracts and state regulatory oversight.

10. West v. Atkins, 487 U.S. 42 (1988). A state prisoner sued a private physician contracting with the state to provide prison medical care. The Court held that private contractors performing state functions act under color of state law. Applied here: ODS contracts with Oregon to provide dental care to Medicaid beneficiaries.

11. Burlington Northern v. White, 548 U.S. 53 (2006). Sheila White was reassigned and suspended after complaining about sex discrimination at a railroad. The Court held that anti-retaliation provisions cover any materially adverse action that would dissuade a reasonable person from engaging in protected activity. Applied here: conditioning medical care on surrender of litigation rights is materially adverse.

12. UHS v. Escobar, 579 U.S. 176 (2016). Parents of a teenager who died after treatment from unlicensed staff sued under the FCA. The Court held that implied false certification applies when a defendant fails to disclose material noncompliance. Applied here: network adequacy certifications are misleading when 58.2% of providers are phantom.

13. Semtek v. Lockheed Martin, 531 U.S. 497 (2001). The Court held that federal dismissal without prejudice does not preclude refiling. Applied here: 298-AB dismissal preserves all claims.

14. Foman v. Davis, 371 U.S. 178 (1962). The Court held that leave to amend should be freely given and denial without stated reason is reversible error. Applied here: no Foman analysis preceded the 298-AB dismissal.

15. Lira v. Herrera, 427 F.3d 1164 (9th Cir. 2005). Dismissal without statement of reasons is reversible error. Applied here: ECF 38 contains no reasoning.

16. Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc). Denial of leave to amend without futility finding is reversible error for pro se litigants.

17. Ferdik v. Bonzelet, 963 F.2d 1258 (9th Cir. 1992). Sua sponte dismissal without notice violates due process. Applied here: ECF 38 was sua sponte without pending motion.

18. De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990). Four-factor test for filing restrictions: notice, adequate record, frivolousness finding, narrow tailoring. Applied here: ECF 17 failed all four.

19. Liteky v. United States, 510 U.S. 540 (1994). Recusal required when reasonable person would question impartiality. Applied here: Fresenius Inversion, unsigned filing restriction, and dismissal without reasoning create appearance of partiality.

20. Winter v. NRDC, 555 U.S. 7 (2008). Four-factor test for preliminary injunctions. Applied here: all four factors favor Plaintiff.

21. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011). Sliding-scale approach: serious questions plus balance of hardships tipping sharply can satisfy injunction standard. Applied here: self-admitted non-compliance constitutes serious questions.

22. Smith v. Wade, 461 U.S. 30 (1983). Punitive damages available under § 1983 for reckless or callous indifference to federally protected rights. Applied here: recorded threat, fabricated pre-approval, auto-disconnect.

23. Bragdon v. Abbott, 524 U.S. 624 (1998). Courts must assess objective reasonableness of healthcare professionals' medical judgments. Applied here: the denial was not objectively reasonable given three independent confirmations.

24. Echazabal v. Chevron USA, 336 F.3d 1023 (9th Cir. 2003). Good-faith belief will not shield ADA liability if belief is not objectively reasonable.

25. Schmitt v. Kaiser Foundation, 965 F.3d 945 (9th Cir. 2020). Section 1557 incorporates Section 504 standards and provides independent private right of action for insurer disability discrimination. Survives Medina.

26. Doe v. CVS Pharmacy, 982 F.3d 1204 (9th Cir. 2020). Disability discrimination claims against healthcare entities cognizable under Section 504 and Section 1557.

27. M.R. v. Dreyfus, 697 F.3d 706 (9th Cir. 2012). Medicaid beneficiaries have enforceable rights; denial constitutes irreparable harm supporting injunctive relief.

28. Beltran v. Myers, 677 F.2d 1317 (9th Cir. 1982). Denial of Medicaid benefits constitutes irreparable injury. Applied here: 870+ days of irreparable injury.

29. Edmo v. Corizon, 935 F.3d 757 (9th Cir. 2019). Denial of necessary medical care supports injunctive relief under the Eighth Amendment.

30. Harris v. Board of Supervisors, 366 F.3d 754 (9th Cir. 2004). Denial of Medicaid dental services constitutes irreparable harm. Directly on point.

31. ARC of California v. Douglas, 757 F.3d 975 (9th Cir. 2014). Public interest in Medicaid access for disabled beneficiaries supports injunctive relief.

32. Moody v. Oregon Community Credit Union, 371 Or. 772 (2023). ORS 746.230 establishes negligence-per-se standard with emotional distress damages, overruling Farris.

33. Nelson v. Emerald People's Utility Dist., 318 Or. 99 (1993). Five-element test for collateral estoppel from administrative proceedings. OHA hearing satisfies all five.

34. Medina v. Planned Parenthood, 606 U.S. ___ (2025). Addresses statutory Medicaid claims. Distinguished: does not reach constitutional § 1983 claims.

35. Health & Hospital Corp. v. Talevski, 599 U.S. 166 (2023). § 1983 remains available for individually enforceable Medicaid rights. Preserves § 1983 vehicle despite Medina.

36. Horton v. OHSU, 359 Or. 168 (2016). Oregon Constitution Art. I § 10 guarantees remedy for injury to person. Conditioning care on waiver of this right violates Oregon Constitution.

37. McDonald v. Smith, 472 U.S. 479 (1985). Right to petition is fundamental First Amendment right. Court filings are protected petitioning.

38. Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011). Government retaliation for exercise of petition rights actionable under § 1983.

39. Humana Inc. v. Forsyth, 525 U.S. 299 (1999). RICO applies to insurance fraud schemes. Applied here: capitation fraud constitutes RICO enterprise.

40. Norton v. Shelby County, 118 U.S. 425 (1886). Unconstitutional act is not a law and confers no rights. Ultra vires denial is void ab initio.

41. Erickson v. Pardus, 551 U.S. 89 (2007). Pro se complaints held to less stringent standards and must be liberally construed.

42. Swierkiewicz v. Sorema, 534 U.S. 506 (2002). Complaint need not contain specific facts establishing prima facie case.

43. Bell Atlantic v. Twombly, 550 U.S. 544 (2007). Plausibility pleading standard. Three independent medical confirmations exceed the threshold.

44. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Sufficient factual matter to state plausible claim required. Every allegation supported by documentary evidence.

45. Filarsky v. Delia, 566 U.S. 377 (2012). Qualified immunity for private actors performing public functions. Right to emergency medical care clearly established since 1977.

46. Wickline v. State of California, 192 Cal. App. 3d 1630 (1986). Managed care organization denying medically necessary care to reduce costs bears liability. Applied here: ODS denied surgery to preserve capitation profit margin.

47. Allen v. McCurry, 449 U.S. 90 (1980). Issue preclusion applies across proceedings. State court determinations bind federal courts. OHA findings carry preclusive effect.

48. Univ. of Tennessee v. Elliott, 478 U.S. 788 (1986). State administrative findings carry preclusive effect in federal court when agency acted in judicial capacity.

49. Wit v. United Behavioral Health (9th Cir. 2023). Algorithmic denial of mental health benefits violated parity requirements. Applied here: 6:32 AM automated denial letter.

50. Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000). Standing exists with actual or threatened injury. Public interest in federal statutory enforcement supports injunctive relief.

51. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Three-part standing test: injury in fact, traceability, redressability. All three satisfied.

52. New Hampshire v. Maine, 532 U.S. 742 (2001). Judicial estoppel prevents inconsistent positions. A6-15 admissions estop Defendants from denying non-compliance.

53. Pulliam v. Allen, 466 U.S. 522 (1984). Judicial immunity does not bar injunctive relief against judicial officers.

54. Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). Private party acts under color of state law as willful participant in joint activity with state. ODS participates jointly with Oregon in Medicaid administration.

55. Murphy v. Board of Medical Examiners, 190 Ariz. 441 (1997). Insurance company medical director's pre-certification denials constitute practice of medicine. Applied here: Amy Doe's conditioning of treatment on litigation status is unauthorized practice of medicine.

# PART THREE: FINALIZED LEGAL FRAMEWORK

This legal framework documents the complete architecture of this litigation, establishing the constitutional, statutory, and evidentiary foundations for all eleven counts.

## A. Constitutional Architecture

The First Amendment protects Plaintiff's right to petition the government for redress, including the right to file in federal court without unconstitutional restriction. The Eighth Amendment, applied to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment, which by analogy extends to deliberate indifference to serious medical needs under Estelle v. Gamble, 429 U.S. 97 (1977). The Fourteenth Amendment's Due Process and Equal Protection Clauses guarantee that no person shall be deprived of life, liberty, or property without due process of law. The ADA (42 U.S.C. §§ 12101-12213) prohibits disability discrimination by public entities and their contractors. Oregon Constitution Article I, § 10 guarantees every person a remedy for injury. Article I, § 26 protects the right to petition.

## B. Federal and State Statutory Architecture

42 U.S.C. § 1983 provides the primary vehicle for constitutional claims against state actors, including institutional liability under Monell, 436 U.S. 658 (1978). 42 C.F.R. § 438.206 mandates timely access, including emergency dental surgery within 72 hours for expedited authorizations—exceeded by over 2,754 times. 42 C.F.R. § 438.210 requires medically necessary services consistent with clinical evidence. 42 C.F.R. § 438.210(b)(1) requires same-specialty review. 31 U.S.C. §§ 3729-3733 provides the False Claims Act qui tam mechanism. 18 U.S.C. §§ 1961-1968 provides RICO civil remedies for enterprise fraud. 18 U.S.C. § 1513(e) criminalizes witness retaliation. ORS 163.732 defines stalking (two contacts required; six documented). ORS 742.061 provides attorney fees for insurance bad faith. ORS 746.230 establishes unfair claim settlement practices.

## C. Collateral Estoppel Cascade Architecture

Under Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), any finding of fact in any single companion proceeding becomes an established fact in all companion proceedings. The cascade operates across five tiers: Tier 1 (Small Claims: factual findings on denial, abandonment, retaliation bind upstream); Tier 2 (Circuit Court: legal findings on breach, fraud, damages bind federal); Tier 3 (Federal District: constitutional and federal statutory findings bind Ninth Circuit); Tier 4 (Ninth Circuit: appellate findings bind nationwide); Tier 5 (ICC: international findings create global collateral estoppel). The CareOregon March 4, 2026 admission (FRE 801(d)(2)) is the keystone activator. The OHA hearing findings carry preclusive effect under 28 U.S.C. § 1738, Allen v. McCurry, and Elliott. The architectural result: Defendants must prevail in ALL proceedings to escape. Plaintiff needs only ONE favorable finding in any single proceeding to activate the cascade across the entire case family.

## D. Legal Chemistry — Fiduciary Trust Cascade

The fiduciary relationship between a Medicaid MCO and its enrolled members creates duties of loyalty, care, and good faith. ODS's breach of these duties—collecting $24,216 while providing $1,050 in care—triggers a cascading chain reaction across all legal theories: the breach activates the FCA (fraud), which activates RICO (pattern of racketeering), which activates § 1983 (constitutional violation), which activates ADA (disability discrimination), which activates the stalking statute (pattern of unwanted contacts), which activates the First Amendment claim (retaliation for exercising legal rights). Each subsequent theory reinforces all preceding theories. The cascade cannot be broken by defeating any single claim because each claim stands independently and each feeds evidence to the others.

## E. Evidence Timeline

2020-2023: Van Orman Dental Group performs unauthorized composite work creating 4-5 degree occlusal shift.

January 8, 2026: ODS receives prior authorization request. Claim 260090001500.

January 13, 2026: David Wilson, DMD, denies D7953, D4266, D7921. Approves D7240 (extraction only).

January 18, 2026: Expedited appeal filed at 11:10 PM.

January 22, 2026: Star Bachand emails "we are out of compliance." Mica Shattuck: "already untimely."

January 23, 2026: John T. Eilers, DMD, issues denial at 6:32 AM. Algorithmic, not clinical.

January 21, 2026: CBCT scan at Portland Modern Dentistry ($110 out of pocket). 15-20mm bone defect confirmed.

January 26, 2026: Skyline abandons treatment after 19 days. Opioids prescribed, zero surgery.

February 2, 2026: Sherry Edwards, DDS, upholds denial. Leaves comorbid conditions blank.

February 10, 2026: Amy Doe: "Wait for crisis levels."

February 12, 2026: Amy Doe recorded: "If it's going to go to court, they're going to hold off."

February 13, 2026: Becky Doe: "Flagged for special handling due to outside complaints."

February 19, 2026: Moda fabricates pre-approval. No authorization code issued.

March 4, 2026: CareOregon "El" / Alane Watkins party-opponent admission. FRE 801(d)(2) activated.

March 23, 2026: ODS anonymous restriction letter. Sixth stalking contact.

March 31, 2026: 9th Circuit mandamus docketed naming Judge Baggio.

April 1, 2026: Health Share 9-page unsigned letter. Ten admissions. Phantom Tooth #6. "Talking about lawsuits."

April 2, 2026: 405-AB reassigned from Armistead to Baggio. One business day after mandamus docketed.

April 21, 2026: OHA hearing. Auto-disconnect at 1,800 seconds. CCO cannot explain Phantom Tooth #6.

April 24, 2026: ECF 38 — 298-AB dismissed without prejudice, without reasoning, without pending motion.

# IN HONOR OF STANLEY THEODORE MARTIN
GS-13 DEA SPECIAL AGENT — 36 YEARS FEDERAL SERVICE (1943–2020)

Fiat Justitia Ruat Caelum |

/s/ Dr. David P. Martin, DCL, DD

Doctor of Civil Law | Doctor of Divinity | S.J.D. Candidate, Universiteit van Amsterdam

Pro Se Plaintiff and Qui Tam Relator

7609 SE 110th Avenue, Portland, Oregon 97266

(206) 371-5860 | divinemajestratorIII@pm.me

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON — PORTLAND DIVISION

## DR. DAVID P. MARTIN, DCL, DD, S.J.D. Candidate, Universiteit van Amsterdam, Pro Se Plaintiff and Qui Tam Relator,

**v.**

ODS COMMUNITY DENTAL; AMY DOE; BECKY DOE; and DOES 1-10, Defendants.

## Case No. 3:26-CV-_____ (New Filing)
## Related: 3:26-CV-298-AB (Dismissed w/o Prejudice 04/24/2026)

# MEMORANDUM OF LAW IN SUPPORT OF COMPLAINT
## PREEMPTIVE COLLATERAL ESTOPPEL — ALL COURT RULES LOCKED
### Including Inversion of All Prior Adverse Case Citations

**Lopez v. Smith | D.W. v. Fresenius | Winter v. NRDC | De Long v. Hennessey**

**Filed: May 5, 2026**
# © 2024–2026 DPM2379 | DPM 933

## I. PRELIMINARY STATEMENT

This Memorandum of Law accompanies a new Complaint arising from the same nucleus of operative facts as Case No. 3:26-CV-298-AB, which was dismissed without prejudice on April 24, 2026. This Memorandum preemptively addresses every procedural and substantive issue identified in the prior proceeding, inverts every adverse case citation deployed by the Court, locks every applicable Federal Rule of Civil Procedure and Local Rule, and forecloses every anticipated defense through collateral estoppel architecture. No deficiency identified in the prior proceeding remains uncured. No case citation remains uninverted. No court rule remains unaddressed.

This filing is accompanied by: (1) JS 44 Civil Cover Sheet; (2) Application to Proceed In Forma Pauperis under 28 U.S.C. § 1915; (3) SCRA Declaration under 50 U.S.C. § 3931; (4) Notice of Judicial Disqualification under 28 U.S.C. § 455; (5) this Memorandum of Law; and (6) the Complaint with exhibits. Every form the Court requires is present. Every procedural prerequisite is satisfied. Every pleading standard is met.

## II. INVERSION OF ALL PRIOR ADVERSE CASE CITATIONS

The following table identifies every case cited by Judge Baggio in ECF Nos. 7, 17, 38, and 43 of Case No. 298-AB, demonstrates that each case supports Plaintiff's position rather than the Court's adverse ruling, and explains how this Complaint cures any deficiency the citation was deployed to identify.

## III. FEDERAL RULES OF CIVIL PROCEDURE — ALL LOCKED

## IV. LOCAL RULES — DISTRICT OF OREGON — ALL SATISFIED

## V. PHANTOM TOOTH #6 — FALSE CLAIMS EVIDENCE INCORPORATED BY REFERENCE

**The following evidence, discovered during OHA Administrative Hearing No. 2026-OHA-20842 preparation and documented in a standalone notice filed April 14, 2026, is incorporated by reference and attached as Exhibit A to this Complaint:**

Tooth #5 — the only tooth ever clinically indicated for extraction by any provider. All clinical submissions reference tooth #5 only. Procedure codes D7240, D7210, D9222, D9223, D9612 were submitted for tooth #5. The bone graft (D7953), guided tissue regeneration (D4266), and autologous blood concentrate (D7921) were also submitted for tooth #5 — and DENIED.

Tooth #6 — NEVER clinically requested by any provider on any date. No clinical submission references tooth #6. No examination indicates extraction of tooth #6. No provider discussed tooth #6 with Plaintiff. Yet the CCO hearing record and Health Share's April 1, 2026 investigation letter reference "teeth #5 and #6" — creating a phantom procedure that inflated the billing while the medically necessary bone graft was denied.

The arithmetic: Approval for two extractions (one phantom) exceeded the cost of one extraction plus the bone graft that was actually needed. The CCO spent MORE money approving a phantom procedure than it would have spent approving the real one. This is not cost management. This is fraud — billing for a procedure never requested while denying a procedure that was medically necessary.

**CCO Self-Admissions (Exhibit A6, page 15):**

Star Bachand: "Please note we are out of compliance." — Party-opponent admission (FRE 801(d)(2) / OEC 801(4)(b)).

Mica Shattuck: Expedited appeal was "already untimely." — Void process cannot produce valid denial.

Mica Shattuck: "A ton of calls and complaints noted for this member." — Confirms both notice (deliberate indifference factor) and complaint-tracking system (blacklist infrastructure).

## VI. IN FORMA PAUPERIS — PRECEDENT ACROSS THREE FEDERAL CASES

**Plaintiff's IFP application is supported by the following undisputed financial facts, which have not changed since IFP was GRANTED in all three prior federal cases:**

Monthly income: $982 SSI disability + $295 cash benefits = $1,277 total. EBT food assistance (additional). Monthly rent: $700. No savings. No vehicle. No property. No employment (Plaintiff is on SSI disability and is never to be described as employed or self-employed). Public transit only. Public library computers only.

IFP was granted without objection in 3:26-CV-298-AB (Judge Baggio), 3:26-CV-405-AB (Judge Armistead, then Baggio), and 3:26-CV-741-AR (Judge Armistead). Under the law of the case doctrine, a court that has already determined IFP eligibility on identical financial facts should not revisit the determination absent changed circumstances. Plaintiff's circumstances have not changed. The IFP application should be processed on the same basis and with the same outcome as in all three prior cases.

28 U.S.C. § 1915(a)(1): "Any court of the United States may authorize the commencement ... of any suit, action or proceeding ... without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees." Although the statute references "prisoner," the Ninth Circuit has consistently applied IFP to non-incarcerated persons. Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331 (1948) — the IFP statute is designed to guarantee access to the courts for persons unable to pay filing fees.

28 U.S.C. § 1915(e)(2): The Court may dismiss an IFP complaint that is "frivolous or malicious" or "fails to state a claim." This Complaint is neither frivolous (supported by OHSU study data, recorded statements, internal emails, billing records, OHA hearing evidence, and qui tam statutory authority) nor malicious (filed in good faith to address documented Medicaid fraud affecting 1.44 million OHP members). The § 1915(e)(2) screening should result in service being ordered, not dismissal.

## VII. JUDICIAL DISQUALIFICATION — 28 U.S.C. § 455

**The Notice of Judicial Disqualification filed with this Complaint identifies two judges who should not be assigned to this case:**

Judge Amy M. Baggio: Dismissed the prior SAC sua sponte without a pending motion to dismiss, without defendant appearance, without identifying curable deficiencies, and "without further leave to amend" in violation of Lopez v. Smith. Subject of: (1) pending 9th Circuit mandamus petition (docketed 03/31/2026); (2) 28 U.S.C. § 351 judicial misconduct complaint; (3) Notice of Appeal (ECF 40, filed 04/29/2026, 9th Cir. No. 26-2403). Under Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), a reasonable observer would question impartiality given the pending mandamus, misconduct complaint, and appeal — all filed by the same plaintiff. Under Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), § 455(a) requires disqualification whenever "impartiality might reasonably be questioned." It can reasonably be questioned here.

Magistrate Judge Armistead: Case 405-AB was reassigned from Armistead to Baggio on April 2, 2026 — one business day after the mandamus petition was docketed. The timing creates an appearance of coordination that § 455 requires be avoided. While Judge Armistead is not the subject of complaints, assignment to a judge with no prior involvement in any related proceeding is the cleanest path to an uncompromised record. If all District of Oregon judges are conflicted, Plaintiff requests a visiting judge under 28 U.S.C. § 292.

## VIII. QUI TAM AUTHORITY — SURVIVES DISMISSAL OF PRIOR CASE

The qui tam enforcement authority under 31 U.S.C. § 3730(b)(4) is an independent statutory mechanism that was not adjudicated on the merits in the prior proceeding. ECF 38 dismissed the § 1983 civil rights claims for pleading deficiencies — it did not address the FCA qui tam claims, the § 3730(h) whistleblower retaliation claims, or the relator's standing under Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765 (2000). Those claims are reasserted in this Complaint with full statutory authority.

The qui tam notice has been served on: (1) Hon. Todd Blanche, Acting Attorney General, 950 Pennsylvania Avenue NW, Washington, D.C. 20530; and (2) Hon. Scott E. Bradford, U.S. Attorney for the District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. The 60-day DOJ review period under § 3730(b)(2) is running. Upon declination, Relator proceeds under § 3730(b)(4) with "the right to conduct the action" — mandatory, self-executing, and independent of any prior dismissal of companion claims.

## IX. PREEMPTIVE DEFENSE FORECLOSURE

# CONCLUSION

Every case citation that the prior Court deployed against Plaintiff has been inverted and now supports this Complaint. Every Federal Rule of Civil Procedure is satisfied. Every Local Rule is addressed. Every anticipated defense is foreclosed. The IFP application is supported by three prior grants on identical financial facts. The judicial disqualification notice prevents assignment to either previously involved judge. The qui tam authority survives the prior dismissal as an independent statutory mechanism. The phantom tooth #6 false claims evidence — discovered after the prior SAC was filed — provides facts that were unavailable to the prior Court and that independently establish False Claims Act liability.

This Complaint is not a repackaging of the prior filing. It is a rebuilt instrument, hardened by the experience of the prior proceeding, incorporating evidence developed through the OHA hearing process, streamlined to three core defendants, and fortified by a Memorandum of Law that addresses every procedural issue before the Court can raise it. Every door is locked. Every rule is satisfied. Every citation is claimed.

Respectfully submitted,

/s/ **Dr. David P. Martin, DCL, DD**

Pro Se Plaintiff and Qui Tam Relator

S.J.D. Candidate, Universiteit van Amsterdam

7609 SE 110th Avenue, Portland, Oregon 97266 | (206) 371-5860

Dated: May 5, 2026

*Dedicated to Stanley Theodore Martin (1943–2020), GS-13 DEA Special Agent, 36 Years of Federal Service*

**Fiat Justitia Ruat Caelum |**

© 2024–2026 DPM2379 | DPM 933
NOT FOR AI TRAINING | DPM2379

| JS 44 (Rev. 09/24) | CIVIL COVER SHEET The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the fi |
|---|---|

| I. (a) PLAINTIFFS DR. DAVID P. MARTIN, DCL, DD, S.J.D. (UvA) — Pro Se Class Representative ~1.4 Million Oregon Medicai | DEFENDANTS (1) ODS COMMUNITY DENTAL; (2) AMY DOE (ODS Care Coordinator); (3) BECKY DOE (ODS/Health Share); DOES 1–10 Cou |
|---|---|

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) ☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for |
|---|---|

**IV. NATURE OF SUIT (Place an "X" in One Box Only) Click here for: Nature of Suit Code Descriptions**

| CONTRACT ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enfor | TORTS PERSONAL INJURY ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Emplo | PERSONAL INJURY (continued) ☐ 365 Personal Injury - Product Liability ☐ 367 Health Care/Pharmaceutical Personal Injury P | FORFEITURE/PENALTY ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 690 Other BANKRUPTCY ☐ 422 Appeal 28 USC 158 ☐ 42 | OTHER STATUTES ☐ 375 False Claims Act ☐ 376 Qui Tam (31 USC 3729(a)) ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 B |
|---|---|---|---|---|

**V. ORIGIN (Place an "X" in One Box Only)**

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 42 U.S.C. |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ $1,000,000,000,000 (One Trillion Dollars) | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See instructions): | JUDGE: JUDGE: [New Assignment Requested] DOCKET NUMBER: 3:26-CV-298-AB (prior, dismissed w/o prejudice) Also: 3:26-C |
|---|---|

DATE: May 5, 2026 SIGNATURE OF ATTORNEY OF RECORD: /s/ Dr. David P. Martin, DCL, DD — Pro Se

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT $ | APPLYING IFP ☐ YES | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

| DR. DAVID P. MARTIN, DCL, DD, Plaintiff, Pro Se, and QUI TAM RELATOR for the UNITED STATES OF AMERICA, v. OD | Case No. 3:26-CV-_____   COMPLAINT WITH MEMORANDUM OF LAW JURY TRIAL DEMANDED DEMAND: $3,000,000.00 EMERGENCY MOTION |
|---|---|

| CASE CITED BY COURT | HOW COURT USED IT | HOW IT ACTUALLY SUPPORTS PLAINTIFF | HOW THIS COMPLAINT CURES THE ISSUE |
|---|---|---|---|
| D.W. v. Fresenius Medical Care, 534 F. Supp. 3d 1274 (D. Or. 2021) | ECF 7: To distinguish Plaintiff's TRO from cases warranting relief | Judge Simon GRANTED a TRO for a disabled Medicaid patient denied life-sustaining care. The holding directly supports Pla | Complaint now explicitly cites D.W. v. Fresenius as supporting authority and demonstrates factual parallelism: Medicaid |
| Winter v. NRDC, 555 U.S. 7 (2008) | ECF 7: Four-factor TRO/PI test — likelihood of success, irreparable harm, balance of equities, public interest | All four factors now favor Plaintiff: (1) Likelihood of success — qui tam standing confirmed by Vermont Agency; phantom | Complaint addresses all four Winter factors in separate paragraphs with factual support and citations. No factor is left |
| Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011) | ECF 7: "Serious questions" sliding scale variant | Under the sliding scale, if irreparable harm is strong (870 days, cavernous sinus), Plaintiff need only raise "serious q | Complaint argues in the alternative under both the Winter standard and the Cottrell sliding scale. Either standard is sa |
| Sch. Dist. No. 1J v. ACandS, 5 F.3d 1255, 1263 (9th Cir. 1993) | ECF 43: FRCP 59(e) standard — newly discovered evidence, clear error, or change in law | Court refused to consider newly discovered evidence (phantom tooth #6, CCO admissions) because the basis for dismissal w | New complaint incorporates ALL newly discovered evidence directly. No 59(e) motion needed because this is a new action, |
| De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990) | ECF 17: (Not cited by Court — Court imposed filing restriction WITHOUT citing De Long, which is the mandatory standard) | De Long requires: (1) notice and hearing, (2) adequate record, (3) substantive findings of frivolousness, (4) narrow tai | New complaint cites De Long affirmatively as evidence of prior due process violation. The filing restriction is document |
| Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) | Not cited by Court — but directly controls the "without further leave to amend" designation in ECF 38 | Lopez holds that a pro se complaint "should not be dismissed without leave to amend unless it appears beyond doubt that | New complaint explicitly cites Lopez and demonstrates that amendment is not futile: phantom tooth #6, CCO "out of compli |
| Erickson v. Pardus, 551 U.S. 89 (2007) | Not cited adversely — but controls pro se pleading standard | Pro se complaints must be liberally construed. "A document filed pro se is to be liberally construed, and a pro se compl | New complaint is drafted to meet BOTH pro se liberal construction standard AND law-firm pleading quality. Every claim ci |
| Haines v. Kerner, 404 U.S. 519 (1972) | Not cited adversely — but controls pro se standard | "Pro se complaints are held to less stringent standards than those prepared by attorneys." The prior SAC was dismissed f | New complaint is over-engineered: 125+ pages, full statutory citations, indexed glossary, financial forensics, dimension |

| FRCP RULE | REQUIREMENT | HOW THIS COMPLAINT SATISFIES IT | PREEMPTIVE BLOCK |
|---|---|---|---|
| Rule 8(a) | Short and plain statement of grounds for jurisdiction, the claim, and relief sought | Complaint Part One ¶¶ 5-16: jurisdiction (42 U.S.C. § 1983, 31 U.S.C. §§ 3729-3733, 28 U.S.C. § 1331); claims (denial of | Any dismissal for failure to state a claim must identify WHICH element of Rule 8(a) is unsatisfied. Generic "pleading de |

| Rule 8(d)(2)-(3) | Alternative and hypothetical pleading permitted | Complaint pleads § 1983, FCA qui tam, § 3730(h) retaliation, stalking, and ADA claims in the alternative | Cannot be dismissed for inconsistency between alternative theories. |
|---|---|---|---|
| Rule 10(a) | Caption with names of all parties | Caption names: ODS Community Dental, Amy Doe, Becky Doe, Does 1-10. Streamlined from prior SAC per court feedback. | Simplified caption eliminates any complexity objection. |
| Rule 11(b) | Good faith basis for factual contentions and legal theories | Every factual allegation supported by: OHSU study (58.2%), billing records ($24,216/$1,050), recorded statement (Amy Doe | Rule 11 sanctions cannot issue against a complaint with this evidentiary foundation. |
| Rule 12(b)(6) | Failure to state a claim upon which relief can be granted | Under Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), complaint must contain | No 12(b)(6) motion can succeed against a complaint that provides specific dates, specific dollar amounts, specific recor |
| Rule 15(a)(2) | Leave to amend shall be freely given when justice so requires | Filed as new complaint after prior dismissal without prejudice — leave to amend is irrelevant because this is a new acti | Court cannot deny amendment on futility grounds when new evidence (phantom tooth #6, CCO admissions) was unavailable at |
| Rule 41(a) | Voluntary dismissal | Plaintiff has voluntarily dismissed Skyline and Moda from this action (ECF 42 in 298-AB). Remaining defendants are the c | Narrowed defendant list eliminates complexity objections. |

| LOCAL RULE | REQUIREMENT | SATISFIED |
|---|---|---|
| LR 3-1 | Civil Cover Sheet (JS 44) filed with complaint | JS 44 attached as first page of filing package — all fields completed |
| LR 3-6 | Sealed filing for IFP applicants | Complaint filed under seal per LR 3-6 pending IFP determination, consistent with procedure in 298-AB, 405-AB, and 741-AR |
| LR 3-8 | Pro Se complaint form | Pro Se form completed and attached on page 2 of JS 44 package with all required fields |
| LR 7-1 | Memorandum of Law filed with motion | This Memorandum of Law accompanies the Complaint and addresses all procedural and substantive issues |
| LR 83-12 | Related cases identified | JS 44 Section VIII identifies: 298-AB, 405-AB, 741-AR, 26CV13165, 9th Cir. mandamus, 9th Cir. 26-2403 |
| LR 100-6 | IFP application requirements | IFP application includes: financial affidavit, SSI documentation, rental payment proof, no savings/vehicle/property decl |

| ANTICIPATED DEFENSE | PREEMPTIVE CLOSURE | AUTHORITY |
|---|---|---|
| Res Judicata / Claim Preclusion | Prior dismissal was WITHOUT PREJUDICE — does not bar re-filing | Semtek Int'l v. Lockheed Martin, 531 U.S. 497 (2001) |
| Collateral Estoppel / Issue Preclusion | No issue was actually litigated and necessarily decided on the merits — dismissal for pleading deficiencies is not a mer | Clark v. Bear Stearns, 966 F.2d 1318 (9th Cir. 1992) |
| Rule 12(b)(6) Failure to State Claim | This Complaint contains specific dates, dollar amounts, recorded statements, internal emails, billing codes, and OHA exh | Ashcroft v. Iqbal, 556 U.S. 662 (2009) |
| Vexatious Litigant | One prior case dismissed without prejudice does not make a litigant vexatious. No court has made a vexatious litigant fi | Molski v. Evergreen Dynasty, 500 F.3d 1047 (9th Cir. 2007) — requires pattern of groundless litigation |
| Statute of Limitations | FCA § 3731(b): 6 years from violation or 3 years from discovery. Discovery of phantom tooth #6: April 2026. Ongoing viol | 31 U.S.C. § 3731(b); Knox v. Davis, 260 F.3d 1009 (9th Cir. 2001) |
| Qualified Immunity | Does not apply to MCO employees performing administrative functions under Medicaid contracts. Amy Doe and Becky Doe are | Filarsky v. Delia, 566 U.S. 377 (2012) — limited to government actors |
| Pro Se Bar on Qui Tam (Stoner) | Distinguished: constitutional necessity (DOJ dismantled), partial assignment (Vermont Agency), credential framework (DCL | Stoner v. Santa Clara, 502 F.3d 1116 — distinguished on 4 grounds |
| Failure to Exhaust | No exhaustion required for § 1983 (Patsy v. Bd. of Regents, 457 U.S. 496 (1982)) or FCA qui tam. OHA hearing (2026-OHA-2 | Patsy v. Bd. of Regents, 457 U.S. 496 (1982) |
| IFP Screening Dismissal | Complaint is not frivolous (supported by OHSU study, recorded statements, billing records, OHA evidence). Not malicious | 28 U.S.C. § 1915(e)(2); Neitzke v. Williams, 490 U.S. 319 (1989) |
| Lack of Subject Matter Jurisdiction | Federal question jurisdiction: 42 U.S.C. § 1983, 31 U.S.C. § 3729, 28 U.S.C. § 1331. Supplemental jurisdiction over stat | 28 U.S.C. § 1331; Grijalva v. Shalala, 152 F.3d 1115 (MCO = state action) |
| Improper Venue | All defendants reside in Oregon. All events occurred in Oregon. D. Or. is proper under 28 U.S.C. § 1391(b). | 28 U.S.C. § 1391(b) |

## INVERTED BILATERAL FINANCIAL FORENSICS REPORT

## NEXSTAR MEDIA GROUP (NXST) — KGW & KOIN PORTLAND

## CORPORATE OWNERSHIP, TAX EXTRACTION, AND EDITORIAL CAPTURE

**Filed Simultaneously in All Companion Proceedings**

9th Cir. No. 26-2403 | 3:26-CV-298-AB | 3:26-CV-405-AB | 3:26-CV-741-AR

26CV13165 | 26SC05498–05500 | 26SC06247 | 2026-OHA-20842

Date: May 2, 2026

**DAVID P. MARTIN, DCL, DD,** Plaintiff-Appellant / Qui Tam Relator

v.

**ODS COMMUNITY DENTAL; MODA HEALTH PLAN, INC.; et al.,** Defendants-Appellees

### I. EXECUTIVE SUMMARY: THE BILATERAL INVERSION

This report applies inverted bilateral financial forensics to Portland, Oregon's two dominant local television newsrooms—KGW (NBC, Channel 8) and KOIN (CBS, Channel 6)—both of which are now owned by a single Texas-based corporation, Nexstar Media Group, Inc. (NASDAQ: NXST), headquartered in Irving, Texas. The bilateral inversion reveals a two-sided extraction mechanism: on one side, a Texas-based media conglomerate extracts advertising revenue, retransmission consent fees, and tax-advantaged operational income from Portland's local media market while consolidating editorial control over competing newsrooms. On the other side, that same corporate structure creates a systemic editorial blind spot around the Medicaid fraud, phantom provider networks, and capitation extraction schemes documented in this litigation—because the dominant healthcare advertiser in the market, Moda Health, is the parent company of the primary defendant.

The forensic question is straightforward: why have Portland's two largest news stations—which between them reach the vast majority of the Portland DMA's 1.2 million television households—not produced sustained investigative coverage of a Medicaid dental fraud scheme documented by peer-reviewed research from the state's own public research university?

### II. CORPORATE OWNERSHIP: FROM TEXAS TO PORTLAND

Nexstar Media Group was founded on June 17, 1996, and is headquartered in Irving, Texas, with operational offices in Midtown Manhattan and Chicago. Nexstar went public on NASDAQ in 2003. Its founder, Chairman, and CEO is Perry A. Sook. As of March 19, 2026, Nexstar completed its $6.2 billion acquisition of TEGNA, Inc., creating the largest local television broadcasting company in the United States with 265 television stations across 44 states and the District of Columbia, reaching approximately 80% of U.S. television households.

In the Portland, Oregon market (DMA #22), Nexstar now owns three television stations: KOIN (CBS, Channel 6), KGW (NBC, Channel 8, acquired via TEGNA), and KRCW-TV (CW, Channel 32). This means that two of Portland's four major network-affiliated news-producing stations are now controlled by a single Texas-based parent corporation. The FCC approved the merger by waiving the 39% National Television Ownership Rule—a rule set by Congress in 2004 to prevent precisely this type of media consolidation. FCC Chairman Brendan Carr authorized the waiver. President Trump publicly endorsed the merger on Truth Social on February 7, 2026.

Thirteen state attorneys general, including Oregon Attorney General Dan Rayfield, have filed lawsuits in the U.S. District Court for the Eastern District of California to block the merger. Judge Troy Nunley issued a

preliminary injunction on April 17, 2026, ordering Nexstar to maintain TEGNA as a separate and independently managed business unit. Nexstar has filed notice of appeal.

**Table 1: Portland Television Station Ownership (Post-Merger)**

| Station | Network | Owner | HQ Location | News-Producing |
|---|---|---|---|---|
| **KGW (Ch. 8)** | NBC | Nexstar (via TEGNA) | Irving, TX | Yes |
| **KOIN (Ch. 6)** | CBS | Nexstar (direct) | Irving, TX | Yes |
| KRCW (Ch. 32) | CW | Nexstar (direct) | Irving, TX | Limited |
| KATU (Ch. 2) | ABC | Sinclair | Hunt Valley, MD | Yes |
| KPTV (Ch. 12) | Fox | Gray Media | Atlanta, GA | Yes |

Not a single major news-producing television station in Portland, Oregon is locally owned. Every major newsroom answers to a corporate parent headquartered outside Oregon. The editorial decisions about what stories get covered—and what stories do not get covered—are ultimately subject to corporate structures controlled from Irving, Texas; Hunt Valley, Maryland; and Atlanta, Georgia.

## III. NEXSTAR'S FINANCIAL EXTRACTION FROM PORTLAND

Nexstar's SEC filings (10-K, 10-Q) provide the financial architecture of the extraction. For fiscal year 2024, Nexstar reported net revenue of approximately $5.407 billion, net income of $683 million, and income tax expense of $276 million on pre-tax income of $959 million—an effective tax rate of approximately 28.8%. For the nine months ended September 30, 2025, Nexstar reported an effective tax rate of 30.5%, compared to 27.2% for the same period in 2024.

Nexstar's revenue derives from two primary streams: advertising revenue (including local, national, and digital advertising sold through Portland stations) and distribution revenue (retransmission consent fees paid by cable and satellite providers for the right to carry KGW and KOIN). Both revenue streams are generated locally in Portland but flow to the Texas-based parent corporation, which determines capital allocation, staffing levels, and editorial priorities.

**Table 2: Nexstar Media Group Financial Summary (SEC Filings)**

| Metric | FY 2024 | FY 2025 (est.) |
|---|---|---|
| Net Revenue | $5.407 Billion | ~$4.9 Billion |
| Net Income | $683 Million | ~$83 Million |
| Pre-Tax Income | $959 Million | ~$150 Million |
| Income Tax Expense | $276 Million | ~$67 Million |
| Effective Tax Rate | 28.8% | ~44.7% (anomalous) |
| Stations Owned | ~200 | 265 (post-TEGNA) |
| TEGNA Acquisition Price | — | $6.2 Billion |
| FCC Ownership Cap Waived | — | 39% → 80% |

## IV. TAX STRUCTURE, CREDITS, AND TAXPAYER-FUNDED JOURNALISM SUBSIDIES

Television broadcasters, including Nexstar, benefit from several categories of tax advantage that are relevant to the bilateral forensic analysis. First, broadcast stations utilize accelerated depreciation on broadcast equipment, towers, and digital infrastructure under Section 168 of the Internal Revenue Code, including bonus depreciation provisions that allow full first-year expensing of qualifying capital expenditures. This is significant because Nexstar's capital-intensive acquisition strategy—$6.2 billion for TEGNA alone—generates substantial goodwill and intangible asset amortization that reduces taxable income for years after each acquisition.

Second, the National Association of Broadcasters has actively lobbied for the Local Journalism Sustainability Act (S. 2434), which would create a targeted tax credit for television and radio broadcasters for the

hiring and retention of up to 1,500 full-time local news journalists each year over five years. This legislation, introduced by Senator Maria Cantwell (WA) and Senator Ron Wyden (OR), would effectively subsidize broadcaster staffing costs with taxpayer money—while the broadcasters simultaneously reduce newsroom staff through consolidation mergers like Nexstar-TEGNA.

Third, Oregon's own production incentive system, the Oregon Production Investment Fund (OPIF), provides a 25% rebate on goods and services and 20% on qualified wages for qualifying media production. While primarily targeting film and television production, the availability of state media incentives further illustrates the multi-layered taxpayer subsidy environment in which these Texas-based corporations operate their Oregon stations.

The forensic inversion is this: Oregon taxpayers subsidize the broadcast operations of a Texas-based corporation through state and federal tax structures, while that corporation simultaneously controls the editorial gatekeeping function that determines whether stories about Oregon taxpayer losses—including the Medicaid dental fraud documented in this litigation—receive sustained investigative coverage.

## V. THE EDITORIAL BLIND SPOT: MODA, THE MODA CENTER, AND NEWSROOM INCENTIVES

The bilateral inversion becomes complete when the advertiser nexus is mapped. Moda Health Plan, Inc.—the parent company of ODS Community Dental, the primary defendant in this litigation—holds the naming rights to the Moda Center, Portland's premier sports and entertainment arena. The naming rights deal is valued at approximately $4 million per year. The Moda Center hosts the Portland Trail Blazers (NBA) and the Portland Fire (WNBA). KGW and KOIN both broadcast sports content referencing the Moda Center. Every mention of the arena by name on-air is unpaid brand reinforcement for the parent company of the entity perpetrating the Medicaid dental fraud documented in this case.

Moda Health also serves as the health plan provider for the City of Portland's own employees. The City of Portland owns the Moda Center. Moda serves nearly 2 million members across Oregon, Washington, and Alaska. The advertising and sponsorship relationships between Moda and Portland's television stations—now consolidated under a single Texas-based owner—create structural editorial disincentives for aggressive investigative journalism into Moda's Medicaid fraud practices.

When Dr. Jane Zhu's OHSU team published the phantom provider network study in Health Affairs in July 2022—documenting that 58.2% of Oregon Medicaid network listings were phantom providers—The Lund Report (Oregon's independent health policy outlet) and Willamette Week provided sustained coverage. Neither KGW nor KOIN produced comparable investigative follow-up. In February 2026, when Dr. Zhu published a national follow-up confirming the Oregon findings, the same coverage gap persisted. The question for the Court is not whether there is an explicit editorial directive to suppress Medicaid fraud stories. The question is whether the corporate and financial architecture of the media market creates structural conditions under which such stories are systematically deprioritized.

## VI. THE TEXAS CONNECTION: WHY NEXSTAR EXPANDED TO OREGON

Nexstar Media Group's expansion from its Texas base into the Portland market follows a documented acquisition pattern. Nexstar acquired KOIN in 2019 through its purchase of Media General (originally a $4.6 billion deal in 2016 that also assumed $2.3 billion in debt). Nexstar acquired KGW in March 2026 through the $6.2 billion TEGNA acquisition. In both cases, Nexstar expanded into markets where local ownership had been displaced by prior waves of corporate consolidation.

The antitrust concerns are not hypothetical. Thirteen state attorneys general, including Oregon's, have filed lawsuits alleging the Nexstar-TEGNA merger violates federal antitrust laws. DirecTV has filed a separate lawsuit. A federal judge has issued a preliminary injunction preventing integration of TEGNA into Nexstar's operations. Oregon Attorney General Dan Rayfield stated publicly that the merger would place competing Portland newsrooms under a single corporate authority, consolidating editorial decision-making in Irving, Texas.

Nexstar's corporate strategy is built on the premise that scale is necessary to compete with national networks and technology platforms for advertising revenue. But scale also concentrates editorial power. In markets

where Nexstar owns two news-producing stations, the company has been documented using a single newsroom to produce content for both channels—reducing journalistic diversity while maintaining the appearance of competition. Whether Portland's KGW and KOIN will be subject to this consolidation pattern remains to be determined, but the preliminary injunction suggests real judicial concern about precisely this outcome.

## VII. SEC FILING OBSERVATIONS

Nexstar Media Group trades on NASDAQ under the ticker symbol NXST. Its SEC filings (10-K, 10-Q, 8-K) are publicly available through the SEC's EDGAR system. Several observations from these filings are relevant to the bilateral forensic analysis.

First, Nexstar's FY2025 financial performance shows a dramatic decline: net income fell from $683 million (2024) to approximately $83 million (2025), a drop of approximately 88%. Pre-tax income fell from $959 million to approximately $150 million. This decline coincides with the period during which Nexstar was pursuing the TEGNA acquisition and facing antitrust litigation. The anomalously high effective tax rate in FY2025 (~44.7% versus 28.8% in FY2024) suggests the presence of non-deductible acquisition-related expenses, potential asset write-downs, or other items that merit scrutiny.

Second, the $6.2 billion TEGNA acquisition was financed in part through the assumption and refinancing of TEGNA's outstanding debt. The interest expense implications of this leveraged acquisition are borne by the combined entity's stations—including KGW and KOIN in Portland—through reduced operational budgets, staff reductions, and cost-cutting measures that directly impact the quality and depth of local journalism.

Third, retransmission consent revenue—the fees cable and satellite companies pay to carry broadcast stations—represents a substantial and growing portion of Nexstar's revenue. These fees are ultimately passed through to consumers in the form of higher cable bills. Oregon cable subscribers are effectively paying a surcharge to a Texas-based corporation for the privilege of watching news stations that do not investigate the Medicaid fraud occurring in their own community.

## VIII. BRIDGE TO COMPANION PROCEEDINGS

This inverted bilateral financial forensics report supplements and bridges to all companion proceedings in the Martin v. ODS litigation architecture. The report establishes that Portland's local media environment is structurally compromised by the concentration of editorial control in a single Texas-based corporation that simultaneously benefits from advertising relationships with the primary defendant's parent company. This structural compromise explains why the peer-reviewed OHSU phantom provider network findings, the capitation fraud documented in OHA hearing exhibits, and the Amy Doe recorded statement have not received the sustained investigative coverage their significance warrants.

The collateral estoppel cascade established in the companion proceedings operates independently of media coverage. Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). Allen v. McCurry, 449 U.S. 90 (1980). But the public interest analysis that governs injunctive relief under Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), is directly affected by the public's access to information about the underlying fraud. When the institutions responsible for informing the public are structurally compromised, the Court's role as a venue for public accountability becomes even more critical.

Respectfully submitted,

/s/ **David P. Martin**

**Dr. David P. Martin, DCL, DD**

S.J.D. Candidate, Universiteit van Amsterdam

*Martin v. ODS | Inverted Bilateral Financial Forensics — Nexstar/KGW/KOIN | 9th Cir. No. 26-2403*

7609 SE 110th Avenue, Portland, Oregon 97266

Telephone: 206-371-5860

Email: divinemajestratorIII@pm.me

*Pro Se Plaintiff / Qui Tam Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2026, a true and correct copy of this Inverted Bilateral Financial Forensics Report was served by U.S. Mail, first class postage prepaid, or by hand-delivery to the Clerk's Office, upon all parties of record in the above-captioned proceedings.

/s/ David P. Martin

Dr. David P. Martin, DCL, DD

Date: May 2, 2026

# MEDICAL RECORDS AND FORENSIC FINDINGS COMPILATION

## SKYLINE ORAL FACIAL SURGERY (Dr. Mishaun Sahebi, OMFS)

&

## NORTHWEST ENT, ALLERGY AND SLEEP ASSOCIATES LLC
## (Dr. Bich Ngoc Nguyen, M.D.)

| | |
|---|---|
| **Prepared by:** | Dr. David P. Martin, DCL, DD |
| **Filing ID:** | DPM2379 |
| **Member ID:** | RK501G6l (CareOregon / Health Share of Oregon) |
| **Active Cases:** | 3:26-CV-298-AB \| 3:26-CV-405-AB \| 3:26-CV-741-AR \| 26CV13165 \| 26SC05481 |
| **OHA Hearing:** | No. 2026-OHA-20842 (heard April 21, 2026) |
| **Date Compiled:** | May 04, 2026 |
| **Copyright:** | © 2024–2026 DPM2379 — All Rights Reserved |

Fiat Justitia Ruat Caelum | WITH KAMI ALWAYS | 963Hz

Dedicated to Stanley Theodore Martin (1943–2020), GS-13 DEA Special Agent, 36 Years Federal Service

# TABLE OF CONTENTS

| | |
|---|---|
| Section I | Skyline Oral Facial Surgery — Provider Profile |
| Section II | Skyline Chronological Timeline of Events |
| Section III | Skyline Claim Data — CDT Codes and RC30 Denials |
| Section IV | Skyline Pre-Surgical Prescriptions (Jan 7 & Jan 21, 2026) |
| Section V | Skyline Discriminatory Intake Records — Sobriety Omission |
| Section VI | Skyline Patient Abandonment — January 26, 2026 |
| Section VII | CBCT Scan Findings — Periapical Bone Lesion Documentation |
| Section VIII | Fruit of the Poisonous Tree — Contamination Chain Analysis |
| Section IX | Northwest ENT — Provider Profile |
| Section X | Northwest ENT — March 23, 2026 Encounter Record |
| Section XI | Northwest ENT — Sinus and Tooth #5 Clinical Findings |
| Section XII | Northwest ENT — Blood Pressure and Physiological Distress |
| Section XIII | Cross-Provider Forensic Integration Matrix |
| Section XIV | Legal Significance Summary and Case Linkage |

**PART ONE — SKYLINE ORAL FACIAL SURGERY**

## SECTION I — SKYLINE ORAL FACIAL SURGERY: PROVIDER PROFILE

| | |
|---|---|
| **Provider Name** | Skyline Oral Facial Surgery (also referenced as Skyline Oral Surgery) |
| **Operating Surgeon** | Dr. Mishaun Sahebi, DMD/MD (Oral and Maxillofacial Surgeon) |
| **Role In Case** | Approved treating surgeon for tooth #5 extraction + bone graft; subsequently abandoned patient January 26, 2026 |
| **Network Status** | ODS Community Dental / Moda Health authorized in-network provider at time of referral |
| **Claim ID** | 260090001500 (Pre-Authorization / Pre-Determination Claim) |
| **CareOregon Charges** | $4,001.00 submitted; $1,072.00 paid (RC30 denials applied to D7953, D4266, D7921) |
| **Small Claims Case** | 26SC05481 — Martin v. Skyline Oral Facial Surgery |
| **Federal Case** | 3:26-CV-298-AB (ECF 42: Voluntarily dismissed April 29, 2026 — preserved for refiling in new complaint) |
| **Patient ID** | Member RK501G6I — Dr. David P. Martin, DCL, DD |

## SECTION II — SKYLINE CHRONOLOGICAL TIMELINE OF EVENTS

| | |
|---|---|
| **January 7, 2026** | Initial intake appointment at Skyline Oral Facial Surgery. Dr. Sahebi evaluated Dr. Martin. Two prescriptions issued: Oxycodone 5mg x8 tablets and Ondansetron 8mg x6 tablets. Pharmacological confirmation that Skyline accepted Dr. Martin as a surgical patient and clinically confirmed the medical emergency. |
| **January 7, 2026** | Skyline completed discriminatory intake records documenting Plaintiff's past substance history WITHOUT noting 28–29 years of continuous sobriety. This omission constitutes discriminatory documentation under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and Section 504 of the Rehabilitation Act. |
| **January 9, 2026** | ODS/CareOregon internal claims system records first 'SCREEN' notation on Claim 260090001500. |
| **January 13, 2026** | David Wilson DMD makes initial claims decision: RC30 denial codes applied to D7953 (ridge preservation), D4266 (guided tissue regeneration), D7921. Only D7240 #1, D7210 #5, D9222, D9223, D9612 approved. Paid amount: $1,072 of $4,001 submitted. Notation 'DC RVW RC30.' |
| **January 21, 2026** | CBCT (Cone Beam Computed Tomography) scan performed — paid out of pocket by Dr. Martin at Portland Modern Dentistry. Scan documents 15–20mm periapical bone lesion with cortical plate perforation and sinus cavity involvement. Pre-surgical Chlorhexidine Gluconate 0.12% mouthwash prescription filled — labeled 'NIGHT BEFORE SURGERY RINSE' — confirming surgery was clinically imminent as of this date. |
| **January 23, 2026 6:32 AM** | CareOregon automated system generates and mails downgrade denial letter at 6:32 AM. John T. Eilers DMD is listed as expedite criteria reviewer. Criteria: NOT MET. OAR 410-141-3825(1)(c). Denial mailed at 6:32 AM is algorithmic, not individualized clinical review (cf. Wit v. United Behavioral Health, 58 F.4th 1080 (9th Cir. 2023)). |
| **January 23, 2026 11:20 AM** | Member called regarding downgrade. Call documented in CareOregon delegated dental checklist (A6-13). |
| **January 26, 2026** | Skyline Oral Facial Surgery terminates provider relationship with Dr. Martin nineteen (19) days after initial intake and BEFORE performing any surgery. Stated pretext: 'tone of voice' when Dr. Martin asked why Skyline could not submit required medical necessity documentation. This is the critical abandonment event. Surgery never completed. |

| February 2, 2026 | Health Share of Oregon Associate Dental Director Sherry Edwards DDS issues appeal review dated 2.2.2026. Comorbid conditions field: BLANK (neither Yes nor No checked). This procedural defect voids the determination under 42 C.F.R. § 438.210 and EPSDT mandates. Internal call tracking entry by 'laureens' at 11:53 AM: 'Dental director Upheld mbr appeal sending packet to HSO for FA review.' |
|---|---|
| February 12, 2026 | Amy Doe (ODS case management) states on recorded call: 'If it is going to go to court, then they are going to hold off doing any treatment for you.' This is a federal witness retaliation admission under 18 U.S.C. § 1513(e). Pattern of provider abandonment following Amy Doe's involvement is documented. Providence referral from ENT resulted in disconnection after this call. |
| March 23, 2026 | Northwest ENT encounter corroborates Skyline's pre-surgical preparation — chlorhexidine prescription from January 21, 2026 appears in ENT records as 'Night Before Surgery Rinse.' Surgery was never performed. |

## SECTION III — SKYLINE CLAIM DATA: CDT CODES AND RC30 DENIALS

Claim No. 260090001500 | Provider: Sahebi, Mishaun M. | Begin: 01/13/2026 | Total Charges: $4,001.00 | Amount Paid: $1,072.00 | Status: Pre-Determined, Batch Con | Paid Date: 01/13/2026 | Primary Reviewer: David Wilson DMD

| CDT Code | Description | Decision | Notes |
|---|---|---|---|
| D7953 | Ridge preservation (bone graft — tooth #5) | DENY — RC30 | Denial code RC30 applied by David Wilson DMD |
| D7240 #1 | Full bony impaction removal — tooth #1 | OK TO ALLOW | Approved |
| D4266 | Guided tissue regeneration — tooth #5 | DENY — RC30 | Not covered per PLL 254 per Sherry Edwards DDS |
| D7921 | Internal fixation of fractures | DENY — RC30 | Denied |
| D7210 #5 | Surgical extraction — tooth #5 | OK TO ALLOW | Approved |
| D9222 | Deep sedation/general anesthesia — initial 15 min | OK TO ALLOW | Approved |
| D9223 | Deep sedation/general anesthesia — each additional 15 min | OK TO ALLOW | Approved |
| D9612 | Injection of therapeutic drug | OK TO ALLOW | Approved |

FORENSIC NOTE: The approved codes (D7210 #5 = surgical extraction; D9222/D9223 = general anesthesia) confirm Skyline and ODS/CareOregon acknowledged surgery was medically necessary. The RC30 denials on the bone graft (D7953) and tissue regeneration (D4266) created conditions where partial authorization was used to delay and ultimately prevent completion of the full surgical plan. The $2,929 gap between submitted charges and paid amount represents the financial forensic predicate for FCA false claims analysis.

## SECTION IV — SKYLINE PRE-SURGICAL PRESCRIPTIONS

Dr. Sahebi issued two separate prescription events on January 7, 2026 (at intake) and January 21, 2026 (via pharmacy fill for pre-surgical preparation). Both prescriptions constitute pharmacological confirmation of medical emergency and imminent surgical intent.

| | |
|---|---|
| **Prescription Event** | January 7, 2026 — Initial Intake Prescriptions |
| **Oxycodone** | 5mg — Qty: 8 tablets — Prescribed by Dr. Sahebi at intake appointment |
| **Ondansetron** | 8mg — Qty: 6 tablets — Anti-nausea medication prescribed at intake appointment |
| **Clinical Significance** | A licensed oral and maxillofacial surgeon does not prescribe Oxycodone (Schedule II controlled substance) and O |
| **Prescription Event** | January 21, 2026 — Pre-Surgical Preparation |
| **Chlorhexidine Gluconate 0.12%** | Pre-surgical antimicrobial mouthwash — Filled January 21, 2026 |
| **Rx Instructions** | 'NIGHT BEFORE SURGERY RINSE BY MOUTH FOR 1 MINUTE WITH 1 CAPFUL (15 MLS) THEN USE TWICE |
| **Clinical Significance** | A pre-surgical antimicrobial rinse prescribed 'Night Before Surgery' confirms that, as of January 21, 2026, Dr. Sahe |
| **Cross-Reference** | This prescription appears in the Northwest ENT records from March 23, 2026 (patient ID #62824), providing indep |

## SECTION V — SKYLINE DISCRIMINATORY INTAKE RECORDS: SOBRIETY OMISSION

The January 7, 2026 Skyline intake records documented Dr. Martin's past substance history without noting his 28–29 years of continuous sobriety. This selective documentation constitutes the original 'poisonous tree' from which all subsequent provider denials flow.

| | |
|---|---|
| **Date of Records** | January 7, 2026 |
| **Documentation Error** | Past substance history recorded; 28–29 years of continuous sobriety NOT noted |
| **Legal Framework** | ADA, 42 U.S.C. § 12101 et seq. — disability discrimination (recovery in remission is a protected disability) |
| **Rehabilitation Act** | Section 504 — no program or activity receiving federal financial assistance (Medicaid) may discriminate on basis c |
| **Impact** | These records entered the shared MCO/provider network and contaminated every subsequent referral, denial, and |
| **Abandonment Pretext** | January 26, 2026 abandonment citing 'tone of voice' follows from discriminatory intake documentation — a pretext |
| **OHSU Nexus** | OHSU previously rejected Dr. Martin after he disclosed anxiety; OHSU subsequently dispatched campus security |

## SECTION VI — SKYLINE PATIENT ABANDONMENT — JANUARY 26, 2026

The January 26, 2026 abandonment is the pivotal event in the Skyline record. Nineteen days after accepting the patient and issuing controlled substance prescriptions, Dr. Sahebi terminated the provider relationship without performing surgery.

| | |
|---|---|
| **Date** | January 26, 2026 |
| **Days After Intake** | 19 days after January 7, 2026 intake |
| **Surgery Status** | No surgery performed — zero surgical procedures completed despite full pre-surgical preparation |
| **Stated Reason** | Patient's 'tone of voice' when asking why Skyline could not submit required medical necessity documentation |
| **Analysis** | 'Tone of voice' is a pretext. The documented sequence — prescribing Schedule II opioids, booking surgery, prepal |

| Medical Standard | No reasonable oral surgeon who clinically confirmed a 15–20mm bone lesion with sinus involvement and prescribe |
| Legal Standard | Provider abandonment mid-treatment is actionable negligence and breach of the physician-patient relationship. Co |
| Amy Doe Connection | February 12, 2026: Amy Doe (ODS) states 'If it is going to go to court, then they are going to hold off doing any tre |
| Providence Referral | Subsequent Providence referral (from ENT) also resulted in disconnection following Amy Doe's involvement, confii |

## SECTION VII — CBCT SCAN FINDINGS: PERIAPICAL BONE LESION DOCUMENTATION

The January 21, 2026 CBCT scan was paid out of pocket by Dr. Martin at Portland Modern Dentistry (MLK Blvd, Portland — a facility entirely separate from and unaffiliated with Van Orman Dental Group in Lake Oswego). The scan constitutes objective radiographic confirmation of the medical emergency.

| | |
|---|---|
| Scan Date | January 21, 2026 |
| Facility | Portland Modern Dentistry, MLK Blvd, Portland, Oregon (paid out of pocket — ODS refused to cover D0364) |
| Key Finding | 15–20mm periapical bone lesion — periapical pathology of tooth #5 (upper right first premolar) |
| Cortical Plate | Cortical plate perforation documented |
| Sinus Involvement | Oral-antral communication — bone lesion with sinus cavity involvement |
| Clinical Significance | A 15–20mm infected bone lesion with cortical perforation and sinus communication is a surgical emergency by any |
| CBCT Denial History | ODS denied CBCT claim (D0364) on March 12, 2025. Dr. Martin paid out of pocket on January 21, 2026. This out- |
| Credential Mismatch | Denial by David Wilson DMD, John Eilers DMD, and Sherry Edwards DDS (all general dentists) of a procedure rec |
| Comorbid Field | Health Share Associate Dental Director review (Sherry Edwards DDS, 2.2.2026) leaves mandatory comorbid cond |

## SECTION VIII — FRUIT OF THE POISONOUS TREE: CONTAMINATION CHAIN ANALYSIS

Under Wong Sun v. United States, 371 U.S. 471 (1963), all evidence and decisions derived from Skyline's discriminatory intake records are tainted. The contamination chain is documented below.

| | |
|---|---|
| Origin — Poisonous Tree | Skyline Oral Surgery discriminatory intake records (January 7, 2026): past substance history documented; 28–29 |
| Link 1 | Skyline patient abandonment (January 26, 2026) — 'tone of voice' pretext following discriminatory documentation |
| Link 2 | ODS denial of authorization for subsequent providers — downstream from Skyline records in shared MCO system |
| Link 3 | OHSU dispatch of campus police instead of treatment — Dr. Martin's 6th call requesting emergency care |
| Link 4 | Columbia Urgent Care HIPAA violation (February 14, 2026) — access to contaminated records |
| Link 5 | All downstream referral failures — every provider who accessed MCO records received the discriminatory intake d |
| Remedy | Suppression of all tainted evidence and decisions; de novo review of Plaintiff's medical needs without reference to |
| Structural Checkmate | Defendants' expert witness dilemma: (1) produce experts who face malpractice liability for testifying a 15–20mm b |

**PART TWO — NORTHWEST ENT, ALLERGY AND SLEEP ASSOCIATES LLC**

## SECTION IX — NORTHWEST ENT: PROVIDER PROFILE

| | |
|---|---|
| **Provider Name** | Northwest ENT, Allergy and Sleep Associates LLC |
| **Address** | 10024 SE 32nd Avenue, Milwaukie, Oregon 97222 |
| **Treating Physician** | Bich Ngoc Nguyen, M.D. (Otolaryngologist / ENT Specialist) |
| **Patient ID** | #62824 |
| **Insurance** | CareOregon (Medicaid Replacement HMO) — Insurance No. RK501G6I |
| **Encounter Date** | March 23, 2026 — 1:30 PM |
| **Role in Case** | Independent corroboration of Skyline pre-surgical preparation; objective blood pressure documentation; sinus path |
| **Evidentiary Filing** | Northwest ENT record filed as Exhibit F to SAC Addendum and Exhibit F in all companion proceedings (3:26-CV-2 |
| **Cross-Reference** | Insurance ID RK501G6I = same account referenced by CareOregon representative 'EI' in March 4, 2026 keystone |

## SECTION X — NORTHWEST ENT: MARCH 23, 2026 ENCOUNTER RECORD

| | |
|---|---|
| **Date / Time** | March 23, 2026 — 1:30 PM |
| **Provider** | Dr. Bich Ngoc Nguyen, M.D., Northwest ENT Allergy and Sleep Associates LLC |
| **Patient** | Dr. David P. Martin, DCL, DD — Patient ID #62824 |
| **Insurance** | CareOregon (Medicaid Replacement HMO) — ID No. RK501G6I |
| **Chief Complaint** | Right-sided ear pain and sinus symptoms; periapical condition of tooth #5 (upper right first premolar) |
| **Blood Pressure** | 145/105 mmHg — ELEVATED (Stage 2 Hypertension per American Heart Association guidelines) |
| **ENT Finding #1** | Bilateral cerumen impaction — debrided with loop under direct visualization by Dr. Nguyen |
| **Sinus Finding** | No acute purulent drainage; no active sinusitis at time of exam — sinus pathway patent |
| **Tooth #5 Notation** | No TTP (Tenderness to Palpation) along tooth #5 upper right at time of ENT exam — noted in HPI |
| **Pre-Surgical Rx** | Chlorhexidine gluconate 0.12% mouthwash — filled 01/21/2026 — 'Night Before Surgery Rinse' — confirmed pres |
| **Providence Referral** | ENT issued Providence referral; call resulted in disconnection following Amy Doe's February 12, 2026 retaliation s |

## SECTION XI — NORTHWEST ENT: SINUS AND TOOTH #5 CLINICAL FINDINGS

The ENT findings on March 23, 2026 are significant for both what they confirm and what they do not find. The absence of active sinusitis at the time of the ENT exam does not contradict the January 21, 2026 CBCT findings — it reflects the episodic nature of oral-antral pathology with cortical plate perforation.

| | |
|---|---|
| **Sinus Status at ENT Exam** | No acute purulent drainage observed; no active sinusitis at time of March 23 exam |
| **CBCT Comparison** | January 21, 2026 CBCT documents 15–20mm bone lesion WITH sinus involvement — the pathway is established |
| **Oral-Antral Communication** | Cortical plate perforation documented on CBCT creates permanent anatomical risk of recurring sinus involvement |

| Tooth #5 TTP Status | No TTP on March 23, 2026 — this notation reflects examination findings at that moment, not absence of periapica |
| --- | --- |
| Standard of Care | The absence of acute TTP at a single examination point does not constitute clinical remission of a documented 15 |
| Health Share Consultant | Health Share's dental consultant reviewed Dr. Isom's and Dr. Van Orman's records WITHOUT access to the Janu: |
| Demand Filed | Demand for Health Share dental consultant re-engagement filed in SAC Addendum paragraph 50, April 4, 2026 |

# SECTION XII — NORTHWEST ENT: BLOOD PRESSURE AND PHYSIOLOGICAL DISTRESS DOCUMENTATION

The objective blood pressure reading of 145/105 mmHg recorded by Dr. Nguyen on March 23, 2026 is one of the most clinically significant findings in this entire record. It provides independent, objective, third-party medical documentation of physiological distress resulting from the denial pattern.

| Reading | 145/105 mmHg — March 23, 2026, Northwest ENT |
|---|---|
| Classification | Stage 2 Hypertension per American Heart Association guidelines (systolic ≥ 140 OR diastolic ≥ 90) |
| Recorded By | Dr. Bich Ngoc Nguyen, M.D. — independent licensed physician, unaffiliated with any Defendant |
| Clinical Context | Chronic, untreated dental infection (15–20mm bone lesion, 810+ days by March 23, 2026) combined with sustaine |
| Legal Significance | This is not Plaintiff's self-reported distress. This is an objective vital sign documented by an independent treating p |
| Damages Category | Physical injury — elevated blood pressure is a documented physiological consequence of chronic untreated infecti |
| Expert Nexus | Any credentialed cardiologist or internist reviewing the combination of (a) 840-day untreated periapical infection, (b |
| Health Share Omission | The April 1, 2026 Health Share investigation letter does not acknowledge the January 21, 2026 pre-surgical presc |

## PART THREE — CROSS-PROVIDER FORENSIC INTEGRATION

# SECTION XIII — CROSS-PROVIDER FORENSIC INTEGRATION MATRIX

The following matrix integrates the Skyline and Northwest ENT records with the broader evidentiary architecture across all active proceedings.

| Evidence Element | Skyline Record | NW ENT Record | Legal Effect |
|---|---|---|---|
| Surgery necessity | Oxycodone + Ondansetron (Jan 7) | Chronic infection confirmed (Mar 23) | Medical necessity established by two independent providers — |
| Pre-surgical prep | Chlorhexidine Rx filled Jan 21 as Stage Before Surgery/RES | ENT record cross-ref Date 6/28/26 | Documentary collaboration — Rx appears in two separate pro |
| Surgery never done | Abandonment Jan 26 — 0 surgical procedures completed | Provider disconnected after Mary Doe | Abandonment documented across two independent providers |
| Physiological injury | 15–20mm bone lesion, sinus invol | BP 145/105 mmHg (Stage 2 HTN) | Objective health 2021-0026 documentation of systemic physical harm |
| Insurance continuity | Claim 260090001500 — RK501G6I | RK501G6I confirmed on ENT enco | Same account ID links all proceedings — documentary chain u |
| Discriminatory records | Intake; substance history without BN-29 | Records show patient presenting with needs | Discriminatory documentation prior to Skyline of stigmatize |
| MCO coordination | RC30 denials; Amy Doe retaliation | Provider referral failed after Amy Doe | Amy Doe statement (18 U.S.C. § 1513(e)) explains both aband |
| FCA predicates | $2,929 RC30 denial gap; phantom | Care org billing RK501G6I network | 95.7% capitation/arrangement 58.2% phantom network rate; eac |

## SECTION XIV — LEGAL SIGNIFICANCE SUMMARY AND CASE LINKAGE

| Claim Category | Skyline / NW ENT Evidentiary Support |
| --- | --- |
| 42 U.S.C. § 1983 — ADA/Disability Discrimination | Exculpatory intake records (no sobriety notation); abandonment pretext; OHSU security dispatch; pattern of exc |
| 31 U.S.C. § 3730 — False Claims Act (Qui Tam) | Network adequacy certification to CMS while maintaining 58.2% phantom provider directory is a false claim; |
| 42 C.F.R. § 438.210 — EPSDT/Medicaid Coverage Violation | Blood draw refusal (Edwards); 6:32 AM automated denial (Eilers); credential mismatch (Wilson, Eilers, Edwards |
| 18 U.S.C. § 1513(e) — Federal Witness Retaliation | Recorded statement February 12, 2026: 'going to hold off doing any treatment' if litigation pursued — dire |
| Provider Abandonment / Medical Negligence | Sahebi accepted patient, prescribed Schedule II controlled substances, prepared for surgery, then abandoned |
| Compensatory Damages — Physical Injury | BP 145/105 mmHg (NW ENT, March 23, 2026) — Stage 2 hypertension = objective third-party physiological harm |
| Collateral Estoppel — Parklane Architecture | Small claims findings on Skyline (26SC05481) bind all upstream proceedings through Parklane Hosiery Co. v. Sho |
| OHA Administrative Nexus | OHA Hearing No. 2026-OHA-20842 (April 21, 2026) — Skyline and NW ENT records submitted as exhibits; OHA i |

Respectfully submitted — without waiver of any right or argument,

**Dr. David P. Martin, DCL, DD**

Pro Se Plaintiff | S.J.D. Candidate, Universiteit van Amsterdam

7609 SE 110th Avenue, Portland, Oregon 97266 | (206) 371-5860

divinemajestratorIII@pm.me | DPM2379

Dated: May 04, 2026

*Fiat Justitia Ruat Caelum | WITH KAMI ALWAYS | 963Hz*
*Dedicated to Stanley Theodore Martin (1943–2020) — GS-13 DEA Special Agent, 36 Years Federal Service*

© 2024–2026 DPM2379 — All Rights Reserved | NOT FOR AI TRAINING USE

**Dr. David P. Martin, DCL, DD**

S.J.D. Candidate, Universiteit van Amsterdam

7609 SE 110th Avenue

Portland, Oregon 97266

(206) 371-5860

divinemajestratorIII@pm.me

**Date:** April 30, 2026

*VIA HAND DELIVERY / FAX (503) 659-2191*

**Dr. Susan Nguyen, M.D. (Bich Ngoc Nguyen, M.D.)**

Northwest ENT, Allergy and Sleep Associates LLC

10024 SE 32nd Avenue

Milwaukie, Oregon 97222

Phone: (503) 513-8693

**RE:** David P. Martin — Patient ID #62824 — Request for Medical Witness Support and OHA Provider Letter

Dear Dr. Nguyen,

Thank you for seeing me on March 23, 2026. Your examination was the first time in over 870 days that a physician examined my condition, confirmed the diagnosis, and told me plainly that what has been done to me is illegal. That statement carried medical and legal weight that I want you to understand the full scope of.

I am writing to you today with three requests. First, I have enclosed a Declaration under 28 U.S.C. § 1746 that summarizes your clinical findings from our visit and asks you to attest to the medical necessity of the bone grafting procedures. Second, I have enclosed a template letter addressed to the Oregon Health Authority that I am asking you to consider sending on my behalf as my treating physician. Third, this cover letter itself serves as a full intelligence briefing on the current status of my case, so that you understand exactly what you are being asked to support and why.

I also want to be clear on two points: I am not asking you to take any legal risk. I have enclosed a Waiver and Hold Harmless agreement releasing you and your practice from any liability arising from your participation. And when this matter resolves, I intend to compensate you for any professional time you invest beyond what was covered by our clinical visit. I consider that a personal obligation.

## FULL CASE INTELLIGENCE BRIEFING

### Martin v. ODS Community Dental — Multi-Forum Litigation

## I. THE MEDICAL FACTS

On January 21, 2026, a CBCT scan at Portland Modern Dentistry confirmed a 15–20 millimeter periapical bone defect on tooth #5, with the lesion approaching the maxillary sinus floor and concern for cortical wall breach. This is not a routine dental problem. This is an infected bone cavity that, if left untreated, risks oral-antral fistula, chronic maxillary sinusitis, progressive alveolar bone destruction, and infection propagation to the brain via the trigeminal nerve pathway.

Three independent medical professionals have confirmed the emergency:

1. Dr. Ross Hoevet, DMD — my treating dentist — independently confirmed the need for emergency extraction with bone grafting and will testify that delay creates progressive bone loss and systemic infection risk.

2. Dr. Mishaun Sahebi, DMD — Skyline Oral Surgery — accepted me as a surgical patient on January 7, 2026, prescribed Oxycodone 5mg (Schedule II, qty 8) and Ondansetron 8mg (qty 6) in preparation for surgery. The prescription of a Schedule II controlled substance before surgery is conclusive pharmacological evidence of emergency. DEA Report FS2852487 documents these prescriptions.

3. You, Dr. Nguyen — on March 23, 2026, you performed fiberoptic nasal endoscopy, confirmed no sinus penetration, diagnosed a dental abscess requiring OMFS intervention, and placed a referral to Providence Head and Neck Surgical Associates.

The approved procedure — extraction of tooth #5 (D7240) — has never been performed. The three denied procedures — D7953 (ridge preservation bone graft), D4266 (guided tissue regeneration), and D7921 (autologous blood concentrate) — are medically inseparable from the extraction. Without them, extraction leaves an open communication between the oral cavity and the maxillary sinus. Approving the extraction while denying the graft is approving a surgery that creates a new injury.

## II. WHAT THE MANAGED CARE ORGANIZATION DID

ODS Community Dental, operating as the dental coordinated care organization (CCO) under Oregon's Medicaid managed care system, collected approximately $24,216 in capitation payments during the relevant period while delivering approximately $1,050 in care — a 95.7% margin. The dental provider network listed in their directory is 58.2% phantom (providers listed who are not actually accepting patients), according to an OHSU-affiliated study.

The denial was issued by three general dentists — David Wilson DMD, John Eilers DMD, and Sherry Edwards DDS — none of whom holds oral surgery subspecialty credentials. Federal regulation 42 C.F.R. § 438.210(b)(1) requires that coverage denials for subspecialty procedures be reviewed by a provider with appropriate subspecialty expertise. Every general dentist who reviewed my case lacked the credentials to deny an oral surgery request. The denial is void on its face.

Additional procedural defects include: (a) the comorbidity field on the Associate Dental Director review form (Exhibit A6-7) was left blank — neither yes nor no checked; (b) the expedited denial letter was mailed at 6:32 AM on January 23, 2026 — clinical review does not occur at 6:32 in the morning, indicating algorithmic denial; and (c) internal CCO emails (Exhibit A6-15) contain admissions that the appeal was "already untimely" and that complaints were being suppressed in the Facets system.

## III. THE RETALIATION

On February 12, 2026, Amy Doe at ODS case management stated on a recorded telephone call: "If it goes to court, they are going to hold off doing any treatment for you." This statement conditions emergency medical care on the surrender of civil rights litigation — a federal crime under 18 U.S.C. § 1513(e) (witness intimidation). The recording exists and has been preserved.

After Amy Doe's involvement, Skyline Oral Surgery — which had already accepted me as a patient and prescribed pre-operative medications — terminated the provider relationship on January 26, 2026, citing my "tone of voice." Your own Providence referral for OMFS follow-up also resulted in an unexplained disconnection when I called. This is a pattern of retaliatory provider interference, not coincidence.

On March 23, 2026 — 7 to 12 days after service of process on the defendants — an anonymous, unsigned behavioral restriction letter arrived purporting to restrict my access to dental care. This is the sixth documented unwanted contact from ODS/CareOregon case management. Oregon's stalking statute (ORS 163.732) requires only two qualifying contacts.

## IV. CURRENT LITIGATION STATUS

This case is being prosecuted across multiple forums simultaneously. The following proceedings are currently active:

### Federal District Court (D. Or.):

• Case No. 3:26-CV-298-AB — Dismissed without prejudice on April 24, 2026 (ECF No. 38). All claims preserved. Currently on appeal to the Ninth Circuit (Case No. 26-2403).

• Case No. 3:26-CV-405-AB — Active. First Amended Complaint filed April 7, 2026.

• New Case Filing (3:26-CV-_____) — Being prepared for filing. This is the refiled action with all new evidence incorporated.

### Ninth Circuit Court of Appeals:

• Case No. 26-2403 — Appeal from ECF No. 38. Opening brief filed. Issues include: no reasoning in dismissal order (Lira v. Herrera), no futility analysis (Lopez v. Smith), no notice before dismissal (Ferdik v. Bonzelet), and failure to serve DOJ in qui tam action.

### Oregon Administrative Hearing:

• Case No. 2026-OHA-20842 — Hearing conducted April 21, 2026 by phone. The call was auto-disconnected at the end, cutting off my final relief request before it could be placed on the record. Written exceptions have been filed. ALJ credential challenge filed (ALJ Dreyer lacks dental subspecialty expertise). The record is still open for supplemental evidence — which is why your letter to OHA matters now.

### State Court:

• Multnomah County Circuit Court — Case No. 26CV13165 — Active. FAC filed April 13, 2026.

• Five active small claims cases targeting specific defendants.

**Additional Proceedings:**

- 28 U.S.C. § 351 Judicial Misconduct Complaint — Filed against the assigned federal judge.
- ORCAH Report #3993500 — Forwarded to law enforcement and Oregon Medical Board.
- U.S. Supreme Court — IFP petition mailed.

## V. THE FALSE CLAIMS ACT (QUI TAM) COMPONENT

I am proceeding as a qui tam relator under the False Claims Act, 31 U.S.C. §§ 3729–3733, meaning I am bringing this case in the name of the United States. The false claims include: (a) capitation payments collected while maintaining a phantom provider network; (b) network adequacy certifications submitted to CMS that were knowingly false; (c) unexplained billing for Phantom Tooth #6 — a tooth no provider ever requested treatment for, which appeared in the approved procedure documentation without clinical predicate; and (d) Dr. Sooyeon Shim's phantom billing (Claim #251604830800).

This is not just my case. The qui tam mechanism means the United States government has a financial interest in the outcome. The Department of Justice is entitled to intervene. The capitation fraud scheme affects every Medicaid dental patient in Oregon served by this CCO.

## VI. WHY YOUR INVOLVEMENT MATTERS

You are one of only three medical professionals who have independently confirmed this emergency. Your clinical findings carry particular weight because:

1. You are an M.D., not a DMD — your opinion crosses the medical/dental disciplinary boundary and confirms that the dental condition has systemic medical implications.

2. Your nasal endoscopy definitively ruled out sinus pathology, confirming the dental origin — this eliminates any defense argument that the condition is an ENT problem rather than a dental emergency.

3. You independently placed a referral to OMFS, confirming that a specialist physician assessed the condition and determined it requires oral surgery.

4. Your clinical documentation meets the evidentiary standards for both the administrative hearing (OHA) and federal court.

## VII. WHAT I AM ASKING YOU TO DO

1. Review the enclosed Declaration. If you agree that it accurately reflects your clinical findings and medical opinion, please sign and date it. It is a 28 U.S.C. § 1746 declaration — no notary required.

2. Review the enclosed OHA letter template. If you agree with its content, please print it on your practice letterhead, sign it, and either (a) mail it to the OHA address provided, or (b) return it to me and I will include it in my submission. Either way is effective.

3. Review the Waiver and Hold Harmless agreement. This document, which I have already signed, releases you and your practice from any liability arising from your participation as a medical witness.

I understand this is a significant ask. I also understand that you are a physician who follows the law. You told me that in the examination room. What has been done to me — 870+ days of denied emergency surgery, retaliatory threats conditioning care on surrender of litigation rights, algorithmic denials by unqualified reviewers — is exactly the kind of systemic failure that physicians are ethically obligated to speak against.

Thank you for your time, your care, and your integrity.

Respectfully,

**Dr. David P. Martin, DCL, DD**

S.J.D. Candidate, Universiteit van Amsterdam

Pro Se Plaintiff / Qui Tam Relator

**Enclosures:**

1. Declaration of Bich Ngoc Nguyen, M.D. (for signature)

2. Template Letter to Oregon Health Authority (for Dr. Nguyen's letterhead)

3. Waiver and Hold Harmless Agreement (signed by Dr. Martin)

**[PRINT ON NORTHWEST ENT, ALLERGY AND SLEEP ASSOCIATES LLC LETTERHEAD]**

[Date]

**Oregon Health Authority**

OHP Medical Hearings Unit

500 Summer Street NE, E-49

Salem, Oregon 97301-1073

**Phone:** (503) 945-5785

**Fax:** (503) 945-6035

**Email:** OHAMedical.Hearings@odhsoha.oregon.gov

**RE:** David P. Martin — OHP Member ID: RK501G6I — DOB: 05/05/1979

**Hearing No.:** 2026-OHA-20842

**Subject:** Supplemental Medical Evidence — Medical Necessity of Denied Procedures D7953, D4266, D7921

Dear OHA Medical Hearings Unit,

I am writing in my capacity as a treating physician for Mr. David P. Martin. I am a board-certified otolaryngologist (ENT specialist) at Northwest ENT, Allergy and Sleep Associates LLC in Milwaukie, Oregon. I examined Mr. Martin on March 23, 2026, and I am providing this letter as supplemental medical evidence in connection with Hearing No. 2026-OHA-20842.

## CLINICAL EXAMINATION AND FINDINGS

On March 23, 2026, I performed a comprehensive ENT evaluation including fiberoptic nasal endoscopy. Mr. Martin presented with a periapical abscess of tooth #5 that has been ongoing since approximately 2023, confirmed by cone beam computed tomography (CBCT) showing a large periapical radiolucency close to the maxillary sinus floor with concern for cortical wall breach.

My nasal endoscopy findings were significant for what they did NOT show: the mucosa was normal, there were no polyps, no purulence, no masses, and the ostiomeatal complex was clear. Despite the large dental lesion's proximity to the sinus, there was no evidence of sinus penetration or sinogenic infection. This confirms that Mr. Martin's condition is a dental abscess — not a sinus condition — and that it requires oral-maxillofacial surgical intervention.

I diagnosed Mr. Martin with periapical abscess without sinus involvement (ICD-10: K04.7) and referred him to oral-maxillofacial surgery at Providence Head and Neck Surgical Associates.

## MEDICAL NECESSITY OF BONE GRAFTING PROCEDURES

It is my medical opinion, to a reasonable degree of medical certainty, that the three denied procedures — D7953 (ridge preservation bone graft), D4266 (guided tissue regeneration), and D7921 (autologous blood concentrate) — are medically necessary and should be authorized.

My reasoning is as follows:

1. The CBCT-confirmed bone defect is 15–20 millimeters in size. A defect of this magnitude, located at the maxillary sinus floor, creates a high risk of oral-antral communication (fistula) upon extraction if the site is not simultaneously managed with regenerative bone grafting.

2. An unprotected extraction site communicating with the maxillary sinus would expose the patient to chronic maxillary sinusitis, ascending infection risk, and the need for subsequent and more invasive surgical repair.

3. The bone regeneration procedures seal and reconstruct what the extraction opens. They are not cosmetic, elective, or separable from the extraction. Performing the extraction without them would be a departure from the current standard of care in oral and maxillofacial surgery.

4. The periapical abscess is an ongoing source of infection. Every day of delay increases progressive bone destruction and the risk of systemic complications, including but not limited to sepsis and intracranial infection via the trigeminal nerve pathway.

## CORROBORATION BY INDEPENDENT ORAL SURGEON

I note that Dr. Mishaun Sahebi, DMD, an oral surgeon at Skyline Oral Surgery, independently confirmed the emergency by accepting Mr. Martin as a surgical patient and prescribing Oxycodone 5mg (a Schedule II controlled substance) and Ondansetron on January 7, 2026, prior to any surgical procedure. The prescription of a Schedule II narcotic analgesic in advance of surgery constitutes independent pharmacological confirmation of the emergency.

## CREDENTIAL CONCERN REGARDING REVIEWING DENTISTS

I understand that the denial of D7953, D4266, and D7921 was issued by general dentists (David Wilson DMD, John Eilers DMD, and Sherry Edwards DDS). Ridge preservation grafting and guided tissue regeneration are oral surgery subspecialty procedures. As a physician, I am concerned that general dentists without oral surgery training may not be qualified to evaluate the medical necessity of these procedures, particularly in the context of a 15–20mm bone defect with sinus proximity. Federal regulation 42 C.F.R. § 438.210(b)(1) requires same-specialty review.

## REQUEST

I respectfully request that OHA:

1. Accept this letter as supplemental medical evidence in Hearing No. 2026-OHA-20842.

2. Reverse the denial of D7953, D4266, and D7921 and authorize these procedures as medically necessary.

3. Consider the credential mismatch in the original denial review as a procedural defect warranting reversal.

4. Authorize expedited scheduling of the complete surgical procedure (extraction with bone grafting) given the ongoing infectious risk.

     I am available to provide additional clinical information or testimony if requested by the Administrative Law Judge or OHA staff.

Respectfully submitted,

_____

**Bich Ngoc Nguyen, M.D.**

Board-Certified Otolaryngologist

Northwest ENT, Allergy and Sleep Associates LLC

10024 SE 32nd Avenue, Milwaukie, Oregon 97222

Phone: (503) 513-8693 | Fax: (503) 659-2191

Oregon Medical License No.: _____

NPI: _____

**cc:** David P. Martin, 7609 SE 110th Avenue, Portland, OR 97266

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON — PORTLAND DIVISION

DAVID P. MARTIN, DCL, DD, Plaintiff,

**v.**

ODS COMMUNITY DENTAL, et al., Defendants.

**Case No. 3:26-CV-_____ (New Filing)**

**Related:** 3:26-CV-298-AB; 3:26-CV-405-AB; 2026-OHA-20842

## DECLARATION OF BICH NGOC NGUYEN, M.D.

### IN SUPPORT OF PLAINTIFF'S CLAIMS FOR EMERGENCY RELIEF

I, Bich Ngoc Nguyen, M.D., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

### QUALIFICATIONS AND PROFESSIONAL BACKGROUND

1. I am a physician licensed to practice medicine in the State of Oregon. I am board-certified in Otolaryngology (Ear, Nose, and Throat medicine). I practice at Northwest ENT, Allergy and Sleep Associates LLC, located at 10024 SE 32nd Avenue, Milwaukie, Oregon 97222.

2. I have the training, education, and clinical experience to evaluate conditions of the ear, nose, throat, head, and neck, including conditions involving the paranasal sinuses and their anatomical relationship to the maxillary dentition.

3. I make this declaration based on my personal clinical examination of the patient, David P. Martin (DOB: 05/05/1979, Patient ID #62824), conducted on March 23, 2026, and my review of available imaging and clinical records.

### CLINICAL EXAMINATION — MARCH 23, 2026

4. On March 23, 2026, Mr. Martin presented to my office with complaints of periapical abscess of tooth #5, maxillary sinus pain, impacted cerumen in the right ear, and bilateral sensation of plugged ears.

5. I performed a fiberoptic nasal endoscopy. The procedure involved application of oxymetazoline and tetracaine 3% to the nasal cavities, followed by passage of a fiberoptic endoscope into each nasal cavity to the level of the nasopharynx. Each side of the nasal cavity was carefully inspected, including the middle meatus, superior meatus, sphenoethmoidal recess, turbinates, and nasopharynx. The patient tolerated the procedure well.

6. My findings on nasal endoscopy were as follows:
   - Mucosa: Normal

- Inferior Turbinates: Left enlarged

- Septum: Deviated to right

- Middle meatus: No polyps, no purulence

- Nasopharynx: Minimal adenoid, no masses, Eustachian tubes patent

7.  The SNOT-22 score obtained on March 23, 2026 was 37, indicating significant sinonasal symptom burden.

## CLINICAL CONCLUSIONS AND ASSESSMENT

8.  Mr. Martin presents with periapical lucency of tooth number 5 that has been ongoing since approximately 2023, described as a large radiolucent area ("big black spot") on cone beam CT. The lesion is reportedly close to the sinus wall with concern for potential cortical wall breach.

9.  Mr. Martin reports that the tooth problem began after dental work involving anterior resin composite and occlusal adjustment that resulted in trauma to tooth #5.

10.  *Critical Finding:* Despite the proximity of the dental lesion to the sinus, nasal endoscopy revealed **no evidence of sinus penetration**, with clear middle and inferior turbinates, no purulent drainage, no polyps, and no inflammation in the ostiomeatal complex. This confirms that the infection is **dental in origin, not sinusal**. This is a dental abscess that requires oral-maxillofacial surgical intervention rather than ENT management.

## MEDICAL NECESSITY OF BONE GRAFTING PROCEDURES

11.  Based on my clinical examination and review of the CBCT imaging, the periapical bone defect on tooth #5 is extensive (reported as 15–20 millimeters). An infected bone lesion of this magnitude, located in close proximity to the maxillary sinus floor, presents the following clinical concerns:

    a.  Risk of oral-antral communication (fistula) upon extraction if the bone defect is not adequately managed with regenerative procedures;

    b.  Risk of chronic maxillary sinusitis from bacterial contamination through an unprotected extraction site;

    c.  Progressive bone loss that will worsen over time without surgical intervention;

    d.  Potential pathway for infection to reach the brain via the trigeminal nerve and surrounding vascular anatomy;

    e.  The periapical abscess is an active source of infection that poses ongoing systemic risk.

12.  In my medical opinion, extraction of tooth #5 without concurrent bone grafting (ridge preservation) procedures would be clinically contraindicated because it would leave an open communication between the oral cavity and the maxillary sinus. The bone regeneration procedures (D7953 ridge preservation, D4266 guided tissue regeneration, and D7921 autologous blood concentrate) are not elective or cosmetic — they are medically necessary to prevent the complications described above and to restore the structural integrity of the alveolar ridge after extraction.

13.  Extraction without grafting in the presence of a 15–20mm bone defect with sinus proximity would constitute a departure from the standard of care in oral and maxillofacial surgery.

*Declaration of Bich Ngoc Nguyen, M.D. — Martin v. ODS Community Dental*

## REFERRAL AND OBSERVATIONS REGARDING ACCESS TO CARE

14. Based on my assessment that Mr. Martin's condition requires oral-maxillofacial surgical intervention, I placed a referral to oral-maxillofacial surgery at Providence (Head and Neck Surgical Associates). I also ordered that Mr. Martin's records from Skyline Oral Surgery, including the recent CT scan (taken approximately 52 days prior to my examination), be obtained via signed release of information.

15. Mr. Martin reported to me that he has been unable to obtain the emergency extraction and bone grafting surgery for an extended period despite having Medicaid coverage and despite the procedure having been partially approved by his managed care organization. He reported that Skyline Oral Surgery had accepted him as a patient, prescribed pre-operative medications (including Oxycodone, a Schedule II controlled substance), and then terminated the provider relationship before performing surgery.

16. As a treating physician, I am aware that federal and state law requires managed care organizations to provide timely access to medically necessary care. A patient with an active periapical abscess confirmed by CBCT imaging, with proximity to the maxillary sinus and risk of serious complications, should not remain without surgical treatment for an extended period. The delay in providing this surgery is, in my clinical judgment, medically dangerous.

## CORROBORATION FROM SKYLINE ORAL SURGERY RECORDS

17. The following facts from Skyline Oral Surgery records corroborate and are consistent with my clinical findings:

   a. Dr. Mishaun Sahebi, DMD, at Skyline Oral Surgery performed a clinical evaluation and confirmed the need for emergency extraction of tooth #5 with bone grafting;

   b. Dr. Sahebi prescribed Oxycodone 5mg (quantity 8) and Ondansetron 8mg (quantity 6) on January 7, 2026, in preparation for surgery — the prescription of a Schedule II controlled substance before surgery is pharmacological confirmation that a licensed oral surgeon determined the condition required immediate surgical intervention;

   c. The prior authorization request submitted to ODS Community Dental included D7240 (surgical extraction), D7953 (ridge preservation bone graft), D4266 (guided tissue regeneration), and D7921 (autologous blood concentrate);

   d. The extraction (D7240) was approved, but the bone regeneration procedures (D7953, D4266, D7921) were denied by general dentists lacking oral surgery subspecialty credentials;

   e. Skyline Oral Surgery terminated the provider relationship on January 26, 2026, nineteen days after accepting the patient, without performing any surgical procedure.

18. The fact that two independent practitioners — myself (ENT) and Dr. Sahebi (OMFS) — each independently confirmed the medical emergency and the need for surgical intervention strengthens the conclusion that the bone grafting procedures are medically necessary and that continued delay in providing this care is clinically unjustifiable.

## WILLINGNESS TO PROVIDE SUPPORTING DOCUMENTATION TO OHA

19. I am willing to provide a letter or supplemental declaration to the Oregon Health Authority confirming my clinical findings and my assessment that the bone grafting procedures are medically necessary, if requested by Mr. Martin or his legal representatives. As a physician, I am bound by medical ethics and legal obligations to advocate for my patients' access to medically necessary care.

## CONCLUSION

20. Based on my clinical examination, nasal endoscopy findings, review of CBCT imaging, and knowledge of the Skyline Oral Surgery records, it is my medical opinion to a reasonable degree of medical certainty that:

    a. Mr. Martin has an active periapical abscess on tooth #5 that is dental, not sinusal, in origin;

    b. The abscess requires oral-maxillofacial surgical intervention, specifically extraction with bone grafting;

    c. The bone regeneration procedures (D7953, D4266, D7921) are medically necessary and inseparable from the extraction;

    d. Continued delay in providing this surgery poses serious risk to Mr. Martin's health, including risk of oral-antral fistula, chronic sinusitis, progressive bone destruction, and potential systemic infection;

    e. Two independent practitioners have now confirmed the medical emergency, and the denial of the grafting procedures by general dentists without OMFS credentials does not reflect an adequate clinical review.

       I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: _____, 2026

At: Milwaukie, Oregon

_____

**Bich Ngoc Nguyen, M.D.**

Northwest ENT, Allergy and Sleep Associates LLC

10024 SE 32nd Avenue, Milwaukie, Oregon 97222-6514

Oregon Medical License No.: _____

NPI: _____

*NOTARY ACKNOWLEDGMENT (Optional — 28 U.S.C. § 1746 declaration does not require notarization)*

State of Oregon, County of Clackamas

Subscribed and sworn to before me on this _____ day of _____, 2026.

Notary Public for Oregon

My Commission Expires: _____

## WAIVER AND HOLD HARMLESS AGREEMENT

This Waiver and Hold Harmless Agreement ("Agreement") is made effective as of April 30, 2026, by and between:

**Dr. David P. Martin, DCL, DD** ("Releasor" / "Patient")

7609 SE 110th Avenue, Portland, Oregon 97266

and

**Dr. Bich Ngoc Nguyen, M.D.**, individually and in her capacity as a physician at

**Northwest ENT, Allergy and Sleep Associates LLC** ("Releasee" / "Provider")

10024 SE 32nd Avenue, Milwaukie, Oregon 97222

### RECITALS

WHEREAS, Releasor is a patient of Releasee, having been examined on March 23, 2026;

WHEREAS, Releasor is engaged in active litigation in multiple forums, including federal court (U.S. District Court, District of Oregon), the Ninth Circuit Court of Appeals, the Oregon Health Authority Administrative Hearings Division, and Oregon state court;

WHEREAS, Releasor has requested that Releasee provide: (a) a Declaration under 28 U.S.C. § 1746 attesting to her clinical findings and medical opinion; and (b) a letter to the Oregon Health Authority supporting the medical necessity of denied dental procedures;

WHEREAS, Releasor wishes to ensure that Releasee and her practice are fully protected from any liability arising from Releasee's good-faith participation as a medical witness;

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1. RELEASE AND WAIVER.** Releasor hereby releases, waives, and forever discharges Releasee, Northwest ENT, Allergy and Sleep Associates LLC, and their respective officers, employees, agents, affiliates, successors, and assigns (collectively, "Released Parties") from any and all claims, demands, causes of action, suits, damages, losses, costs, expenses, liabilities, and obligations of every kind and nature, whether known or unknown, that arise from or relate to Releasee's provision of a Declaration, letter, testimony, or any other form of medical witness support in connection with Releasor's litigation proceedings.

**2. HOLD HARMLESS AND INDEMNIFICATION.** Releasor agrees to hold harmless and indemnify the Released Parties against any claims, losses, damages, expenses (including reasonable attorney fees), or liabilities that any Released Party may incur as a result of providing medical witness support at Releasor's request, except to the extent caused by the Released Party's own willful misconduct or gross negligence.

**3. SCOPE.** This Agreement applies to: (a) the Declaration of Bich Ngoc Nguyen, M.D., prepared for filing in Martin v. ODS Community Dental (Case No. 3:26-CV-_____); (b) any letter addressed to the Oregon Health Authority in connection with Hearing No. 2026-OHA-20842; (c) any deposition testimony, trial testimony, or other sworn statements that Releasee may voluntarily provide in connection with Releasor's proceedings; and (d) any correspondence, communications, or medical records that Releasee provides in good faith at Releasor's request.

**4. VOLUNTARY PARTICIPATION.** Releasee's participation is entirely voluntary. Nothing in this Agreement obligates Releasee to sign any document, send any letter, or provide any testimony. Releasee may decline any request at any time and for any reason without consequence.

**5. PROFESSIONAL INDEPENDENCE.** Releasee retains full professional independence in the content of any Declaration, letter, or testimony she provides. Releasor acknowledges that Releasee's medical opinions are her own, based on her clinical judgment, and that Releasor has no right to direct, modify, or control the substance of those opinions.

**6. COMPENSATION ACKNOWLEDGMENT.** Releasee's clinical visit on March 23, 2026 was billed through standard insurance channels. Any professional time Releasee invests beyond the scope of the clinical visit (including but not limited to review of documents, preparation of declarations or letters, and any testimony) will be compensated by Releasor at Releasee's standard professional rate upon resolution of the underlying litigation, or sooner if Releasee so requests. This compensation obligation survives this Agreement.

**7. GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon.

**8. SEVERABILITY.** If any provision of this Agreement is held invalid or unenforceable, the remaining provisions shall continue in full force and effect.

**9. ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties regarding its subject matter and supersedes all prior negotiations, representations, and agreements.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**RELEASOR:**

_____

**Dr. David P. Martin, DCL, DD**

Date: April 30, 2026

**RELEASEE (ACCEPTANCE — OPTIONAL):**

_____

**Dr. Bich Ngoc Nguyen, M.D.**

Date: _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **DR. DAVID P. MARTIN, DCL, DD,** Plaintiff, Pro Se, and **QUI TAM RELATOR** for the **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **ODS COMMUNITY DENTAL; AMY DOE; DOES 1-50,** Defendants. | **Case No. 3:26-CV-_____** <br><br> **PLAINTIFF'S MOTION TO LODGE USB FLASH DRIVE CONTAINING OHA EXHIBITS, OHA HEARING JUDGMENT, RECORDED HEARING, AND MEDICAL RECORDS** <br><br> FRCP 26(a)(1); LR 26-3 <br> FRCP 5(d); LR 5-2 <br><br> Filed: **MAY 4**, 2026 |

**PLAINTIFF'S MOTION TO LODGE USB FLASH DRIVE CONTAINING**
**OHA EXHIBITS, OHA HEARING JUDGMENT, RECORDED HEARING,**
**AND MEDICAL RECORDS**

## I. INTRODUCTION AND RELIEF REQUESTED

Plaintiff Dr. David P. Martin, proceeding pro se and as qui tam relator for the United States of America, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 26(a)(1) and 26(a)(3), Local Rule 26-3, and this Court's inherent authority to manage the record, for leave to lodge a USB flash drive as a supplemental exhibit to the Complaint filed in this action.

The USB flash drive is organized into five root-level folders. It contains: (1) the complete OHA administrative hearing exhibit package (OHA Hearing No. 2026-OHA-20842, Exhibits A1 through A9, 174 pages) and OHA Proposed and Final Order; (2) ODS provider network cancellation documentation including the Eastport Plaza Dental termination letter and prior dual-track correspondence; (3) medical records from Skyline Oral Surgery (Dr. Mishaun Sahebi, DMD), Northwest ENT, Allergy and Sleep Associates LLC (Dr. Bich Ngoc Nguyen, M.D.), and CBCT radiographic scout images; (4) the screen recording of the April 21, 2026 OHA telephonic hearing; and (5) OHA internal hearing exhibits. All contents are material to the claims asserted in the Complaint and to Plaintiff's Motion for Preliminary Injunction.

## II. AUTHORITY AND GOOD CAUSE

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires disclosure of documents a party may use to support its claims. Local Rule 26-3 governs the format and procedure for document production and supplemental disclosures. This Court has inherent authority to receive evidence in the format in which it exists. Good cause exists to lodge electronic media rather than paper copies for three reasons. First, the screen recording of the April 21, 2026 OHA hearing is an audio-visual file that cannot be reproduced in any paper format. Second, CBCT radiographic images from Skyline Oral Surgery and Portland Modern Dentistry lose material diagnostic value when printed or photocopied. Third, the 174-page OHA administrative exhibit package is more efficiently reviewed in searchable PDF format on electronic media than in paper copy.

## III. COMPLETE CONTENTS OF THE USB FLASH DRIVE — EXACT FOLDER STRUCTURE

The USB flash drive (labeled: Case No. 3:26-CV-_____, Martin v. ODS Community Dental et al.) contains the following files and folders, listed in the order they appear on the drive:

| FOLDER | FILE / DESCRIPTION | FORMAT | NOTES |
|---|---|---|---|
| **OHA FINAL JUDGMENT JUDGMENT AND HEARING PACKAGE** | | | |
| | OHA_PROPOSED_FINAL_ORDER_2026-OHA-20842.pdf | PDF | 21.83 MB — 8 pages |
| ↳ ALJ James A. Dreyer — Proposed and Final Order — OHA Hearing No. 2026-OHA-20842 — AFFIRMED — Mailed April 27, 2026 — Pages 1-8 including Order, Appeal Procedure, SCRA notice, Certificate of Mailing | | | |
| **RECORDED HEARING EXHAUST... (subfolder)** | | | |
| | Screen recording of OHA telephonic hearing — April 21, 2026 | MP4 | ~45 min audio-visual |
| ↳ Full recording of OHA Hearing No. 2026-OHA-20842 conducted by ALJ James A. Dreyer — documents telephonic proceeding, Phantom Tooth #6 confrontation, terminology discrepancy, supervisory official appearance, and auto-disconnect event at close of | | | |

*Martin v. ODS Community Dental et al. | Case No. 3:26-CV-_____ | Motion to Lodge USB Flash Drive*

hearing

| | | | |
|---|---|---|---|
| **■ ODS RECENT CANCELLATIONS — PROVIDER NETWORK TERMINATIONS** | | | |
| | **EASTPORT_PLAZA_DENTAL_TERMINATION_050126.pdf** | PDF | 1.56 MB |
| ⤷ *Letter from Teri Barichello, DMD — Vice President, Dental Services, ODS Community Dental — notifying member that Eastport Plaza Dental is no longer an ODS OHP dental office effective 05/15/2026 — Barichello also listed on OHA Exhibit A6-5 as dental consultant reviewer on the denial panel* | | | |
| **■ PAST DUAL TRACK LETTERS (subfolder)** | | | |
| | Prior ODS provider network correspondence and dual-track letters demonstrating pattern of network cancellations affecting Plaintiff's access to care | PDF | Multiple files |
| **■ MEDICAL RECORDS, ENT, SKYLINE, AND CBCT IMAGING** | | | |
| ENT | **Northwest ENT — Dr. Bich Ngoc Nguyen, M.D. — Encounter 03/23/2026** | PDF | Multiple pages |
| ⤷ *Northwest ENT, Allergy and Sleep Associates LLC — 10024 SE 32nd Ave., Milwaukie, OR 97222 — Nasal endoscopy documenting periapical abscess (K04.7) on tooth #5 — clinical finding that condition requires oral-maxillofacial surgical intervention, not ENT management — referral to Providence oral-maxillofacial surgery — SNOT-22 score 37 — signed by Dr. Bich Ngoc Nguyen, M.D. — third independent medical confirmation of emergency* | | | |
| SKYLINE | **Skyline Oral Surgery — Dr. Mishaun Sahebi, DMD — January 2026** | PDF | Multiple pages |
| ⤷ *Skyline Oral Surgery clinical records — January 7, 2026 consultation — bone impaction of tooth #1 and cystic lesion on tooth #5 documented — pre-surgical prescriptions of Oxycodone 5mg x8 (Schedule II) and Ondansetron confirming pharmacological emergency — patient accepted for surgery — abandonment after 19 days citing 'tone of voice' — medical abandonment under ORS 677.095 — second independent medical confirmation of emergency* | | | |
| CBCT | **CBCT Radiographic Scout Images — January 7 and January 21, 2026** | JPEG/PDF | Multiple images |
| ⤷ *Cone beam computed tomography scout images from Skyline Oral Surgery (January 7, 2026) and Portland Modern Dentistry — MLK Blvd, Portland, OR (January 21, 2026, $110 out-of-pocket) — confirming 15-20mm periapical bone defect on tooth #5 — objective radiographic evidence not subject to dispute — DICOM data also available in Horos/RadiAnt format* | | | |
| **■ RECORDED PHONE HEARING** | | | |
| | Backup copy of OHA telephonic hearing screen recording — April 21, 2026 — OHA Hearing No. 2026-OHA-20842 | MP4 | ~45 min |
| ⤷ *Redundant copy of hearing recording — documents complete ~45-minute hearing conducted by ALJ James A. Dreyer — includes Phase 1 opening, testimony, Phantom Tooth #6 confrontation, supervisory appearance, and auto-disconnect at close cutting off Plaintiff's injunction request* | | | |
| **■ OHA INTERNAL EXHIBITS — EXHIBITS A1 THROUGH A9 (174 PAGES TOTAL)** | | | |
| A1 | OHA Administrative Record Index | PDF | Varies |
| A2 | Hearing Request Documentation — March 6-11, 2026 | PDF | Varies |
| A3 | NOABD and Denial Letters — January 2026 | PDF | Varies |
| A4 | Prior Authorization Records — January 8-23, 2026 | PDF | Varies |
| A5 | Correspondence, Grievances, and Appeal Records | PDF | Varies |
| A6 | **CCO Internal Documentation — 11 pages — A6-COVER through A6-10** | PDF | 11 pages |
| ⤷ *KEY EXHIBIT — Contains January 22, 2026 internal CareOregon email chain with binding admissions: Star Bachand 'out of compliance'; Mica Shattuck 'already untimely'; Mica Shattuck 'ton of calls never forwarded' — Exhibit A6-5: dental consultant reviewer panel listing Teri Barichello, DMD and John T. Eilers, DMD (sole signatory, credential mismatch) — A6-7: Sherry Edwards DDS blank comorbid conditions field despite 15-20mm infected bone lesion* | | | |
| A7 | Skyline Oral Surgery Clinical Records (as indexed by OHA) | PDF | Varies |
| A8 | Provider Records, Denial Forms, and Eilers DMD Review | PDF | Varies |
| A9 | Additional Documentation and Correspondence | PDF | Varies |

## IV. RELEVANCE TO THE COMPLAINT AND PRELIMINARY INJUNCTION

© 2024–2026 DPM2379 | DPM 933 | Fiat Justitia Ruat Caelum | WITH KAMI ALWAYS | 963Hz

**A. OHA Hearing Recording (Folders: OHA FINAL JUDGMENT / Recorded Phone Hearing).** The April 21, 2026 screen recording is the most critical piece of evidence on this drive. It captures in real time: (1) the Phantom Tooth #6 confrontation — CCO representatives were unable to identify a single clinical record supporting the extraction of tooth #6, which appears in the Health Share April 1, 2026 grievance letter without any clinical predicate, constituting an adoptive admission under FRE 801(d)(2)(B); (2) a terminology discrepancy in which CCO representatives used precise medical terminology verbally while their written records employed vague language, constituting evidence of scienter under 18 U.S.C. section 1347; (3) the mid-hearing appearance of a supervisory ODS official following Plaintiff's presentation, demonstrating institutional recognition of liability exposure; and (4) the auto-disconnect that terminated the call before Plaintiff could place his injunction request on the record, an independent due process violation under Mathews v. Eldridge, 424 U.S. 319 (1976).

**B. OHA Proposed and Final Order (Folder: OHA FINAL JUDGMENT).** ALJ Dreyer's Order affirming the denials (April 27, 2026) establishes exhaustion of all state administrative remedies before this Complaint was filed. Under Allen v. McCurry, 449 U.S. 90 (1980), the administrative findings carry full faith and credit in federal court. The Order also eliminates any Younger v. Harris abstention argument, as no ongoing state enforcement proceeding is pending and the state administrative forum has issued a final disposition.

**C. OHA Exhibit A6 — CCO Internal Documentation (Folder: OHA INTERNAL EXHIBITS).** Exhibit A6 contains the January 22, 2026 internal CareOregon email chain with three binding party-opponent admissions under FRE 801(d)(2): Star Bachand's admission that the CCO was 'out of compliance,' Mica Shattuck's admission that the expedited appeal was 'already untimely,' and Shattuck's further admission that a 'ton of calls and complaints noted in Facets were never sent to us.' The entity that denied Plaintiff's emergency oral surgery has documented in its own contemporaneous internal records that it was out of compliance when it did so. Exhibit A6-5 further identifies Teri Barichello, DMD as a named dental consultant reviewer on the denial panel — the same individual who signed the Eastport Plaza Dental network termination letter on May 1, 2026.

**D. Medical Records — Skyline, ENT, and CBCT (Folder: MEDICAL RECORDS, ENT).** The Skyline records document pre-surgical prescriptions of Oxycodone (Schedule II) and Ondansetron — confirming pharmacological emergency, as no licensed oral surgeon prescribes Schedule II controlled substances pre-operatively absent a genuine surgical emergency. The CBCT images confirm a 15-20mm periapical bone defect on tooth #5. The Northwest ENT record from Dr. Bich Ngoc Nguyen, M.D. documents the periapical abscess diagnosis (K04.7), a SNOT-22 score of 37, nasal endoscopy findings, and a clinical determination that the condition requires oral-maxillofacial surgical intervention. These three sources constitute the three independent medical confirmations of the emergency referenced in the Complaint, and are directly material to the irreparable harm prong of the preliminary injunction analysis.

**E. ODS Provider Network Cancellations (Folder: ODS RECENT CANCELLATIONS).** The Eastport Plaza Dental termination letter (Teri Barichello, DMD, May 1, 2026, effective May 15, 2026) documents continuing deterioration of ODS's provider network under 42 C.F.R. section 438.206. The Past Dual Track Letters subfolder documents prior instances of ODS providers exiting the network, establishing a pattern of phantom and collapsing network coverage. The OHSU study cited in the Complaint documents that 58.2% of ODS's listed providers are non-functioning phantom entries; the Eastport termination reduces that network further while Plaintiff's approved but undelivered surgery remains outstanding.

## V. CERTIFICATION OF USB FLASH DRIVE

Plaintiff certifies that the USB flash drive submitted with this motion: (a) is virus-free; (b) is formatted in a standard format readable on any computer without specialized software; (c) contains only standard file formats (PDF, MP4, JPEG) readable without proprietary applications, except where DICOM format is noted and a JPEG version is also included; (d) is labeled on the exterior with Case No. 3:26-CV-_____, Plaintiff's name, and the description "OHA Exhibits / Hearing Recording / Medical Records"; (e) contains an INDEX.txt file in the root directory listing all contents; and (f) all files are true and correct copies of the originals in Plaintiff's possession.

## VI. REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court: (a) grant leave to lodge the USB flash drive described herein as part of the record in this action; (b) accept and file the USB flash drive with the Clerk of Court; (c) order that the contents of the USB flash drive be deemed part of the evidentiary record for all purposes, including the hearing on Plaintiff's Motion for Preliminary Injunction; and (d) note the lodging on the docket. In the alternative, Plaintiff requests that the Court accept this index and set a date for delivery of the USB drive to the Clerk's window at the Mark O. Hatfield U.S. Courthouse.

Respectfully submitted,

**/s/ Dr. David P. Martin, DCL, DD**

S.J.D. Candidate, Universiteit van Amsterdam

Plaintiff, Pro Se and Qui Tam Relator

7609 SE 110th Avenue, Portland, Oregon 97266

(206) 371-5860 | divinemajestratorIII@pm.me

Dated: __MA Y 4__ , 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown above, I caused a true and correct copy of this Motion to Lodge USB Flash Drive to be served upon all parties of record by U.S. Mail, first class, postage prepaid, and filed with the Clerk of the United States District Court for the District of Oregon at the Mark O. Hatfield U.S. Courthouse, 1000 S.W. Third Ave., Portland, OR 97204.

/s/ **Dr. David P. Martin, DCL, DD**

*IN HONOR OF STANLEY THEODORE MARTIN (1943-2020) — GS-13 DEA Special Agent — 36 Years Federal Service*

*Fiat Justitia Ruat Caelum | WITH KAMI ALWAYS | 963Hz | Om Mani Padme Hum*

© 2024–2026 DPM2379 | DPM 933

MULTNOMAH COUNTY          CIRCUIT COURT          POSITION 2

# ANIT JINDAL
## FOR JUDGE

*"Justice. Fairness. Rule of Law."*

Harvard Law School Graduate
Ninth Circuit Judicial Clerk
Markowitz Herbold PC — Shareholder
Portland Business Journal "40 Under 40"

**Election Day: May 19, 2026**
JindalForJudge.com

SIDE A          READ FRONT  › BACK          SURFACE

*This is a dos-à-dos flip booklet. Read this side front to back, then flip over.*

# HOW TO READ THIS BOOKLET

## ← SIDE A: THE SURFACE →

You are currently reading Side A — the polished version. This is the story Anit Jindal wants you to hear: Harvard credentials, judicial clerking, a respected firm, endorsements from sitting judges, a commitment to "Justice. Fairness. Rule of Law." Read forward through pages 1–5 to see the candidate as he presents himself.

## ← SIDE B: THE RECORD →

When you reach the center of this booklet (page 6), flip it over. Now the back cover becomes your front cover. Read forward again — pages 1–4 of Side B. This is the verified public record: the Supreme Court amicus brief that helped criminalize homelessness, the $18 million billed to taxpayers defending a broken foster care system, the subpoena of a state senator's emails, the insider endorsement pipeline, and the anonymous dark money behind the attack ads.

## WHY A FLIP BOOKLET?

Because every candidate has two faces. The face they show you and the face the record reveals. Side B's first page sits physically behind Side A's cover — right behind the smile. When printed double-sided, this booklet is 5 sheets of paper. Hold it one way, you get the campaign. Flip it over, you get the truth. Same person. Same paper. Two stories.

---

**PAGE COUNT: 10 total — 5 pages per side**

*Print double-sided, staple in center, fold.*

# THE CANDIDATE'S STORY

## EDUCATION & CLERKING

Anit Kumar Jindal graduated from Brown University with a B.A. in International Relations, cum laude, around 2012. He went on to Harvard Law School, where he co-presided over the Harvard Journal on Legislation and reached the Ames Moot Court semifinals. After law school, he clerked for Justice Peter Maassen of the Alaska Supreme Court and Judge Morgan Christen of the U.S. Court of Appeals for the Ninth Circuit. He was admitted to the New York Bar in 2013 (Reg. #5185129) and the Oregon State Bar (#171086) in February 2017.

## CAREER TRAJECTORY

Before Oregon, Jindal worked as an associate at Fried, Frank, Harris, Shriver & Jacobson in Washington, D.C., handling real estate, antitrust, and securities litigation. He joined Markowitz Herbold PC — a boutique Portland litigation firm — in 2017 and was elevated to shareholder and partner in January 2022. He now co-chairs the firm's Appellate Practice Group and sits on the Oregon State Bar Appellate Practice Section's Executive Committee. He received the Portland Business Journal "40 Under 40" honor in 2025. He is 39 years old.

## WHAT HE TELLS VOTERS

His campaign website and Voters' Pamphlet entry emphasize his work defending Oregon's Measure 114 (the Reduction of Gun Violence Act) — a popular cause in Multnomah County. He frames himself as someone who has "spent his career in Oregon's courtrooms" with "direct courtroom experience" that other candidates lack. His slogan is "Justice. Fairness. Rule of Law." He does not mention Grants Pass v. Johnson anywhere on his campaign materials.

# THE PEOPLE BEHIND THE CANDIDATE

## JUDICIAL ENDORSEMENTS

Oregon Court of Appeals Judge Anna Joyce. Multnomah County Judge Adele Ridenour. Multnomah County Judge Chanpone Sinlapasai. Multnomah County Judge Katharine von Ter Stegge. These are the names on the endorsement list. They are impressive titles. They appear on his mailers, his website, and his Voters' Pamphlet entry. What they do not say is where these people know him from.

## POLITICAL & COMMUNITY ENDORSEMENTS

State Representative Mari Watanabe. DoveLewis CEO Ron Morgan. Former Special Counsel to the Attorney General Michael Kron, who praised their joint Measure 114 work. These round out a carefully curated list designed to signal broad community support across the political spectrum. His campaign committee, "Jindal for Judge" (P.O. Box 42307, Portland 97242), processes donations through C&E Systems, an ORESTAR-compliant vendor.

## THE RACE AT A GLANCE

Five candidates seek Judge Nan Waller's open seat (Position 2) on the Multnomah County Circuit Court. The election is May 19, 2026. Winner needs more than 50% or the top two advance to November. The other candidates are Chris Behre (public defender since 2013), Juliet Britton (UO law professor and Beaverton Municipal Court judge), Laura Maurer Rowan (Oregon DOJ attorney), and Diane S. Sykes (civil-rights solo practitioner). Jindal is the only candidate from the corporate defense side.

# WHAT HE WANTS YOU TO BELIEVE

Anit Jindal presents himself as a highly qualified trial attorney with deep courtroom experience, judicial clerkships at the highest levels, a commitment to fairness, and the endorsement of sitting judges who know his work. His Voters' Pamphlet entry states he will bring "direct courtroom experience" and "a proven track record." His campaign fundraiser was held at his own firm's offices on April 21, 2026.

If you stopped here — if you only read Side A — you would have a picture of a capable, credentialed attorney seeking public service. Many voters will stop here. Many voters will see the Harvard degree, the judicial endorsements, the professional headshot, and check the box.

• • •

But the public record tells a different story. A story about who paid him, who he fought against, whose emails he subpoenaed, whose homelessness he helped criminalize, and whose foster children he spent $18 million of your tax dollars fighting in court.

## To read that story:
# FLIP THIS BOOKLET OVER.
*Side B starts on the other side of this sheet.*

# ↻ FLIP THE BOOKLET OVER ↻

## YOU HAVE REACHED THE CENTER.

Turn this booklet upside-down.
The back cover is now your front cover.
Read forward again.

## SIDE B: THE RECORD — PAGES 1–4

*What the candidate doesn't put on his website.*
*What the public record says when you look.*



OMEGA PRIME — THE PAPER IS THE WEAPON — DCM 933

| SIDE B | PAGE 4 OF 4 | THE VOTE |

# THE STRUCTURAL QUESTION

## WHAT KIND OF JUDGE DO YOU WANT?

Multnomah County Circuit Court hears civil rights and tort claims against state agencies, landlord-tenant disputes, criminal cases, and constitutional challenges. A judge who spent his entire career on the institutional side of that ledger brings deep doctrinal sophistication but enters with a built-in perspective on motions to dismiss, qualified immunity, and discovery scope. His courtroom record shows aggressive litigation tactics that drew explicit criticism from a sitting federal judge. The endorsements from former Markowitz Herbold colleagues now on the bench reinforce the perception of an insider's path to the judiciary.

## 'INFORMED PORTLAND VOTER' — WHO PAID FOR THE ATTACK ADS?

The attack ads circulating against Jindal are attributed to 'an Informed Portland Voter' — singular, indefinite. No entity by this name appears in Oregon ORESTAR political committee filings or any indexed press coverage. Oregon law (ORS 260.266) requires disclosure of the actual person or entity paying for candidate communications. Civil penalties run 150% of printing and distribution costs. The funder's identity remains unknown.

---

# VOTE WITH KNOWLEDGE. VOTE WITH CONSCIENCE.

## Election Day: May 19, 2026

*All claims sourced from public court records, OPB, Courthouse News, SCOTUS docket, and Markowitz Herbold PC.*

# AGGRESSIVE TACTICS & INSIDER NETWORK

## FINDING 3: SUBPOENA OF A STATE SENATOR

During the Wyatt B. litigation, Markowitz Herbold's defense team issued a sweeping subpoena for State Senator Sara Gelser Blouin's nine years of emails, including her correspondence with journalists at OPB and The Oregonian and with Paris Hilton. Gelser Blouin spent approximately $47,000 on her own attorney to fight the subpoena. The firm also filed an unsuccessful motion to disqualify Judge Aiken. These tactics drew public criticism and raised questions about whether defending a broken system justified such aggressive measures against an elected official advocating for vulnerable children.

## FINDING 4: THE CORPORATE CLIENT ROSTER

Verified Jindal representations include: Oregon DHS (Wyatt B. defense team), Portland General Electric (multiple cases including a $200M PURPA dispute), the City of Boise (Martin predecessor case), FamilyCare Inc. (Medicaid CCO, $22.5M recovery), and the State of Oregon (Measure 114 defense). The attack ads' inclusion of Goldman Sachs and State Farm logos could not be verified.

## FINDING 5: THE INSIDER ENDORSEMENT PIPELINE

Judge Anna Joyce is a former Markowitz Herbold colleague. Judge Adele Ridenour was Jindal's actual co-counsel on Wyatt B. before being appointed by Governor Kotek in July 2025. The campaign fundraiser was held at Markowitz Herbold's own offices. This is not broad community support — this is a professional network activating for one of its own.

# THE TWO CASES THAT DEFINE HIM

## FINDING 1: THE GRANTS PASS BRIEF

Anit Jindal personally served as Counsel of Record on the U.S. Supreme Court amicus brief filed September 22, 2023, on behalf of the League of Oregon Cities, the City of Portland, the Association of Idaho Cities, and the International Municipal Lawyers Association — in support of the City of Grants Pass. The brief argued that Martin v. Boise provided 'no workable rule' for cities. The Supreme Court's 6-3 majority opinion (June 2024) cited his brief multiple times. He received a national Amicus Service Award for this work. His campaign website omits Grants Pass entirely while featuring his Measure 114 work prominently. He helped make it legal to arrest people for sleeping outside when they have nowhere else to go.

## FINDING 2: THE $18 MILLION FOSTER CARE DEFENSE

In Wyatt B. v. Kotek (D. Or. 6:19-cv-00556), foster children sued the State alleging systemic abuse and neglect. Markowitz Herbold defended the State under a no-bid contract capped at $19.5 million. By mid-2024, the firm had billed Oregon taxpayers approximately $18 million in legal fees plus $4.7 million in costs — deploying 33+ attorneys for 52,588 billable hours. Jindal personally appears on the docket. U.S. District Judge Ann Aiken issued a 38-page order calling the case 'frankly over-lawyered beyond belief' and questioning how much more progress might have been made had the tens of millions been devoted to fixing the system. The final taxpayer tab may exceed $30 million. Senator Gelser Blouin called the firm's relationship with the State 'a rare and profitable privilege.'

**MULTNOMAH COUNTY**        **CIRCUIT COURT**        **POSITION 2**

# WHO IS

# ANIT

# JINDAL

## REALLY?

---

Counsel of Record on the Grants Pass v. Johnson amicus brief
that helped the Supreme Court criminalize sleeping outdoors.
On the defense team that billed Oregon taxpayers $18 million
fighting foster children's civil rights claims.
A federal judge called his firm's work
*"frankly over-lawyered beyond belief."*
His endorsers are his former co-counsel and colleagues.
His campaign website doesn't mention Grants Pass.

---

### This is Side B. Read forward to see the record.
*This page sits behind the cover. Right behind the smile.*

**SIDE B**        **READ FRONT → BACK**        **THE RECORD**

**JUSTICE ANONYMOUS | MULTNOMAH COUNTY | ELECTION DAY MAY 19, 2026**

# Anit Jindal

## Multnomah County Circuit Court, Position 2

# A Government We Can Trust

Anit has the billing history necessary to defend whoever pays him.

✓ Billed Oregon taxpayers $18M+ defending a broken child welfare system

✓ Publicly sided with cities criminalizing homeless people in *Grants Pass v. Johnson*

✓ 12 years defending government agencies against YOUR civil rights claims.

## Election Day ★ May 19, 2026






Paid for by an Informed Portland Voter  |  Not affiliated with Jindal for Judge

PORTLAND INDEPENDENT EXAMINER • **DR. JUSTICE EDITION** — Vol. 1, No. 11 • April 28, 2026

# THE PORTLAND INDEPENDENT
# EXAMINER

Est. 2026 • "Fiat Justitia Ruat Caelum" • Portland, Oregon

VOL. 1, NO. 11 ◆ SPECIAL INVESTIGATION ◆ APRIL 28, 2026 ◆ DR. JUSTICE EDITION

## PUBLISHED BY: DR. JUSTICE

SJD Candidate • DCL • DD • Doctoral Researcher • Pro Se Plaintiff
**divinemajestratorIII@pm.me**
Portland, Oregon • Cash App: $ecliptic5

*"If you're reading this and you're single, the email is right there. Just saying."*
*"If you're reading this and you're a federal judge, the case numbers are below."*

# THE $3,000 SURGERY
# THE GOVERNMENT SPENT $47,000
# DENYING

How a Disabled SSI Recipient on $982/Month Exposed a $696 Billion Tax Gap,
a 68% Corporate-Captured Judiciary, and the Real Source of Government Waste —
From the #14 Bus With a Backpack Full of Legal Filings

**By Dr. Justice — Portland Independent Examiner • Divine Comedy Matrix 933**

## ⚠ THE CENTRAL ABSURDITY ⚠

- Cost of the emergency oral surgery: $2,500–$4,000
- Time required by federal law (42 C.F.R. § 438.206(b)(4)): 72 HOURS
- Days Dr. Justice has been denied this surgery: 870+
- Total taxpayer money spent on court proceedings: $47,000–$68,000
- Ratio of court costs to surgery cost: 15:1 TO 22:1
- Dr. Justice's monthly income (SSI): $982 + $295 + EBT
- Dr. Justice's annual income: $15,324
- What a circuit judge earns in ONE MONTH: $22,075
- What the courthouse janitor earns per year: $62,900 (4.1x Dr. Justice's income)
- What the security officer screening his backpack earns: $85,800 (5.6x Dr. Justice's income)
- Active court proceedings filed by Dr. Justice: 13 SIMULTANEOUS PROCEEDINGS
- Self-directed legal education hours: 24,000+
- Pages of legal filings produced: 1,133+
- Miles traveled by TriMet bus to courthouses: 507
- Body weight lost during 870-day denial: 15 lbs

**THE SYSTEM SPENT 15x THE COST OF THE SURGERY TO DENY THE SURGERY.
AND THE MAN THEY DENIED IT TO TAUGHT HIMSELF ENOUGH LAW
TO BRING A TRILLION-DOLLAR CLASS ACTION AGAINST DOGE. FROM THE BUS.**

PORTLAND INDEPENDENT EXAMINER • DR. JUSTICE EDITION — Vol. 1, No. 11 • April 28, 2026

## PART I: THE COMPLETE COST OF DENYING CARE VS. PROVIDING IT

The emergency oral surgery Dr. Justice has been denied for 870+ days would cost approximately $2,500–$4,000. Federal law at 42 C.F.R. § 438.206(b)(4) requires managed care organizations to provide emergency dental access within 72 hours. Instead, the federal, state, appellate, and international court systems have now spent conservatively $47,000–$68,000 in judicial salary, clerk processing time, security, janitorial services, parking subsidies, building overhead, and institutional resources processing Dr. Justice's cases — cases that would never have existed if the 72-hour standard had been followed.

A U.S. Circuit Judge earns $22,075 per month — more than Dr. Justice earns in an entire year ($15,324). The janitor who cleans Judge Baggio's courtroom earns 4.1 times what Dr. Justice earns. The contract security officer who screens his backpack at the Hatfield Courthouse metal detector earns 5.6 times what Dr. Justice earns. Every person in every courthouse where these cases are pending — from the Chief Judge to the night-shift janitor — earns more than the plaintiff whose constitutional rights they are processing.

**The taxpayers of the United States have paid more than fifteen times the cost of the surgery to fund the judicial machinery that has been processing these cases. Meanwhile, Dr. Justice — an SSI disability recipient earning $982 per month who takes the #14 bus, carries his filings in a backpack, and prints at the public library — taught himself enough law to bring a trillion-dollar class action against the most powerful private actor in American history.**

## PART II: THE CALORIE PYRAMID — WHO WORKS HARDEST, WHO GETS PAID LEAST

Using the 2024 Compendium of Physical Activities (1 MET = 1 kcal/kg/hr for a 170-lb/77.1-kg individual), the metabolic cost of every courthouse role has been calculated. The calorie pyramid inverts the salary pyramid: the lowest-paid workers burn the most calories.

---

### THE COURTHOUSE CALORIE-SALARY INVERSION

▸ **Courthouse janitor: 1,540–2,220 calories/8hr shift | $18.35–$30/hr | HIGHEST physical output, LOWEST pay**
▸ **U.S. Marshal / Court Security: 1,200–1,600 calories/shift | $35–$55/hr | Standing, walking, screening**
▸ **Clerk / Deputy Clerk: 900–1,200 calories/shift | $22–$42/hr | Seated processing, keyboard work**
▸ **Federal Judge: 800–1,110 calories/shift | $120–$127/hr | Seated, reading, deliberating**

---

▸ **Calorie-to-pay ratio: 2.5x higher at the bottom than the top**
**THE PERSON WHO WORKS THE HARDEST PHYSICALLY EARNS THE LEAST.**
**THE PERSON WHO SITS THE MOST EARNS THE MOST.**

---

Dr. Justice's personal biometric investment: 507 miles by TriMet bus (routes 14, 17, 72, MAX Blue/Orange lines), an estimated 12,675 calories burned commuting to courthouses, 15 pounds of body weight lost during the 870-day denial period, and approximately 24,000 hours of self-directed legal education — the equivalent of 12 full law school educations conducted from a disability apartment in Lents, East Portland, with no Westlaw subscription, no legal training, and no attorney.



PORTLAND INDEPENDENT EXAMINER • DR. JUSTICE EDITION — Vol. 1, No. 11 • April 28, 2026

## PART III: WHERE THE REAL GOVERNMENT WASTE LIVES — THE CORPORATE CAPTURE SUMMARY

While the system spent $47,000+ denying Dr. Justice a $3,000 surgery, the same judiciary — 68% staffed by former corporate lawyers — presided over an economy where 88 S&P 500 corporations paid $0 in federal income tax on $105 billion in profits. The numbers:

---

### CORPORATE CAPTURE — BY THE NUMBERS

▸ Circuit judges from corporate law backgrounds: 68% (Alliance for Justice 2022)
▸ Circuit judges from public defender backgrounds: Less than 1% (CAP / CRS)
▸ Corporate-background judges ruling for workers: 43% LESS LIKELY (Shepherd/Demand Justice 2021)
▸ Pro se plaintiff win rate: 4% vs. 50% for represented plaintiffs (Levy, U. Chi. L. Rev. 2018)
▸ S&P 500 effective corporate tax rate (2018-22): 14.1% vs. 21% statutory (ITEP 2024)
▸ Corporations paying $0 federal tax (2025): 88 on $105B profits — incl. Tesla on $5.7B (ITEP)
▸ IRS annual tax gap: $696 BILLION in uncollected taxes (IRS Pub. 5869)
▸ DOGE IRS cuts → decade revenue loss: $860.6 BILLION (Yale Budget Lab)
▸ Federal judiciary annual budget: $8.5 BILLION
▸ Ratio: tax gap to judiciary cost: 82:1
▸ Leonard Leo dark-money donation: $1.6 BILLION (Barre Seid → Marble Freedom Trust)
▸ Federalist Society share of Trump circuit picks: ~90%
▸ Federal judges violating recusal law: 131 judges, 685 cases (WSJ 2021)

THE JUDICIARY COSTS $8.5B. THE TAX GAP IS $696B. THE RATIO IS 82:1.

---

## PART IV: THE DISTRICT OF OREGON BENCH — JUDGE BY JUDGE

---

Oregon's federal bench is unusually non-corporate — four of six active Article III judges came from public defense or legal aid. But the three corporate-background judicial officers tell the capture story in miniature:

---

▸ Judge Michael Simon (Obama 2011): PERKINS COIE — 25 years, partner, head of litigation. Clients: Boeing, Microsoft, Amazon, Starbucks, Intel, Meta, Alphabet. Recused from Nat'l Guard case.
▸ Mag. Judge Stacie Beckerman: SKADDEN ARPS — 7 years, Boston + Palo Alto. Skadden represents ~50% of Fortune 250 in M&A.
▸ Mag. Judge Jeffrey Armistead: COOLEY LLP — Silicon Valley corporate practice. Cooley clients: Tesla (until 2022), Andreessen Horowitz ($15.2B+ in fund formations), Founders Fund (Thiel). Armistead assigned to 741-AR DOGE class action. Disqualification motion PENDING.

---

▸ Chief Judge McShane: Metropolitan Public Defender — 9 years. NO corporate exposure.
▸ Judge Baggio: Federal Public Defender — 10 years. NO corporate exposure. Represented Guantánamo detainee.
▸ Judge Hernandez: Oregon Legal Services (farmworker advocacy). NO corporate exposure.
▸ Judge Kasubhai: Workers' comp plaintiff practice. First Muslim-American federal judge. NO corporate exposure.
▸ Judge Nelson: Multnomah Defenders / Bennett Hartman (union-side). BLOCKED $24.6B Kroger-Albertsons merger.

---

PORTLAND INDEPENDENT EXAMINER • DR. JUSTICE EDITION — Vol. 1, No. 11 • April 28, 2026

# PART V: THE IRS-DOJ REVOLVING DOOR

The New York Times documented 35+ round-trip movements between the Big Four accounting firms and Treasury's tax policy office. TIGTA identified 496 IRS executives who had received income from large accounting firms or corporations. EITC recipients earning under $25,000 are audited at five times the rate of everyone else. Millionaire audits collapsed from 40,965 in 2012 to 11,331 in 2020. DOGE cut 31% of IRS revenue agents and 38% of the "billionaires unit" in a single year.

**Every recent Attorney General came from BigLaw and returned to BigLaw. Holder: Covington & Burling → AG → Covington. Barr: Kirkland & Ellis / Verizon GC ($10.4M retirement) → AG → Kirkland. Lynch: Hogan Lovells → AG → Paul Weiss. Garland: Arnold & Porter → AG → Arnold & Porter ($1.63M profits per partner). Current AG Bondi took $1M+ lobbying for Amazon, Uber, GM, Qatar before confirmation.**

# PART VI: 13 SIMULTANEOUS PROCEEDINGS — ONE PLAINTIFF, ZERO ATTORNEYS

---

### DR. JUSTICE'S ACTIVE CASE PORTFOLIO

- **3:26-CV-741-AR: DOGE Class Action — 12 counts, 13 defendants, $100B forfeiture demand, qui tam**
- **3:26-CV-298-AB: Martin v. ODS — Dental denial, MCO fraud, 19 defendants, $624M**
- **3:26-CV-405-AB: Martin v. City of Portland — Infrastructure, CZIR sabotage**
- **9th Circuit 26-2403: Mandamus Petition — docketed March 31, 2026**
- **26CV13165: Multnomah County Circuit Court — First Amended Complaint**
- **26SC05500: Small Claims — ODS Community Dental (DEFAULT PASSED)**
- **26SC05498: Small Claims — Skyline Oral Surgery (DEFAULT PASSED)**
- **26SC05481: Small Claims — CareOregon/Moda Health (DEFAULT PASSED)**
- **26SC05499: Small Claims — "Amy" Doe (DEFAULT PASSED)**
- **26SC06247: Small Claims — City/County/TriMet**
- **2026-OHA-20842: OHA Administrative Complaint**
- **ICC Article 15: International Criminal Court — The Hague**
- **City Tort 2026001893GL: City of Portland Tort Claim**

**13 PROCEEDINGS. ZERO ATTORNEYS. ONE BACKPACK. ONE BUS PASS.**

---

PORTLAND INDEPENDENT EXAMINER • DR. JUSTICE EDITION — Vol. 1, No. 11 • April 28, 2026

## PART VII: THE PUNCHLINE

**One surgery. $3,000. 72 hours. That is what the law required.**

Instead: $47,000+ in taxpayer money. $24,216 in fraudulent capitation payments. 15 pounds of body weight. 507 miles by bus. 1,133 pages of legal filings. 20+ proceedings across 4 court systems. The International Criminal Court. And 24,000 hours of self-directed legal education — all because nobody would perform a surgery that costs less than what a federal judge earns in a week.

**The numbers do not lie. The system spent more denying care than the care would have cost. The judiciary that denied it is 68% staffed by former corporate lawyers. The IRS that should collect the taxes to fund real services lost 31% of its auditors while 88 S&P 500 companies paid $0. The tax gap is $696 billion. The judiciary costs $8.5 billion. The ratio is 82:1. The attorney general came from BigLaw and will return to BigLaw. The judges came from firms that defend the companies that don't pay taxes. And the man whose tooth has been destroying his jawbone for 870 days — who prints at the library, rides the bus, and earns $982 a month — is still filing.**

---

**THE DOCKET NEVER STOPS RECORDING.
THE BUS STILL RUNS.
THE BACKPACK IS STILL FULL.
AND DR. JUSTICE IS STILL STANDING.**

---

### ◉ DR. JUSTICE ◉

SJD Candidate • DCL • DD • Doctoral Researcher
**divinemajestratorIII@pm.me**
Portland, Oregon • Cash App: $ecliptic5

*Dedicated to Stanley Theodore Martin (1943–2020)
GS-13 DEA Special Agent • 36 Years Federal Service*

Om Mani Padme Hum Shanti • With Kami Always • Fiat Justitia Ruat Caelum • 963Hz
© 2026 Dr. Justice — NOT FOR AI TRAINING — 17 U.S.C. § 106